## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

**VANTAP, LLC, d/b/a VANDALIA GRILL,**
**a West Virginia Limited Liability Company;**
**GEORGIA HAMRA**
**a West Virginia Resident;**
**JOHN SARVER, d/b/a MOUSIE'S CAR WASH,**
**a West Virginia Resident;**
**NITRO CAR CARE CENTER, LLC.,**
**aWest Virginia Limited Liability Company;**
**CAROLYN BURDETTE,**
**aWest Virginia Resident;**
**COLORS SALON AND BOUTIQUE, LLC,**
**a West Virginia Limited Liability Company;**
**CRYSTAL GOODE,**
**a West Virginia Resident;**
**MICHAEL MANYPENNY,**
**a West Virginia Resident,**
**on behalf of themselves and all others similarly**
**situated,**
**Plaintiffs and Class Representatives**

**v.**                                    Civil Action No.   2:14-1374
                                          **CLASS ACTION COMPLAINT**

**EASTMAN CHEMICAL COMPANY,**
**a Delaware corporation;**
**FREEDOM INDUSTRIES, LLC,**
**a West Virginia corporation;**
**WEST VIRGINIA AMERICAN WATER**
**CORPORATION,**
**a West Virginia corporation; and,**
**GARY SOUTHERN, a West Virginia resident,**
**Defendants.**

### COMPLAINT

**PLAINTIFFS**, individually and on behalf of all others similarly situated, based on their personal knowledge, information and belief, for their complaint for damages, equitable, statutory and injunctive relief  allege as follows:

## NATURE OF THE ACTION

1. On January 9, 2014, about 300,000 West Virginians lost their water supply after the discovery of a spill of a coal processing chemical from a facility owned and operated by Freedom Industries, LLC upstream from the West Virginia-American Water Corp. water treatment plant. The chemical, 4-methylcyclohexane methanol and commonly referred to as 4-MCHM spilled into the Elk River just above its confluence with the Kanawha River in downtown Charleston. 4-MCHM is a combination of two very dangerous chemicals known to cause cancer and other effects, but the MSDS sheets issued by the manufacturer, Eastman Chemical Company,  ignore and hide the extensive scientific information known showing the risks of the chemical's carcinogenic and highly toxic component parts. 4-MCHM is water soluble.  When 4-MCHM breaks down in the environment, its components are released making essential adequate and fair warning about the true dangers of 4-MCHM.  The foreseeable risks of harm posed by 4-MCHM could have been reduced or avoided by reasonable instructions or warnings;  their omission renders the product not reasonably safe.  Exposure to the 4-MCHM in the environment through human pathways has created a need for a medical monitoring program to protect the public from the risk of 4-MCHM.

2. Had Freedom Industries LLC not breached its duties under statutory and common law, the leak would have never occurred. Furthermore, West Virginia American

Water Corp. should have recognized the risk presented by this facility's presence just upstream from their intake, and should have determined what chemicals were being used and assessed the risk they presented to the water supply.

3.  Plaintiffs who operate businesses have lost revenue because of the closure order which affected Class Member businesses like restaurants, car washes and beauty shops across the affected area. Plaintiffs and Class Members were exposed to the contaminated water and the polluted air and thus require medical monitoring. In addition to money damages and medical monitoring, the Class Representatives petition this Court for injunctive relief to protect Class Members from further danger.

## PLAINTIFFS

4.  Plaintiff Vantap, LLC is a restaurant licensed and operating as Vandalia Grill in downtown Charleston, West Virginia in close proximity to the facilities of Defendant Freedom Industries. Plaintiff Vantap has suffered and continues to suffer economic damages as a result of the conduct, acts and omissions of the Defendants because the restaurant has been shut down. Plaintiff Vantap seeks to represent businesses who suffered economic loss due to the contamination.

5.  Plaintiff Georgia Hamra is above the age of majority living in Charleston, West Virginia in proximity to the facility. Ms. Hamra was exposed to the chemical and and experienced economic loss because she had to incur expenses for travel because she relocated to a hotel outside of the affected area. She represents Class Members who incurred travel expenses because of the contamination of the water.

6. Plaintiff Crystal Goode is a resident above the age of majority living in
Charleston, West Virginia in proximity to the facility. Ms. Goode, a single mother
of three,  was exposed to the contaminated public water and to the fumes
emanating from the facilities of Defendant Freedom Industries. She is also the
mother of three children who shared her exposure. She represents Class Members
who were exposed and seek Medical Monitoring for themselves and minor
children.

7. Plaintiff John Sarver is a resident above the age of majority who owns and
operates  a sole proprietorship, Mousie's Car Wash in Charleston, West Virginia
and a limited liability company and Party to this action, Nitro Car Care Center,
LLC, in Nitro, West Virginia of which he is the sole owner and managing
member. Mr. Sarver was exposed to the contaminated public water and to the
fumes emanating from the facilities of Defendant Freedom Industries. Mr. Sarver
has suffered and continues to suffer economic damages as a result of the conduct,
acts and omissions of the Defendants. Plaintiff Sarver seeks to represent
businesses who suffered economic losses and individuals who require medical
monitoring.

8. Plaintiff Carolyn Burdette is a resident above the age of majority living in Cross
Lanes, West Virginia and owns a beauty shop that is a party to this action,
Plaintiff Colours Salon and Boutique LLC. She is the sole owner and managing
member thereof.   Ms. Burdette was exposed to the contaminated public water.
Plaintiff Burdette has suffered and continues to suffer economic damages as a
result of the conduct, acts and omissions of the Defendants.    Plaintiff Burdette

seeks to represent businesses who suffered economic losses and individuals who require medical monitoring.

9. Plaintiff Michael Manypenny is a member of the West Virginia House of Delegates who was exposed to the contaminated public water while the Legislature was in session. He seeks to represent those who live outside the area and are not customers of Defendant West Virginia American Water but who were exposed and thus require medical monitoring.

**DEFENDANTS**

10. Defendant Eastman Chemical Company ("Eastman"), is a Delaware Corporation with its principal place of business in Kingsport, Tennessee. Eastman as the manufacturer and producer of the product bears legal responsibility for damages stemming from the leak of 4-MCHM on January 9, 2014. Eastman is jointly and severally liable to the Plaintiffs for all damages and other relief awarded as a result of this action.

11. Defendant Freedom Industries, LLC ("Freedom Industries"), is a West Virginia company with its principal place of business in Kanawha County, West Virginia. Freedom Industries as the operator of the site bears legal responsibility for the leak of 4-MCHM on January 9, 2014. Freedom Industries is jointly and severally liable to the Plaintiffs for all damages and other relief awarded as a result of this action.

12. Defendant West Virginia-American Water Company ("WVAW"), is a West Virginia Corporation with its principal place of business in Charleston, West Virginia. WVAW bears legal responsibility for damages stemming from the leak

of 4-MCHM on January 9, 2014. DVAW is jointly and severally liable to the Plaintiffs for all damages and other relief awarded as a result of this action.

13. Defendant Gary Southern is a Charleston, West Virginia resident above the age of majority. He bears responsibility because of his personal role in directing operations at the facility of Defendant Freedom Industries and his ownership interest in the facility which he sold to Defendant Freedom Industries. Defendant Southern is jointly and severally liable to the Plaintiffs for all damages and other relief awarded as a result of this action.

## JURISDICTION

14. The original jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1332(d)(2). This action arises out of violations of the Resource Conservation and Recovery Act , 42 U.S.C. §§ 6901, *et seq. ("RCRA")*; the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq. ("CERCLA");* Superfund Amendment and Reauthorization Act of 1986. Pub. L. No. 99-499 (codified as amended in scattered sections of the United States Code) ("SARA"); the Emergency Planning Community Right To Know Act, 42 U.S.C. §§ 11001, *et seq.;* the Clean Water Act,  33 U.S.C.S. §§ 1251, *et seq.* (*"CWA"); T*he Safe Drinking Water Act, 42 U.S.C.A. §§ 300f to 300j ("SDWA"); Toxic Substances Control Act, 15 U.S.C. §§ 2601-2692 ("TSCA"); Rivers and Harbors Act of 1899, 33 U.S.C.A. §§ 401 *et seq.*; and the Clean Air Act, 42 U.S.C.A. §§ 7401 *et seq.* ("CAA").

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2), in that a substantial portion of the events and omissions giving rise to Plaintiffs' claims occurred in this district.

## ALLEGATIONS

16. At its facilities in Charleston along the Elk River Defendant Freedom Industries used, controlled, distributed, transported and disposed of 4-methylcyclohexane methanol ("4-MCHM"), a known toxic chemical that replaced diesel fuel in the froth flotation phase of coal processing.

17. The tank storing the 4-MCHM on the facilities of Defendant Freedom Industries was built using rivet construction in the 1930s.

18. On or about January 9, 2014, government officials discovered a licorice smell originating from the facilities of Defendant Freedom Industries. Freedom Industries did not self-report the leak of 4-MCHM although it had an obligation to do so immediately.

19. The licorice smell is associated with 4-MCHM at concentrations exceeding the chemical's odor threshold.

20. Airborne release of 4-MCHM from the facility of Defendant Freedom Industries caused chemical air pollution resulting in ambient concentrations well above the odor threshold for the chemical over an area of several square miles and over a time period of several days after the January 9, 2014 release.

21. The licorice smell had been detected in the Charleston area for more than a week before the January 9, 2014 release.

22. Defendant WVAW reported that only 2,000 to 5,000 gallons of 4-MCHM leaked into the Elk River. That number is as yet unknown with recent estimates of 7,500 gallons.

23. A sheen could be still be seen emanating from the facility of Defendant Freedom Industries on the afternoon of January 10, 2014.

24. The temporal and geographic extent of the contamination, the reports of earlier detection of 4-MCHM above the odor threshold and the age of the 4-MCHM tanks indicate that 4-MCHM had been leaking from the storage tank for a period of time pre-dating January 9, 2014.

25. 4-MCHM migrated from the facility of Defendant Freedom Industries into the Elk River and thence downstream into the public water intake of Defendant WVAW.

26. Defendant Freedom Industries failed to comply with the standards and requirements for the control, distribution, transport and disposal of 4-MCHM as set forth in the Resource Conservation and Recovery Act , 42 U.S.C. §§ 6901, et seq. ("RCRA"); the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. §§ 9601, et seq. ("CERCLA"); the Superfund Amendment and Reauthorization Act of 1986. Pub. L. No. 99-499 (codified as amended in scattered sections of the United States Code) ("SARA"); the Emergency Planning Community Right To Know Act, 42 U.S.C. §§ 11001, et seq.; The Clean Water Act,  33 U.S.C.S.  1251, et seq. ("CWA"); the Safe Drinking Water Act, 42 U.S.C.A. §§ 300f to 300j ("SDWA"); the Toxic Substances Control Act, 15 U.S.C. §§ 2601-2692 ("TSCA"); Rivers and Harbors Act of 1899, 33 U.S.C.A. §§ 401 et seq.; the Clean Air Act, 42 U.S.C.A. §§ 7401

et seq. ("CAA"); the West Virginia Air Pollution Control Act, W.Va. Code §22-5-1 et. seq.; the West Virginia Water Pollution Control Act, W.Va. Code §22-11-1 et. seq.; the West Virginia Groundwater Protection Act §22-12-1 et. seq.; and the West Virginia Hazardous Waste Management Act, W.Va. Code §22-18-1 et . seq.

27. Defendant WVAW operates a water treatment plant just downstream from the facility of Defendant Freedom Industries. As such WVAW has a responsibility to perform full risk assessment of any potential sources of pollution upstream from its water intake on the Elk River. Such a  risk assessment should have encompassed the known risk presented by the Freedom Industries facilities and its storage of toxic chemicals including 4-MCHM.

28. WVAW failed to comply with the standards and requirements set forth under the SDWA, other state and federal statutes and the common law of West Virginia.

29. Defendant Eastman is the exclusive United States manufacturer of 4-MCHM.

30. The combination chemical 4-MCHM is artificially created by combining methylclyclohexane with methanol.

31. Two component parts of 4-MCHM are methylcyclohexane and methanol which are both known dangerous and toxic chemicals that can cause latent dread disease such as cancer.

32. Extensive medical, epidemiological and toxicological studies show the cancer and non-cancer risks of hexane and methanol.

33. The known risks of exposure to the 4-MCHM components were not disclosed by Eastman.  Eastman failed to warn of the likely toxicity of 4-MCHM or its known toxic constituent chemicals.

34. Defendant Eastman has a duty under applicable statutory and common law to make full disclosure in Material Safety Data Sheets for 4-MCHM under the Emergency Planning Community Right To Know Act, 42 U.S.C. §§ 11001, et seq. and  Toxic Substances Control Act, 15 U.S.C. §§ 2601-2692 ("TSCA")and to reflect accurately the state of knowledge of the medical and scientific communities about the toxicity of 4-MCHM.

35. Defendant Eastman placed 4-MCHM into interstate commerce. The foreseeable risks of harm posed by 4-MCHM could have been reduced or avoided by reasonable instructions or warnings;  their omission renders the product not reasonably safe. 4-MCHM is unreasonably dangerous.

36. Defendant Eastman issued MSDS sheets and other warning data that were inadequate not protective.

37. Defendant Eastman failed to comply with the standards and requirements as set forth in the Emergency Planning Community Right To Know Act, 42 U.S.C. §§ 11001, et seq.; the Safe Drinking Water Act, 42 U.S.C.A. §§ 300f to 300j ("SDWA"); the Toxic Substances Control Act, 15 U.S.C. §§ 2601-2692 ("TSCA"); and  the West Virginia Hazardous Waste Management Act §22-18-1 et . seq. as well as the common law of West Virginia.

38. Defendant Gary Southern recently sold his interest in the current facility operated by Defendant Freedom Industries for several million dollars.  Mr. Southern still works as a consultant for Defendant Freedom Industries.

39. Mr. Southern knew or should have known about the conditions at the facility. His acts and omission in ignoring the obvious threats to the environment and failure to take appropriate steps to mitigate them directly contributed to Plaintiffs' damages.

40. Plaintiffs have transmitted concurrently via the United States Mail this day to the Defendants, the West Virginia Department of Environmental Protection and the United States Environmental Protection Agency pre-suit notice letters as required by statute and regulation which provide notice to the Defendants named herein that the Plaintiffs intend to seek leave of the Honorable Court after the requisite 60-day pre-suit notice period has lapsed to amend this complaint to include causes of action asserted under the provisions allowing for Citizens' Suits and/or private actions under the following statutes: The Resource Conservation and Recovery Act , 42 U.S.C. §§ 6901, et seq. ("RCRA"); The Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. §§ 9601, et seq. ("CERCLA"); Superfund Amendment and Reauthorization Act of 1986. Pub. L. No. 99-499 (codified as amended in scattered sections of the United States Code) ("SARA"); The Emergency Planning Community Right To Know Act, 42 U.S.C. §§ 11001, et seq.; The Clean Water Act,  33 U.S.C.S.  1251, et seq. ("CWA"); The Safe Drinking Water Act, 42 U.S.C.A. §§ 300f to 300j ("SDWA"); Toxic Substances Control Act, 15 U.S.C. §§ 2601-2692 ("TSCA"); Rivers and Harbors Act of 1899, 33 U.S.C.A. §§ 401 et seq.; The Clean Air Act, 42 U.S.C.A. §§ 7401 et seq. ("CAA"); West Virginia Air Pollution Control Act W.Va. Code §22-5-1 et. seq.; West Virginia Water Pollution Control Act W.Va. Code §22-11-1 et. seq.;

West Virginia Groundwater Protection Act §22-12-1 et. seq.; and West Virginia

Hazardous Waste Management Act §22-18-1 et . seq.

## CLASS ACTION ALLEGATIONS

41. Plaintiffs seek to represent following class of individuals and businesses:

*All persons and businesses supplied with, using or exposed to water provided by West Virginia-American Water Company in Logan, Clay, Lincoln, Roane, Jackson, Boone, Putnam and Kanawha Counties and the Culloden area of Cabell County, West Virginia as of January 9, 2014.*

42. Plaintiffs and all others similarly situated are entitled to have this case maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3) and (b)(4), for the following reasons.

43. The class is so numerous that joinder of all persons is impracticable. As many as 300,000 people are adversely affected by Defendants' releases of 4-methylcyclohexane methanol. The exact number of class members can be readily determined from the records of WVAW and the United States Census Bureau.

44. There are common issues of law and fact, including (1) whether Defendants are liable to individuals and businesses in the class for negligently allowing the release of 4-methylcyclohexane methanol and/or failure to warn of its toxicity; (2) the scope of damages caused by the Defendants' negligence; (3) whether Defendants are strictly liable for conducting an ultra-hazardous activity injurious to members of the class; (4) whether Defendants are liable for nuisance and trespass; and, (5) whether a medical monitoring protocol is warranted. These and

other common issues of law and fact relate to and affect the rights of Plaintiffs
and class members.

45. Plaintiffs' claims are typical of the class. Plaintiffs reside and were present within
the affected area. All were directed on January 9, 2014 not to drink, cook, or wash
with the water supplied by WVAW as a result of the unpermitted and negligent
release from Freedom Industries' facility.

46. Class members have suffered personal injuries and/or injury to their real and
personal property and/or have been subjected to health risks necessitating medical
monitoring. Plaintiffs' interests are identical to those of other class members.

47. Plaintiffs will fairly and adequately represent and protect the interests of the class
because:

a. Plaintiffs have retained counsel experienced in the prosecution of class action
litigation who will adequately represent the interests of the class;

b. Plaintiffs and their counsel are aware of no conflicts of interest between
plaintiffs and absent class members or otherwise;

c. Plaintiffs have, or can acquire, adequate financial resources to assure that the
interests of the class will not be harmed; and

d. Plaintiffs are knowledgeable concerning the subject matter of this action and
will assist counsel in the prosecution of this litigation.

48. Requiring the institution of separate lawsuits would pose a serious risk of
inconsistent adjudications and earlier separate determinations with a prejudicial
effect on subsequent litigants.

49. Prosecution of separate actions would pose a serious threat of substantially impeding the ability of class members to protect their interests.

50. Any denial of liability by and defenses raised by the Defendants would be applicable to all claims presented by all members of the class.

51. Common issues of law and fact predominate over those issues that might pertain to individual cases.  Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate the entry of equitable or injunctive relief, including a medical monitoring protocol and injunctive relief to prevent recurrence of the conduct in the future.

52. A class action is superior to other available procedures for the fair and efficient adjudication of this controversy.

53. The vast majority of the class members have no interest in controlling the litigation.

54. A class action allows the Court to process all rightful claims in one proceeding. It is desirable to concentrate all the litigation in one forum.  Class litigation is manageable considering the opportunity to afford reasonable notice of significant phases of the litigation to class members and permit distribution of recovery.  The prosecution of separate actions by individual class members, or the individual joinders of all class members in this action, is impracticable and would create a massive and unnecessary burden on the resources of the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of each member of the class. Because of the disparity of resources available to Defendants versus those available to individual class

members, prosecution of separate actions would work a financial hardship on many class members. The conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each member of the class and meets all due process requirements as to fairness to all parties. A class action is also superior to maintenance of these claims on a claim by claim basis when all actions arise of the same circumstances and course of conduct.

## CAUSES OF ACTION

### Count One- Negligence

55. Plaintiffs hereby incorporate all previous paragraphs.

56. The conduct, acts and omissions of the Defendants named violated duties owed to Plaintiffs and the Class. Defendants' negligence proximately caused damage to Plaintiffs and the Class.

### Count Two- Gross Negligence

57. Plaintiffs hereby incorporate all previous paragraphs.

58. The conduct of Defendants as set forth herein was reckless and wanton, constituting the tort of gross negligence, which resulted in damages to plaintiffs.

### Count Three - Prima Facie Negligence

59. Plaintiffs hereby incorporate all previous paragraphs.

60. The actions of all Defendants constitute violations of laws intended to protect Plaintiffs from the effects of exposure to 4-methylcyclohexane methanol, including, without limitation, the following laws: the Resource Conservation and Recovery Act , 42 U.S.C. §§ 6901, et seq. ("RCRA"); the Comprehensive

Environmental Response Compensation and Liability Act, 42 U.S.C. §§ 9601, et seq. ("CERCLA"); Superfund Amendment and Reauthorization Act of 1986. Pub. L. No. 99-499 (codified as amended in scattered sections of the United States Code) ("SARA"); the Emergency Planning Community Right To Know Act, 42 U.S.C. §§ 11001, et seq.; the Clean Water Act,  33 U.S.C.S. §§ 1251, et seq. ("CWA"); the Safe Drinking Water Act, 42 U.S.C.A. §§ 300f to 300j ("SDWA"); the Toxic Substances Control Act, 15 U.S.C. §§ 2601-2692 ("TSCA"); the Rivers and Harbors Act of 1899, 33 U.S.C.A. §§ 401 et seq.; the Clean Air Act, 42 U.S.C.A. §§ 7401 et seq. ("CAA"); the West Virginia Air Pollution Control Act W.Va. Code §22-5-1 et. seq.; the West Virginia Water Pollution Control Act, W.Va. Code §22-11-1 et. seq.; the West Virginia Groundwater Protection Act §22-12-1 et. seq.; and, the West Virginia Hazardous Waste Management Act, W. Va. Code §22-18-1 et . seq.

61. The violation of these laws constitutes prima facie negligence and/or negligence per se which proximately caused damage to Plaintiffs and the Class.

## Count Four - Strict Liability

62. Plaintiffs hereby incorporate all previous paragraphs.

63. Defendants' storage, control, use, transport and disposal of the 4-MCHM  in close proximity to the Elk River and WVAW's intake for the water supply of several counties is an ultra-hazardous or abnormally dangerous activity.

64. Defendants conduct, acts and omissions have damaged Plaintiffs' property by necessitating the flushing or replacement of pipes, have caused lost profits, and have created the need for a medical monitoring protocol to assess the health

effects of exposure to 4-MCHM and protect the health of Plaintiffs and the Class

Members through early diagnosis of dread disease, including cancer.

65. Defendants are prima facie answerable for all damage to Plaintiffs' person and

property which is the natural consequence of their ultra-hazardous/abnormally

dangerous activities.

66. Plaintiffs' injuries were proximately caused by Defendants' ultra-

hazardous/abnormally dangerous activities.

67. Defendants are strictly liable for any and all personal injuries caused by exposure

to toxic substances escaping from their operations.

**Count Five - Negligent Interference With Prospective Contract**

68. Plaintiffs hereby incorporate all previous paragraphs.

69. Plaintiffs Vandalia Grill, Carolyn Burdette and John Sarver have sustained losses

of economic opportunity with their customers who would have engaged in

customary informal contractual arrangements for the exchange of goods and

services in return for payment as is typical in retail business.

70. The negligence of the acts and omissions of all Defendants to the this action

constitutes the tort of negligent interference with prospective contract.

**Count Six - Intentional Infliction of Emotional Distress**

71. Plaintiffs hereby incorporate all previous paragraphs.

72. The conduct of the Defendants named herein constitutes the tort of intentional

infliction of emotional distress.

**Count Seven - Negligent Infliction of Emotional Distress**

73. Plaintiffs hereby incorporate all previous paragraphs.

74. The conduct of the Defendants named herein constitutes the tort of intentional infliction of emotional distress.

**Count Eight - Strict Products Liability for Failure to Warn against Eastman Chemical Company**

75. Plaintiffs hereby incorporate all previous paragraphs.

76. Eastman Chemical Company ("Eastman") marketed, packaged, sold and distributed crude MCHM (4-methylcyclohexane methanol) to Freedom Industries.

77. At all relevant times, Eastman knew or should have known of the adverse health effects and risk of harm from exposure to the crude MCHM it distributed.

78. Eastman failed to adequately warn about the adverse health effects, the risks of harm and the need for proper practices in the storage and handling of the crude MCHM it marketed, sold, distributed and shipped.

79. Eastman failed to provide an adequate Material Safety Data Sheet regarding the adverse health effects and risk of harm arising from exposure to the 4-MCHM it marketed, sold, distributed and shipped.

80. Eastman, therefore, marketed, sold, distributed and shipped its product in an unsafe and unreasonable manner because the foreseeable risks of harm posed by the product could have been reduced or avoided by reasonable instructions or warnings, and their omission renders the product not reasonably safe.

81. The crude MCHM that Eastman sold was unreasonably dangerous and defective due to Eastman's failure to provide adequate warnings and MSDS for safe use of the product.

82. As a direct and proximate cause of Eastman's failure to warn, Plaintiffs suffered the injuries.

### Count Nine - Public Nuisance

83. Plaintiffs hereby incorporate all previous paragraphs.

84. Defendants' pollution constitutes an unreasonable interference with the exercise of rights common to the general public in that it significantly interferes with public health and safety.

85. Defendants knew or had reason to know that their activities have  a significant effect on public rights.

86. Defendants have acted intentionally or it was substantially foreseeable to Defendants that their activities would cause harm to Plaintiffs and their property.

87. Defendants' activities proximately caused Plaintiffs' injuries.

88. The conduct. acts and omissions of Defendants as set forth herein created a public nuisance from which the Plaintiffs have derived special injuries which cannot be fully compensated in an action at law.


### Count Ten - Private Nuisance

89. Plaintiffs hereby incorporate all previous paragraphs.

90. Defendants have invaded and interefered with, and are invading and interfering with the Plaintiffs' interest in the private use and enjoyment of their properties through their release of 4-MCHM into Plaintiffs' water supply and into Plaintiffs' persons and properties, thereby resulting in private nuisance for which Defendants are responsible.

91. Defendants' activities have created a private nuisance by way of the release of 4-MCHM into the water supply thereby naturally and proximately causing Plaintiffs to suffer personal injuries, lost profits, property damage, and loss of use and enjoyment of their properties.

**Count Eleven - Trespass**

92. Plaintiffs hereby incorporate all previous paragraphs.

93. Defendants recklessly, knowingly, and willfully caused and allowed hazardous toxic chemicals to be released and discharged into the water supply and into Plaintiffs' properties. This release resulted in an actual physical invasion onto and into Plaintiffs' properties. This physical invasion is continuing until the pipes of Plaintiffs' property are flushed and/or replaced.

94. The entry and presence of 4-methylcyclohexane methanol in Plaintiffs' properties is unauthorized. Defendants have not sought or obtained Plaintiffs' consent to deposit and/or store 4-methylcyclohexane methanol on Plaintiffs' properties.

95. The damages caused by Defendants' unlawful trespass were foreseeable.

96. Plaintiffs have suffered personal injury, injury to personal and real property, lost profits, and emotional distress as a direct and proximate result of Defendants' unlawful trespass.

**Count Twelve - Medical Monitoring**

97. Plaintiffs hereby incorporate all previous paragraphs.

98. Plaintiffs have been exposed to a known toxic substance at a greater concentration than the general public is typically exposed such that the Plaintiffs have an

increased risk of contracting latent dread disease for which testing exists which is different than medical tests required by the general public.

99. Plaintiffs request the establishment of a court administered and supervised medical monitoring program to oversee and direct medical surveillance and provide for medical examinations and testing of class members for dread diseases, including but not limited to leukemia and lymphoma because members of the class have been exposed to 4-MCHM, a known toxin, in greater concentrations than the public at large.  Early detection of cancer and other diseases and maladies improve the prospects for cure, treatment, prolongation of life and minimization of pain and disability.

100.    Given the significance and extent of the exposure to chemicals, the toxicity of the chemicals, the seriousness of the diseases for which Plaintiffs are at risk, the relative increase in the chance of onset of disease in those exposed, and the value of early diagnosis, such surveillance to monitor the effect of exposure to toxic chemicals is reasonable and necessary. A medical monitoring protocol may include tests that are available and would provide a medical benefit.  For example, a protocol combining CBC tests with trigger levels could then prompt further cytometrics for those indicating an increased risk in the initial screening level set of tests.

101.    It would be inequitable for Plaintiffs who have been wrongfully exposed to dangerous toxins, but unable to prove that cancer or disease is likely to have to pay the expense of medical monitoring when such intervention is clearly reasonable and necessary.

## Count Thirteen - Punitive Damages

102.      Plaintiffs hereby incorporate all previous paragraphs.

103.      The conduct of Defendants as set forth herein is wanton, reckless and reprehensible. Plaintiffs and the Class are thus entitled to recover punitive damages against Defendants.

104.      Defendants were grossly negligent, willful, wanton and malicious in their activities and in failing to warn Plaintiffs of dangers well known to Defendants, which acts exhibited a deliberate disregard for the rights and safety of Plaintiffs.

105.      Defendants realized the imminence of danger to Plaintiffs and other members of the public, but continued their ultra hazardous activities with deliberate disregard and complete indifference and lack of concern for the probable consequences of their acts.

106.      As a direct result of Defendants' deliberate disregard for the rights and safety of others, gross negligence, willful, wanton and malicious acts, and other wrongful acts, Plaintiffs suffered the injuries and dangers stated above.

107.      Defendants' acts as described herein exhibited deliberate disregard for the rights and safety of others and were grossly negligent, malicious, oppressive, willful and wanton. An award of punitive and exemplary damages is therefore necessary to punish Defendants, and each of them, and to deter any reoccurrence of this intolerable conduct. Consequently, Plaintiffs are entitled to an award of punitive damages.

108.      The conduct of Defendants as set forth herein is wanton, reckless and reprehensible. Plaintiffs and the Class are thus entitled to recover punitive

damages against Defendants in an amount sufficient to punish Defendants for their wrongful conduct and to deter Defendants and others from similar wrongful conduct in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully pray for a Jury Trial for the following relief:

109.     An injunction ordering the Defendants to remove all sources of contamination from the facility of Defendant Freedom Industries including but not limited to the removal from the site of all contaminated soil.

110.     An injunction ordering Defendant WVAW to complete a risk assessment of the pollution risks upstream from its water intake on the Elk River and take appropriate steps to ameliorate and reduce those risks to an acceptable level to ensure public safety in the future.

111.     An injunction ordering Defendant Eastman to complete a competent and thorough toxicological analysis of the risks to human health from 4-MCHM and to make changes to its published MSDS sheets accordingly.

112.     An Order certifying this action to proceed as a class action, authorizing Plaintiffs to represent the interests of the Class and appointing counsel to represent the Class.

113.     An award of damages for Class Members who suffered business or economic losses as a result of Defendants' conduct, acts or omissions.

114.     An award of punitive damages for all Class Members who were exposed to 4-MCHM.

115.     An Order establishing a Medical Monitoring Program designed to protect

the Class Members from latent, dread disease and funded by the Defendants.

116.     An Order establishing such administrative procedures as are reasonable to

effectuate the relief granted Plaintiffs and the Class Members.

117.     Such other relief as the Court or Jury may deem appropriate.

Respectfully Submitted:

By Counsel:

_____

Kevin W. Thompson, Esquire (W.Va. Bar No. 5062)
David R. Barney, Jr., Esquire (W.Va. Bar No. 7958)
Thompson Barney
2030 Kanawha Boulevard, East
Charleston, West Virginia  25661
Telephone: (304) 235-4006
Facsimile: (304) 235-4009
kwthompsonwv@gmail.com


Van Bunch, Esquire (W.Va. Bar No. 10608)
Bonnett Fairbourn Friedman & Balint PC
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Facsimile: (602) 274-1199
vbunch@bffb.com

P. Rodney Jackson (W.Va. Bar No. 1861)
Law Offices of Rod Jackson
401 5th/3rd Center
700 Virginia Street East

Charleston, West Virginia 25301
Telephone: (843) 780-6879
prodjackson27@yahoo.com