**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **CRYSTAL GOOD,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:14-1374** |
| | ) | |
| **AMERICAN WATER WORKS** | ) | |
| **COMPANY, INC.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

On February 24, 2015, Plaintiffs filed a Motion to Compel Defendant West Virginia American Water Company to Produce Responsive Archived SCADA Data in a Reasonably Useable Form (Document No. 269.), and on February 25, 2015, Plaintiffs filed an Amended Motion to Compel. (Document No. 272.) Plaintiffs seek to compel Defendant West Virginia American Water Company [WVAWC]'s further response to their Interrogatory No. 1 and Request for Production No. 1 of their Second Set of Interrogatories and Requests for Production. (Document No. 272-2.)[1] Those discovery requests are as follows:

> Interrogatory No. 1: Identify all substations or other facilities (collectively, 'substations') used by WVAWC to pump, provide, or otherwise facilitate the supply of water from the KVWTP to WVAWC customers. For each substation: (a) identify the location and purpose of the facility; (b) identify the time interval for which the quantity or volume of treated water supplied by that substation to WVAWC customers is recorded; (c) identify, by address, all WVAWC customers served by that substation; and (d) identify which of the customers identified in (c) are residential customers and which are commercial customers.
>
> Request for Production No. 1: For each substation identified in answer to the

---

[1] Plaintiffs served their Second Set of Interrogatories and Requests for Production upon WVAWC on November 21, 2014. (Document No. 162.) WVAWC served its Answer and Response thereto on January 5, 2015. (Document No. 182.)

> Interrogatory served contemporaneously herewith, produce all records relating to the quantity or volume of water provided by that substation to WVAWC's customers for the months of December, January, and February from 2004 to present.

WVAWC objected to the Interrogatory and Request for Production on grounds of relevancy, duplication of other discovery which Plaintiffs had initiated and the burden of producing the information when it will have little or no utility. In response to the Interrogatory, WVAWC described its water distribution system and its supervisory control and data acquisition [SCADA] system and explained how the SCADA system monitors the flow of water throughout the water distribution system.

In their Amended Motion to Compel (Document No. 272.), Plaintiffs state that "[t]he sole issue for this Court to decide in the instant Motion to Compel is whether Defendant West Virginia American Water Company ('WVAW') should be required to translate (or 'export') relevant portions of its archived 'SCADA' data from a Microsoft SQL Server format, in which it is archived by WVAW as a matter of course and in which it has been so far produced, into a reasonably usable form or format, such as Microsoft Excel or a 'CSV' file." (Id., p. 1.) Plaintiffs explain that they "seek to compel WVAW to use that software to export the requested and responsive SCADA data into Microsoft Excel so that our experts can make use of it." (Id., p. 2.) Specifically, Plaintiffs identify four uses they intend to make of the information: (1) to compare the amount of water which residential customers used during the period of time in January, 2014, during which a "Do Not Use" order was in effect to the amount of water which they used during the same period of time in other years when no limitation upon water usage was in effect; (2) to develop a formula for calculating damages which residential customers incurred as a consequence of the limitation upon their use of water; (3) to compare with information from other sources which contain the same information; and (4) to utilize as evidence in assessing WVAWC's decision to allow the influx of water into its system

2

for a period of time after it learned of the January, 2014, chemical spill. (Id., p. 3.) Plaintiffs state that

while WVAWC produced the raw SQL Server data on an external hard drive[2], WVAWC has refused

to produce it in Microsoft Excel claiming that it is costly and WVAWC is not required to do so. (Id.,

pp. 3 - 4.) Thus, Plaintiffs assert, "WVAW ultimately agreed to produce the responsive data, but not

in a usable form." (Id., p. 5.) Plaintiffs assert that the information it seeks must be compelled pursuant

to Federal Rule of Civil Procedure 34(a)(1)(A). Plaintiffs further contend that the information must

be compelled pursuant to an Agreed Order Regarding Form of Production, of record as Document

No. 141. (Id., p. 6.) Plaintiffs point out that the Agreed Order requires that "the parties shall produce

electronically stored information in a form or forms in which it is ordinarily maintained or in a

reasonably usable form or forms." (Document No. 141, p. 2.) Plaintiffs further point out that the

Agreed Order requires that "[i]f a response to discovery requires production of ESI contained in a

database or comprehensive electronic accounting system, the affected parties shall meet and confer

concerning a reasonable method of production." (Document No. 141, p. 6.)

On March 10, 2015, WVAWC filed a Response in Opposition to Plaintiffs' Amended Motion

to Compel. (Document No. 297.) WVAWC begins by describing its water distribution system. (Id.,

pp. 1 - 2.) WVAWC then explains that Plaintiffs have sought information through the above quoted

Interrogatory and Request for Production and a February, 2015, Rule 30(b)(6) deposition of West

Virginia-American Water Company's Director of Operations, Mr. Sean Graves, "to measure the

---

[2] Plaintiffs submitted the Affidavit of Joshua McVey, the IT administrator with the Caldwell Practice, LC. (Document No. 272-1.) Mr. McVey states that "[t]he SCADA data that has been provided by the water company was given to us in the form of raw copies of four hard drives from four SCADA workstations." Mr. McVey explains that WVAWC has access to the SCADA data through a computer program called "Genesis" and "it should be trivial to run reports and/or create graphs from the database files via the . . . Genesis programs installed on the SCADA workstations at the water company . . . and should not require an inordinate amount of time or manpower for them to do so."

amount of water not used by customers during the Do Not Use period." (Id., pp. 2 - 3.) WVAWC then explains the structure and use of the SCADA system by the company. (Id., pp. 4 - 6.) WVAWC explains that "WVAW routinely uses SCADA data to identify system trends, which operators evaluate, for example to identify potential leakage or asset malfunction so that causes may be investigated and corrected. The company does not use SCADA data as Plaintiffs envision, as an exact recording of the status of the water system at a given point in time or for precise forensic research." (Id., p. 5.) WVAWC then explains the extent to which it has attempted to provide Plaintiffs with the information which they seek in discovery with the caveat that the information itself is incomplete and inaccurate and is not kept in a format which is easily adapted to this litigation. (Id., pp. 6 - 8.) WVAWC contends, citing Rule 26(b)(2)(B), that the SCADA information is not reasonably accessible and it would be unduly burdensome and costly to produce it as Plaintiffs request. (Id., p. 9.) WVAWC acknowledges, however, that WVAWC's Director of Operations testified that an Excel file could be created showing SCADA information. (Id., at fn. 5.) WVAWC explains that when it tried to query its current active SCADA database for flow rate and flow total data for the period from February, 2004, through 2015, it obtained "data only back to May 2012" and "[s]ome of the query results obtained are negative numbers or zeros, indicative of the replacement of a component or a malfunction in the system." WVAWC states that  in order to obtain the information which Plaintiffs request, it must load "data from old hard drives and flash drives into an active environment, which would need to be a refashioned former environment rather than the environment currently in use." (Id., pp. 10 - 11.) WVAWC indicates that it would take "weeks and months reconstructing old environments, hunting down old data tags, and writing new queries . . .. If it were successfully to accomplish those tasks, data gaps would still appear, for reporting assets may report for a while then become superfluous, left behind in favor of data that impacts more directly new operations or

4

priorities." (<u>Id</u>., pp. 11 - 12.) WVAWC asserts, therefore, that "most of the data sought is not reasonably accessible . . .." (<u>Id</u>., p. 12.) Next, WVAWC asserts that because the information gleaned from searching the SCADA system would not be complete or accurate, it would not be useful in estimating the amount of water Plaintiff did not use during the "Do Not Use" period. WVAWC contends therefore that "[t]he burden of producing the data outweighs its likely benefit under FRCP 26(b)(2)(c) and the Court should limit Plaintiffs' request for the information under Rule 26(b)(2)(C)(iii)." (<u>Id</u>., pp. 12 - 15.) WVAWC indicates that  it does not monitor the flow of water through all of its water distribution system with its SCADA system and, to the extent that it does, the information it obtains is not precise. (<u>Id</u>., p. 13.) WVAWC explains that "[t]his lack of precision does not matter to the company because it monitors only for trends – change or gross imbalance in the system." (<u>Id</u>., p. 14.) Citing the Affidavits of Mr. Michael Shank (Document No. 297-1.) and Mr. Doug Wingfield (Document No. 297-3.), WVAWC indicates that it would take weeks to cull the information which Plaintiffs request from active data and months to do so from inactive data. (Document No. 297, p. 14.) Finally, WVAWC states that because WVAW has produced SCADA date in the form in which it is ordinarily maintained and has given Plaintiffs the ability to gather data from it, WVAW has complied with Rule 34 and should not be compelled to produce the data in another form. (<u>Id</u>., pp. 15 - 18.) WVAWC states that Plaintiffs requested that WVAW "produce SCADA data in two different forms . Alternatively, Plaintiffs asked to query the system themselves." (<u>Id</u>., p. 18.) WVAWC states that WVAW "provided Plaintiffs with the ability to set up a parallel environment" and loaned them a license to use software to query it such that "Plaintiffs have as much opportunity as someone from WVAW would have to pull data from the database." (<u>Id</u>.)

The Court held a hearing upon Plaintiffs' Motion to Compel on Friday, March 13, 2015. Plaintiffs' counsel reported that on Wednesday, March 11, 2015, WVAWC provided an Excel

spreadsheet containing flow data for the period from 2012 to 2015. Plaintiffs' counsel indicated that it remained for WVAWC to submit a supplement to its discovery responses identifying the Excel spreadsheet as responsive to Plaintiffs' requests.[3] WVAWC's counsel explained that on February 6, 2015, WVAW produced the complete active database and the results of queries which indicated "data gaps, show zeroes reported, negative numbers reported in a dearth of information sought." WVAWC's counsel stated that Defendants had produced about a third of the data which Plaintiffs requested with the remainder "on databases that can't be retrieved without undue burden or expense …." WVAWC's counsel requested "a ruling that we've done enough." The Court inquired respecting the utility of the SCADA data, and Plaintiffs' counsel indicated that initially it was thought to be relevant and useful in proving Plaintiffs' claims of liability and entitlement to damages but, as Defendants made the data available, it appeared that the data had limited utility for proving how much water was not being used during the "Do Not Use" period but may generally be useful in determining whether Defendants exercised due care in processing water through their system. Considering the standard as provided in the ESI provisions of the Federal Rules, the Court determined that WVAWC had responded substantially to Plaintiffs' discovery requests and denied Plaintiffs' Motion to Compel allowing Plaintiffs leave to raise the issues respecting the SCADA data anew, if it appeared to Plaintiffs' counsel and experts after examining the Excel spreadsheet which Defendants had just provided that the SCADA data which Defendants had not provided would be relevant.

## DISCUSSION

The Federal Rules of Civil Procedure contemplate that in conjunction with disclosure, civil discovery is a process of elucidation and clarification of facts and circumstances relevant to claims

---

[3] It appears from the Docket Sheet that WVAWC supplemented its responses to Plaintiffs' discovery requests on March 17, 2015. (Document No. 312.)

and defenses as presented in pleadings through which the claims and defenses are validated, defined and shaped and issues are sharpened and refined for consideration at the dispositive motion stage and trial of a civil case. The civil discovery process is to be engaged in cooperatively. Violation of the Rules undermines the process.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides as follows:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Discovery is generally limited therefore to nonprivileged information which is relevant to any party's claims or defenses, and relevant information is information which is admissible at trial or might reasonably lead to the discovery of information which is admissible at trial.

Federal Rule of Civil Procedure 26(b)(2)(B) and (C) establishes a framework for considering whether disputably inaccessible ESI should be produced as follows:

(B) *Specific Limitations on Electronically Stored Information*. A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery. (C) *When required*. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
 (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
 (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

> (iii)    the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

The Advisory Committee Notes discuss and explain the 2006 Amendment of Rule 26(b) respecting ESI. The Notes state as follows:

> The responding party has the burden as to one aspect of the inquiry – whether the identified sources are not reasonably accessible in light of the burdens and costs required to search for, retrieve, and produce whatever responsive information may be found. The requesting party has the burden of showing that its need for the discovery outweighs the burdens and costs of locating, retrieving, and producing the information. In some cases, the court will be able to determine whether the identified sources are not reasonably accessible and whether the requesting party has shown good cause for some or all of the discovery, consistent with the limitations of Rule 26(b)(2)(C), through a single proceeding or presentation. The good cause determination, however, may be complicated because the court and parties may know little about what information the sources identified as not reasonably accessible might contain, whether it is relevant, or how valuable it may be to the litigation. In such cases the parties may need some focused discovery, which may include sampling of the sources, to learn more about what burdens and costs are involved in accessing the information, what the information consists of, and how valuable it is for the litigation in light of information that can be obtained by exhausting other opportunities for discovery.

Federal Rule of Civil Procedure 34(a)(1)(A) provides as follows:

(a) A party may serve on any other party a request within the scope of Rule 26(b):

> (1)    to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

> > (A)    any designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form[.]

Federal Rule of Civil Procedure 34(b)(2)(E) provides as follows:

> (E) *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> > (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
> >
> > (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
> >
> > (iii) A party need not produce the same electronically stored information in more than one form.

The Advisory Committee Notes discuss and explain the 2006 Amendment of Rule 34(b) respecting ESI. The Notes state as follows:

> Rule 34(b) provides that a party must produce documents as they are kept in the usual course of business or must organize and label them to correspond with the categories in the discovery request. The production of electronically stored information should be subject to comparable requirements to protect against deliberate or inadvertent production in ways that raise unnecessary obstacles for the requesting party. Rule 34(b) is amended to ensure similar protection for electronically stored information.

Upon a further full review of the record respecting Plaintiffs' Motion to Compel (Document No. 269.) and consideration of the above Rules, the Court concludes as it did at the hearing on March 13, 2015, that Plaintiffs' Motion should be denied. Though WVAWC objected to providing the SCADA data on grounds of relevancy, it nevertheless produced it to Plaintiffs initially in the format in which it was maintained ordinarily along with the means to access it and later then in an Excel format as Plaintiffs requested but only for the period from 2012 through 2015 as that data was more readily accessible. WVAWC contended that SCADA data from earlier periods of time was not reasonably accessible, would be burdensome and costly to produce and has little, if any, evidentiary value. Plaintiffs' counsel did not disagree that the SCADA data was not useful as proof of the amount

of water which Plaintiffs did not use during the "Do Not Use" period but surmised, though they had not had sufficient time to examine Defendant's production of the SCADA data in the Excel format, that the SCADA data might have general relevancy respecting whether or not Defendants exercised due care in processing water through their water distribution system. The Court finds that WVAWC has adequately explained and proven how production of SCADA data from earlier periods would be burdensome and costly. The SCADA data from earlier periods is therefore not reasonably accessible. It is further evident that the relevance of SCADA data from earlier periods of time is limited and uncertain such that consideration for the burden and cost of producing it outweighs the likely benefit of it. Following the framework of Rule 26(b)(2)(B) and (C), unless Plaintiffs demonstrate good cause for production of the SCADA data from earlier periods, the Court will not order its production.

It is therefore hereby **ORDERED** that Plaintiffs' Motions to Compel Defendant West Virginia American Water Company to Produce Responsive Archived SCADA Data in a Reasonably Useable Form (Document Nos. 269 and 272.) are **DENIED**. Plaintiffs may further request production of the SCADA data from periods prior to 2012 anew, if it appears to Plaintiffs' counsel and experts after examining the data in Excel format which Defendants provided that the SCADA data from periods prior to 2012 has specific and certain relevance.

The Clerk is directed to transmit a copy of this Memorandum Opinion and Order to counsel of record.

ENTER: April 17, 2015.

R. Clarke VanDervort
United States Magistrate Judge

10