UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CRYSTAL GOOD, individually and as
parent and next friend of minor children
M.T.S., N.T.K. and A.M.S. and
MELISSA JOHNSON,
individually and as parent of her unborn child,
MARY LACY and JOAN GREEN and JAMILA AISHA OLIVER,
WENDY RENEE RUIZ and KIMBERLY OGIER and ROY J. McNEAL and
GEORGIA HAMRA and MADDIE FIELDS and BRENDA BAISDEN, d/b/a
FRIENDLY FACES DAYCARE, and ALADDIN RESTAURANT, INC., and
R. G. GUNNOE FARMS LLC, and DUNBAR PLAZA, INC.,
d/b/a DUNBAR PLAZA HOTEL,
on behalf of themselves and all others
similarly situated,

          Plaintiffs,

v.                                    Civil Action No.: 2:14-01374

AMERICAN WATER WORKS COMPANY, INC., and
AMERICAN WATER WORKS SERVICE COMPANY, INC., and
EASTMAN CHEMICAL COMPANY and
WEST VIRGINIA-AMERICAN WATER COMPANY,
d/b/a WEST VIRGINIA AMERICAN WATER, and
GARY SOUTHERN and DENNIS P. FARRELL,

          Defendants.


MEMORANDUM OPINION AND ORDER


          Pending are cross-motions for summary judgment as to

plaintiffs' claims for breach of contract against Defendant West

Virginia-American Water Company ("WV American" or "WVAWC").  WV

American is a subsidiary of American Water Works Company, Inc.,

which also owns American Water Works Service Company, Inc. (all

three being referred to, collectively, as "the water company

defendants"). WV American filed a motion May 10, 2016 requesting summary judgment on the contractual claims, and also contending that its customers' tort claims against it are barred by the "gist of the action" doctrine. Plaintiffs' motion, filed May 26, 2016, requests summary judgment as to the contractual claims against WV American.

## Background

A.   The Incident

On January 9, 2014, approximately 300,000 residents in Charleston, West Virginia, and the surrounding area suffered an interruption in their water supply. The interruption was caused by a spill into the Elk River of a coal processing mixture composed primarily of a chemical known as Crude MCHM, sold and distributed exclusively by Eastman Chemical Company. Crude MCHM consists primarily of the chemical 4-methylcyclohexane methanol. The mixture that spilled was prepared and owned by and was being stored in a facility owned and operated by Freedom Industries, Inc. ("Freedom Industries"). Freedom Industries called the mixture that spilled into the Elk River "Shurflot 944". Shurflot 944 mixed Crude MCHM with other chemical elements, present in relatively small proportion. Once in the river, Crude MCHM infiltrated and contaminated the WV American water

treatment plant in Charleston, known as the Kanawha Valley
Treatment Plant.

Plaintiffs assert that the water company defendants
could have prevented the incident with better precautions,
regulatory compliance, and use of reasonable care.  Some class
members operate businesses that lost revenue due to the
interruption.  Others claim physical injuries, asserting that
exposure to Crude MCHM in the environment through human pathways
caused bodily injury and necessitated that they be medically
monitored.  Still others are alleged to have incurred costs for
water replacement, travel, and other associated expenses.

B.   The First Amended Consolidated Class Action Complaint

On December 9, 2014, the First Amended Consolidated
Class Action Complaint (the "complaint") became the operative
pleading in the case.  Count Eighteen of the complaint alleges
"Breach of contract against the water company defendants," and
plaintiffs explain the claim as follows:

> 277. A contract existed between the Plaintiffs and
> American Water Defendants whereby the Defendants would
> provide safe and adequate drinking water and water for
> other uses.
>
> 278. American Water Defendants breached their contract
> with the Plaintiffs, entitling the Plaintiffs to all
> contract damages, including, but not limited to,

damages associated with the breach and consequential
damages.

Pls.' Compl. ¶¶ 277-278, ECF No. 170.


   C.   The Court's June 3, 2015 Order

        On January 7, 2015, the water company defendants moved
to dismiss a number of plaintiffs' claims, including the breach
of contract claim.   In its memorandum opinion and order of June
3, 2015 resolving defendants' motion to dismiss several counts,
the court considered the breach of contract claim.   Regarding
defendants' arguments, at that time, that "an interruption in
service . . . is not a breach of contract," the court wrote as
follows:

        As noted, the parties appear to agree that the
     water company defendants provide service to their
     customers under a binding contract.   While the terms
     of the contract might be stated in greater detail, its
     essence is that water will be supplied so long as the
     customer pays for the service.   Service interruptions
     occur to segments of a water utility's customers for a
     variety of reasons, foremost being the rupture of
     water lines.   In those types of situations, a water
     utility might understandably avail itself of the kinds
     of arguments the water company defendants make here.

        The scale of the alleged service failure here,
     however, which essentially shut down the entire system
     for days, for reasons that plaintiffs assert were
     entirely avoidable, would seem to require affirmative,
     defensive proof by the water company defendants in
     order to be absolved of their contractual bargain.
     The better course at this stage is to take the
     parties' water-supply bargain at face value, with the

4

> water company defendants obliged to prove their
> affirmative defense at the appropriate juncture.
> Count Eighteen is deemed to state a claim at this
> point in the case.  It is [ordered] that the motion to
> dismiss as to this ground be, and hereby is, denied.

June 3, 2015 Mem. Op. and Order 24-25, ECF No. 378.

    D.     The Pending Motions for Summary Judgment

        WV American's motion states that the parties
agree on the existence of a contract between WV American
and its customers, and further agree as to the general
source of the contract's obligations:

> In this case, the parties agree that the relationship
> between WVAWC and its customers is one of contract,
> and further agree that the rules and regulations of
> the [Public Service Commission ("PSC")] promulgated
> pursuant to its rulemaking authority under the Act are
> incorporated into all customer contracts.  The issue
> here is whether Plaintiffs can prove WVAWC breached
> its customer contracts as a result of the ["do not
> use" notice].

Def.'s Mem. in Supp. of Mot. for Summ. J. 1-2, ECF No. 740
(hereinafter "Def. Mot.").  Plaintiffs contend that two
regulations promulgated by the Public Service Commission proffer
the relevant contractual duties that WV American owed to the
class members.  The first is W. Va. C.S.R. § 150-7-4.1.e.4,
which reads as follows:

> The utility's approval of an application for water to
> be supplied to any premises shall constitute a right
> to the customer to take and receive a supply of water
> for said premises for the purposes specified in such
> application (i.e. Residential, Commercial, and
> Industrial) subject only to the fulfillment of the
> conditions of these rules by the customer.

The second is W. Va. C.S.R. § 150-7-5.9.a:

> All water furnished by a utility for domestic use
> shall be pure, wholesome, potable and in no way
> dangerous to the health of the consumer.

Plaintiffs argue that these regulations together establish duties (1) to provide customers with water ("a right to the customer to take and receive a supply of water"), and (2) to ensure that water "furnished . . . for domestic use" be "wholesome, potable, and in no way dangerous."  See Pls.' Mem. in Supp. of Mot. for Summ. J. 13-14, ECF No. 797 (hereinafter "Pl. Mot.").  Plaintiffs contend that these duties were breached in January 2014 for entirely avoidable reasons, id. 15-25, and, accordingly, plaintiffs should receive summary judgment as to their breach of contract claims.

WV American asserts that the regulations cited by plaintiffs are not the source of WV American's duties to its customers, and the court should instead look to W. Va. Code § 24-3-1, which describes more generally the standards to which utilities should be held:

6

> Every public utility subject to this chapter shall establish and maintain adequate and suitable facilities, safety appliances or other suitable devices, and shall perform such service in respect thereto as shall be reasonable, safe and sufficient for the security and convenience of the public, and the safety and comfort of its employees, and in all respects just and fair, and without any unjust discrimination or preference.

W. Va. Code § 24-3-1.  WV American argues that a utility breaches its contract with customers by acting "unreasonably," which requires "more than the mere fact of a service interruption."  Def. Mot. 4.  Although WV American does not provide clear guidance as to what "more" is required to demonstrate a breach of contract, authorities cited in WV American's brief suggest that a utility must somehow be at fault for an interruption to demonstrate a breach.  Def. Mot. 4.

WV American argues, in the alternative, that it has not violated any of the regulations identified by plaintiffs. Def. Mot. 6-13.  It also pleads the affirmative defense of impracticability.  Finally, WV American argues that the "gist of the action" doctrine should bar plaintiffs from bringing tort claims in this case, because plaintiffs have, essentially, impermissibly attempted to re-cast contract claims as tort claims.  Def. Mot. 19-25.

7

Discussion

A.    Summary Judgment Standard

A party is entitled to summary judgment "if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(c). Material facts are
those necessary to establish the elements of a party's cause of
action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).

A genuine issue of material fact exists if, in viewing
the record and all reasonable inferences drawn therefrom in the
light most favorable to the non-moving party, a reasonable fact-
finder could return a verdict for the non-movant. Id. The
moving party has the initial burden of showing — "that is,
pointing out to the district court — that there is an absence of
evidence to support the nonmoving party's case." Celotex Corp.
v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies
this burden, then the non-movant must set forth specific facts
as would be admissible in evidence that demonstrate the

8

existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).  Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.

B.    WV American's Contract with Plaintiffs

       The central question is what contractual duty WV American owed its customers.  As stated above, the parties "agree that the relationship between WVAWC and its customers is one of contract, and further agree that the rules and regulations of the PSC promulgated pursuant to its rulemaking authority . . . are incorporated into all customer contracts."[1] Def. Mot. 1-2.  The parties have thus stipulated that the

---

[1] The court notes that this type of stipulation is not ordinary, and that the analysis in this case may differ from those in other cases regarding the liability of a water company to its customers.  Broadly speaking, cases recognize that water companies may be liable based on theories of tort, contract, or statutory causes of action.  See Weinberg v. Dinger, 106 N.J. 469, 484, 524 A.2d 366 (1987)(discussing history and principles of liability for water utilities).

contract between WV American and its customers draws its content from the state statutes and regulations governing utilities.[2]

As WV American correctly notes, the state statute dictates that service "shall be reasonable, safe and sufficient for the security and convenience of the public." W. Va. Code § 24-3-1. Although WV American focuses on the term "reasonable," and suggests that "reasonableness" is the central requirement for utilities to fulfill, it does not consider the additional requirements that service also be "safe" as well as "sufficient" "for the security and convenience of the public." Those additional terms not only provide a framework for analyzing this case, but they are also consistent with the regulations cited by plaintiffs. The language of W. Va. C.S.R. § 150-7-5.9.a follows the requirement of "safety" in § 24-3-1, as the regulation requires that "water furnished . . . for domestic use shall be pure, wholesome, potable and in no way dangerous to the health of the consumer." Similarly, the requirement that service be "sufficient" for the public's "security and convenience" implies

---

[2] It is also noted that the PSC's regulations on this matter are considered "legislative rules" and thus have the force of law. The statute states that "The commission shall prescribe such rules and regulations as may be necessary to carry out the provisions of this chapter." W. Va. Code § 24-1-7. Inasmuch as those rules and regulations are "promulgated after or pursuant to authorization of the Legislature," they have "[t]he force of law." W. Va. Code § 29A-1-2; see also Appalachian Power Co. v. State Tax Dep't of W. Virginia, 195 W. Va. 573, 583 (1995).

that customers have some "right . . . to take and receive a
supply of water."  W. Va. C.S.R. § 150-7-4.1.e.4.

The undisputed facts in this case show that WV
American breached these duties.  Plaintiffs state, and WV
American does not dispute, that from January 9, 2014, until at
least January 13 (and until January 17 for some customers), WV
American put in place a "do not use" order.  Pl. Mot. 16.  As WV
American itself states, under the "do not use" order,
"[c]ustomers were expressly and specifically told not to use the
water for domestic use, i.e., bathing, cooking, and cleaning.
Customers were told the only permissible uses were for
sanitation and fire protection."  Def. Mot. 17.  The reason for
the "do not use" order was the chemical spill that released MCHM
into the water supply, and thus into customers' homes and
businesses.  See Def.'s  Mem. in Opp'n to Pls.' Mot. for Summ.
J. 4, ECF No. 829 (hereinafter "Def. Resp.").

In delivering MCHM-polluted water to customers' homes,
WV American failed to ensure that water was "safe . . . for the
security and convenience of the public."  WV American also
breached its contractual duty under W. Va. C.S.R. § 150-7-5.9.a,
in that the "water furnished . . . for domestic use" was not

11

"pure, wholesome, potable and in no way dangerous to the health of the consumer."[3]

The "do not use" order effectively cut off customers in the Charleston area from using water for several purposes, including cooking, cleaning, and bathing, for several days.  An absence of water to use for basic domestic purposes, for the entire city and its environs, for several days, amounts to a breach of the requirement to provide "sufficient" service "for the security and convenience of the public," and also violates the customers' "right . . . to take and receive a supply of water."

WV American states, repeatedly, that a "mere" service interruption is not a breach of contract.  WV American may be correct, in that the statutory requirement of "sufficien[cy]" "for the security and convenience of the public" does not demand impeccable service without interruption.  At present, however,

_____

[3] WV American suggests that it did not violate this regulation because it was not "furnishing" any water for domestic use, inasmuch as it had put in place a "do not use" order which told customers not to consume the water for most domestic purposes. Def. Mot. 17.  This reading of the regulation is puzzling.  A company that knowingly pipes water into thousands of customers' homes, kitchens, and showers can hardly claim that this water is not "furnished for domestic use" simply because of a notice sent contemporaneously with the supply of water.  If WV American's reading were correct, then the requirement of potable water would become a nullity, inasmuch as it could simply inform all customers not to use their home water for cooking or bathing.

the question of whether all interruptions are breaches is an academic one.  The court need not decide, for example, whether very brief service interruptions for individual consumers breach a contract.  In this case, 300,000 residents in the Charleston and surrounding area received contaminated water and a "do not use" order for a number of days.  A utility's broad failure to carry out its main function for an entire metropolitan area, for several days at a time, certainly serves as a breach of its obligation even when individual, momentary interruptions in service may not.

WV American cites a number of cases from other jurisdictions suggesting that its conduct does not amount to a breach, but the cases are inapposite for various reasons.  For example, WV American cites In re Illinois Bell Switching Station Litigation for the proposition that a utility "is nowhere charged with the duty to provide completely uninterrupted service."  161 Ill. 2d 233, 243, (1994).  But plaintiffs here have not suggested that utilities have a duty to provide "completely uninterrupted service."

C.    The Impracticability Defense

Plaintiffs request summary judgment as to the question of whether WV American's performance of its contracts with its

13

customers was impracticable.  As West Virginia's Supreme Court

of Appeals explained in <u>Gaddy Engineering Co. v. Bowles Rice</u>

<u>McDavid Graff & Love, LLP</u>,

> Under the doctrine of impracticability, a party to a
> contract who claims that a supervening event has
> prevented, and thus excused, a promised performance
> must demonstrate each of the following: (1) the event
> made the performance impracticable; (2) the
> nonoccurrence of the event was a basic assumption on
> which the contract was made; (3) the impracticability
> resulted without the fault of the party seeking to be
> excused; and (4) the party has not agreed, either
> expressly or impliedly, to perform in spite of
> impracticability that would otherwise justify his
> nonperformance.

231 W. Va. 577, 583 (2013).  "Central to the application of the

doctrine of impracticability is a determination that the party

who seeks to be excused from performance was not at fault or had

no control as to the nonoccurrence of the presupposed event upon

which the contract depended."  <u>Gaddy</u>, 231 W. Va. at 583-84.


     Having reviewed both parties' arguments and evidence,

the court concludes that the impracticability of WV American's

contractual performance presents a number of genuine factual

disputes.  WV American emphasizes its lack of knowledge

regarding the nature of the contaminants in the water

immediately following the spill, the unexpected nature of

Freedom's criminal negligence and the resulting contamination,

and that WV American is not at fault for Freedom's mistake.  <u>See</u>

14

generally Def. Resp.  Plaintiffs present a different narrative, suggesting, for example, that WV American should have been prepared for a contamination event such as the one that occurred in this case, and that, to the extent they were unprepared, they were at fault.  See Pl. Mot. 15.

The question of WV American's ability to handle the spill, and, if such ability was minimal, why it was so, present factual questions for a jury to consider, particularly with respect to fault.  Accordingly, the court declines to grant either party summary judgment on the impracticability defense.

D.    The "Gist of the Action" Doctrine

WV American has also moved for summary judgment against WV American's "customers" on the basis of the "gist of the action" doctrine.  See Def. Mot. 23.

WV American believes that its duties to abstain from polluting customers' water supply or interrupting customers' usual water service stem from contract, and thus may not support tort claims.  WV American specifically states that "claims of [WV American's] customers should be limited to contract [under the gist of the action doctrine]."  Pl. Mot. 23 (emphasis added).

15

"Succinctly stated," the "gist of the action" doctrine teaches that "whether a tort claim can coexist with a contract claim is determined by examining whether the parties' obligations are defined by the terms of the contract." Gaddy, 231 W. Va. at 586 (citing Goldstein v. Elk Lighting, Inc., No. 3:12-CV-168, 2013 WL 790765 at *3 (M.D. Pa. 2013)).  West Virginia's Supreme Court of Appeals has described its elements as follows:

> Under this doctrine, recovery in tort will be barred when any of the following factors is demonstrated: (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

Gaddy, 231 W. Va. at 586 (citing a case interpreting Pennsylvania law, Star v. Rosenthal, 884 F. Supp. 2d 319, 328 (E.D. Pa. 2012), for the source of the doctrine).

Explicit reference to the "doctrine" so formulated did not appear in West Virginia or Pennsylvania law before the turn of the twenty-first century.  Prior to that, courts had occasionally referred to the "gist" or essence of an action in determining whether that action sounded in contract or tort, but had not formulated the doctrine in the manner quoted in Gaddy.

16

See, e.g., Cochran v. Appalachian Power Co., 162 W. Va. 86, 92
(1978) ("'If the action is not maintainable without pleading and
proving the contract, where the gist of the action is the breach
of the contract, either by malfeasance or nonfeasance, it is, in
substance, an action on the contract, . . .'" (quoting 1 Am.
Jur. 2d Actions § 8 (1962))).  A formal statement of the "gist
of the action doctrine" itself, especially the four-factor
analysis noted in Gaddy, first appeared in Pennsylvania law, to
which the Gaddy decision refers for the statement of the
doctrine.  See Star, 884 F.Supp.2d at 328–29 (quoting eToll,
Inc. v. Elias/Savion Advert., Inc., 811 A.2d 10, 19 (Pa. Super.
Ct. 2002) to the effect that "persuasive authority interpreting
Pennsylvania law has restated the gist of the action doctrine in
a number of similar ways. These courts have held that the
doctrine bars tort claims: (1) 'arising solely from a contract
between the parties' . . . ; (2) where 'the duties allegedly
breached were created and grounded in the contract itself' . . .
; (3) where 'the liability stems from a contract' . . . ; or (4)
where the tort claim 'essentially duplicates a breach of
contract claim or the success of which is wholly dependent on
the terms of a contract'" (citations omitted)).[4]

---

[4] To clarify the doctrine, it is observed that the Gaddy decision
recognized the lower Pennsylvania court's statement of the
doctrine in West Virginia before the Pennsylvania Supreme Court

In determining the scope of the "gist of the action" doctrine, it is worthwhile to make several observations. First, the Supreme Court of Appeals of West Virginia has explicitly distinguished instances in which the gist of the action doctrine governs all claims from those in which tort duties are also at stake. In Gaddy Engineering, the engineering company's sole basis for its claims was a private, contractual, fee-sharing agreement with a law firm for the purpose of evaluating claims of potential firm clients. 231 W. Va. at 580. The law firm had not held itself out to the community as a purveyor of public services, as here, and the supreme court found that the company did not allege that the law firm had breached broad social duties of the type endemic to tort law. See id. at 586-87. The

_____

had occasion to opine on its exact formulation. See Star, 884 F. Supp. 2d at 328 (noting that the Pennsylvania Supreme Court "ha[d] not expressly adopted the gist of the action doctrine" as of 2012); Alex A. Tsiatsos, The Gist of the Action Doctrine: Lessons from Pennsylvania's Search for Cause of Action Essences, 119 W. Va. L. Rev. Online 1, 2-3 (2016) (explaining that the Pennsylvania Supreme Court did not formally adopt the gist of the action doctrine until Bruno v. Erie Ins. Co., 106 A.3d 48, 63 (Pa. 2014), discussed below, one year after the West Virginia Supreme Court of Appeals adopted in Gaddy the statement of the doctrine by the lower Pennsylvania court in eToll). As discussed below, the Bruno decision reframed the focus of the doctrine from "essences" to an analysis of the relevant "duties," specifying that the doctrine does not abrogate broad social duties of the kind protected by the law of torts. 106 A.3d at 68 ("If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort."); see also Tsiatsos, supra, at 5.

Supreme Court of Appeals noted the relevance of the gist of the action doctrine on precisely this basis: "we think it is obvious that the petitioner's fraud claims were clearly contract claims disguised as tort claims <u>as the source of the alleged breach of duties was the alleged fee-sharing agreement and not 'the larger social policies embodied by the law of torts.'</u>"   <u>Id.</u> at 586 (emphasis added) (quoting <u>Goldstein</u>, at *3).

Second, a rule of West Virginia law relevant to the present dispute holds that a water utility customer whose service is deficient may choose between contract and tort causes of action.   <u>Carter v. Willis</u>, 145 W. Va. 779 (1960).   In <u>Carter</u>, the plaintiff, who had been a customer of Willis Water Works for several years, complained, <u>inter alia</u>, that "the water supply had never been adequate to satisfy the needs of himself and his household," and that "there would not be sufficient water to wash, cook[,] bathe, flush the commode, or for any other purpose, until ten or eleven o'clock at night."   <u>Id.</u> at 781-82. Regarding the plaintiff's cause of action, the court wrote as follows:

> [T]he instant action is one of trespass on the case.
> It is so captioned and the allegations of the
> declaration assert a negligent breach of duty on the
> part of the defendant.   It is true that the duty
> arises out of a contract between plaintiff and
> defendant wherein the defendant agreed to supply the
> plaintiff with an adequate amount of water in return

for a monetary consideration.  <u>Nevertheless, in such a</u>
<u>situation the plaintiff may, at his option, maintain</u>
<u>an action, ex contractu, for breach of contract, or an</u>
<u>action ex delicto, for breach of duty, where the</u>
<u>defendant negligently fails to comply with the terms</u>
<u>of his contract.</u>  The plaintiff herein has elected to
pursue his remedy in tort, as was his privilege, but,
by such election, he is necessarily limited in the
recovery of damages to the amount properly allowable
in a tort action.

145 W. Va. at 784 (emphasis added).


        This principle has been addressed in <u>Cochran v.</u>

<u>Appalachian Power Co.</u>, a public utility case involving

termination of electric service.  There, the West Virginia

Supreme Court of Appeals discussed <u>Carter</u> and noted that "[m]ost

jurisdictions addressing the issue have held that a complaint

that could be construed as being either in tort or on contract

will be presumed to be in contract."  162 W. Va. at 91-93.  But

this statement plainly was dictum.  The court went on, in that

opinion, to conclude the following:


        We thus hold that a complaint that could be construed as
        being either in tort or on contract will be presumed to
        be on contract <u>whenever the action would be barred by</u>
        <u>the statute of limitation if construed as being in tort</u>.

<u>Id.</u> at 93 (emphasis added).


        Third, Pennsylvania's Supreme Court has lately

clarified the status of the doctrine that had its first formal

statement in Pennsylvania.  In <u>Bruno v. Erie Insurance Co.</u>, the

court observed that "merely because a cause of action between two parties to a contract is based on the actions of the defendant undertaken while performing his contractual duties, this fact, alone, does not automatically characterize the action as one for breach of contract."  106 A.3d 48, 63 (Pa. 2014). The court continued:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract — i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract — then the claim is to be viewed as one for breach of contract.  If, however, the facts establish that the claim involves the defendant's violation of a broader social duty . . . then it must be regarded as a tort.

Id. at 68 (emphasis added) (citations omitted).  In sum, when duties and standards of care not ordinarily required by tort law are created by contract, the action must be on contract.  When "a broader social duty" owed to all individuals is involved, however, the highest courts in Pennsylvania and West Virginia agree that a cause of action in tort may be preserved.

These principles underscore the limits of the "gist of the action" doctrine.  The parties agree that WV American and its customers have a contract into which various public utility regulations are incorporated.  See Def. Mot. 1-2.  WV American argues that all claims of its customers are barred by the gist

21

of the action doctrine.  See id. 23.  Not all of its customers'
claims, however, arise solely under the contractual provisions
that the parties have identified.

As earlier noted, plaintiffs have identified relevant
West Virginia regulations that create at least two specific
contractual duties with which WV American must comply: (1) to
provide a "supply of water for [an applicant's] premises for the
purposes specified in such application (i.e. Residential,
Commercial, and Industrial)," W. Va. C.S.R. § 150-7-4.1.e.4; and
(2) to provide water that is "pure, wholesome, potable and in no
way dangerous to the health of the consumer," W. Va. C.S.R. §
150-7-5.9.a.  As WV American acknowledges, there also exists a
general duty of public utilities to "establish and maintain
adequate and suitable facilities . . . [and] perform such
service in respect thereto as shall be reasonable, safe and
sufficient for the security and convenience of the public."  W.
Va. Code § 24-3-1.  This duty is not a private, contractual duty
but a duty to the entire public.  As plaintiffs note, West
Virginia provides by statute a private right of action for
"[a]ny person" to bring suit against a public utility for
damages arising from violations of this public duty.  W. Va.
Code § 24-4-7.

22

Simply stated, WV American had a contractual duty to provide potable water to its customers.  It also had an affirmative duty, independent of the existence of the contract, not only to its customers but to the public using its water to safeguard its water source from toxic substances that may foreseeably invade its system.  Here, plaintiffs assert that it was reasonably foreseeable to WV American that its failure to exercise the due care of activating the Coonskin Shoals intake as an alternate water source left its water supply vulnerable to leakage from the toxic chemicals being mixed, stored, and shipped at Elk River sites between Coonskin Shoals and its treatment plant.

Under West Virginia law, however, a claimant is not free to pursue the same claim in both contract and tort simultaneously.  Instead, the claimant must elect to pursue the claim either in tort or on contract.  See Carter, 145 W. Va. at 784 ("[P]laintiff may, at his option, maintain an action, ex contractu, for breach of contract, or an action ex delicto, for breach of duty, where the defendant negligently fails to comply with the terms of his contract.").  Accordingly, customers who allege injuries under both a negligence theory and a breach of contract theory must elect whether to proceed on contract or in tort.

## Conclusion

For the reasons stated herein, the court ORDERS that WV American's motion for summary judgment, and plaintiffs' motion for summary judgment, be, and they hereby are, denied.

The Clerk is directed to transmit copies of this order to counsel of record and any unrepresented parties.

ENTER: September 27, 2016

John T. Copenhaver, Jr.
United States District Judge