UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CRYSTAL GOOD, individually and as
parent and next friend of minor children
M.T.S., N.T.K. and A.M.S. and
MELISSA JOHNSON, individually and as parent of her unborn
child, MARY LACY and JOAN GREEN and JAMILA AISHA OLIVER,
WENDY RENEE RUIZ and KIMBERLY OGIER and ROY J. McNEAL and
GEORGIA HAMRA and MADDIE FIELDS and BRENDA BAISDEN, d/b/a
FRIENDLY FACES DAYCARE, and ALADDIN RESTAURANT, INC., and
R. G. GUNNOE FARMS LLC, and DUNBAR PLAZA, INC.,
d/b/a DUNBAR PLAZA HOTEL, on behalf of themselves
and all others similarly situated,

          Plaintiffs,

v.                                    Civil Action No.: 2:14-01374

AMERICAN WATER WORKS COMPANY, INC., and
AMERICAN WATER WORKS SERVICE COMPANY, INC.,
and EASTMAN CHEMICAL COMPANY, and
WEST VIRGINIA-AMERICAN WATER COMPANY,
d/b/a WEST VIRGINIA AMERICAN WATER, and
GARY SOUTHERN and DENNIS P. FARRELL,

          Defendants.


MEMORANDUM OPINION & ORDER


          Pending are motions challenging the adequacy of the

notice provided to class members, filed by movant Rachel Carrico

on February 11, 2016 (ECF No. 581), and by movants Paula J.

Compston, Charles Justice, and Cindra Justice on February 12,

2016.  (ECF No. 583, 586).  The motions seek an extension of

time to opt out of the class and the issuance of an additional

notice to class members.  Movants are represented by counsel who

also represent many of the approximately 2,100 individuals and businesses that have opted out of the class.

Subsequent to filing her motion, Rachel Carrico filed a supplement to the motion on February 12, 2016.  (ECF No. 584). In a second supplemental filing, on February 18, 2016, Ms. Carrico also moved to intervene in this action.  (ECF No. 599).

## Factual and Procedural Background

In this consolidated class action, plaintiffs bring a number of claims relating to a spill of the chemical Crude 4-methylcyclohexanemethanol ("Crude MCHM") into the Elk River in January 2014 and the resulting interruption of water service to residents and businesses in the affected area.[1]  On October 9, 2015, the court certified a class for liability purposes, pursuant to Federal Rule of Civil Procedure 23(c)(4), to determine the fault of defendants and the comparative fault of non-party Freedom Industries, Inc.

---

[1] Plaintiffs' claims are more fully discussed in the First Amended Consolidated Class Action Complaint (ECF No. 170) and the court's order certifying the class (ECF No. 470).

By order entered December 16, 2015, the court approved class plaintiffs' proposed notice plan, providing for notice to class members describing the certification of the action and the proposed settlements between the class and the two individual defendants, Gary Southern ($350,000) and Dennis P. Farrell ($50,000).  (ECF No. 514).  The notice plan provided for direct mailing of the approved notice to approximately 92,000 addressees identified by defendant West Virginia-American Water Co. as customers supplied water by the affected treatment plant on or around January 9, 2014.  These addresses were checked by the notice administrator against the National Change of Address database maintained by the United States Postal Service.  In addition, the notice was supplemented by newspaper publication on two consecutive Saturdays in the Charleston Gazette-Mail and local newspapers in Parkersburg, Point Pleasant, Huntington, Beckley, and Logan.  Finally, the notice administrator maintained a toll-free helpline and a website to answer class member questions.[2]

---

[2] The full notice plan is described in the Declaration of John S. Jenkins, CPA, notice administrator.  (ECF No. 507-2).

The notice, mailed to class members beginning December 21, 2015, described the class certification and partial settlement, and informed class members of their options as follows:

### What are your options?

Stay in the Class: *To stay in the Class, you do not have to do anything*. If there is a verdict in your favor, you will be notified about what you must do to demonstrate that you are entitled to recover any money. You will be legally bound by all orders and judgments of the Court, and you will not be able to sue the defendants in a separate action about the specific legal claims in this case.

Get out of the Class: If you want to keep your rights to sue the defendants yourself over the claims in this case, using your own lawyer, you need to opt out or exclude yourself. If you exclude yourself, you cannot get money or benefits from this lawsuit if any are awarded. To ask to be excluded, send a letter to Clerk of the Court, 6009 Robert C Byrd United States Courthouse, 300 Virginia Street, Charleston, WV 25301 postmarked no later than February 12, 2016, that says you want to be excluded from Good, et al. v. American Water Works Company, Inc. et al, Civ. A. No. 2:14-01374. Include your name, address, telephone number, and your personal signature.

Object to the Settlement: If you object to the settlement with individual defendants, you need to make that known by sending a letter to Clerk of the Court, 6009 Robert C Byrd United States Courthouse, 300 Virginia Street, Charleston, WV 25301 postmarked no later than February 12, 2016, that says you object to the settlement with either or both of the individual defendants in Good, et al. v. American Water Works Company, Inc. et al, Civ. A. No. 2:14-01374. Include your name, address, telephone number, and your personal signature. Also be sure to include the reason(s) why you object to the settlement and state that you intend to appear at the final

settlement hearing to state your objection, either
personally or through your lawyer.

<u>Appear in Court:</u> If you stay in the Class you have the
option of hiring your own lawyer (at your expense) to
appear in Court for you.

Order Preliminarily Approving Settlement and Form of Order on

Class Certification, Exhibit A (December 16, 2015).  (ECF No.

514-1).

One day before the court's February 12 deadline for

class members to opt out or object to the individual defendants'

settlement, movant Carrico filed her motion challenging the

adequacy of the notice and requesting an extension of time to

opt out, "for the benefit of [herself] and all putative, absent

class members similarly situated."  (ECF No. 581 at 1).  Movant

Carrico argues that the notice "is wholly inadequate and

misleading and must be deemed ineffective to comply with

F.R.C.P. 23 or the United States Constitution."  <u>Id.</u> at 13.  The

remaining movants joined Carrico's motion the following day.  In

support of their motions, movants also submitted a report by

Todd B. Hilsee, a specialist in "legal notification issues."

Declaration of Todd B. Hilsee on Notice of Partial Settlement

and "Fault-Only" Litigation Class (ECF No. 583-1) (hereinafter

"Hilsee Decl.").

Carrico's motion identifies nine purported deficiencies in the court-approved notice.  First, Carrico states generally that the notice is confusing, and that it does not make use of the "clear and concise language" required by Rule 23.  In particular, Carrico objects to the form of notice chosen, arguing that the notice was not the "best notice that is practicable under the circumstances" because it was mailed as Presort 1st Class Mail, Bulk Mail on a folded sheet of paper, which she compares to "junk mail."  Carrico claims that she contacted 63 class members and that 27 claimed not to have received the notice.  In a later filing, Carrico submitted an exhibit reflecting a poll conducted by Gravitas Marketing, stating that a survey of 464 residents in Kanawha County showed that only 34% of class members recalled receiving a notice. (ECF No. 599-1).

Many of Carrico's objections relate to the court's decision to certify a Rule 23(b)(4) issue class as to liability only.  Carrico argues that the notice does not adequately explain what will happen at the liability-only trial, how individual damages would be determined after a finding of fault, or what would be required of class members in order to obtain payment of those damages.  These criticisms are echoed in the report by movants' expert, Mr. Hilsee.

The balance of Carrico's objections relate to other perceived omissions in the notice.  Carrico argues that the notice should have identified the geographic area in which class members are located and ought to have contained more information regarding the composition of the class, in particular the number of class members.  The movant suggests that without an estimate of the number of class members, recipients might misunderstand the amount they would receive from the proposed $400,000 settlement with the two individual defendants.  Carrico also objects to the notice's description of the claims at issue in the case and the failure of disclosure respecting potential attorney's fees for class counsel.

In their response, class representative plaintiffs begin by objecting to the movants' appearance through counsel, and their motions regarding class notice, as procedurally improper.  Plaintiffs argue that as non-parties, movants are not in a position to move this court for the relief requested.  In addition, plaintiffs argue that movant Carrico's request to intervene should be denied because she cannot meet the requirements governing intervention set out in Federal Rule of Civil Procedure 24.

While they urge the court not to reach the merits of movants' objections, plaintiffs respond to each objection in order to support the adequacy of the court-approved notice. For example, plaintiffs reject the contention that to satisfy due process, the notice should have discussed the merits of alternative litigation progressing in state courts or the methods the court in this case might use to determine individual damages following the trial on liability issues. Plaintiffs defend the form and reach of the notice, while questioning the relevancy of movants' proffered surveys of class members to a determination of whether the selected notice constituted the best practicable under the circumstances. Defendants also filed a response opposing the motions, raising several of the same points.

In her reply to both plaintiffs and defendants, movant Carrico criticizes the notice's requirement that individual class members were required to opt out by submitting a signed request to opt out to the court, rather than allowing opt outs en masse through their attorneys.[3] In addition, the reply

---

[3] It is not clear how this criticism, relating to the method required to confirm class members' intent to opt out on an individual basis, is relevant to Carrico's motion. However, the court observes that requiring individual signatures is standard practice in many class actions and in fact serves to protect the due process rights of absent class members. See Moulton v. U.S. Steel Corp., 581 F.3d 344, 355 (6th Cir. 2009) ("Given the real

repeats the arguments that the notice in fact did not reach a significant number of class members and should have been separated into two notices, one addressing the court's certification of the class and the other relating to the $400,000 in settlements with Southern and Farrell.  As an exhibit to her reply, Carrico included the affidavit of Bobby L. Hymel, managing director of Gravitas Marketing, the firm that conducted the poll of class members mentioned in her initial motion.  (ECF No. 619-3).

### Legal Standards

A.    Motions by Unnamed Class Members

Rule 23(c) of the Federal Rules of Civil Procedure provides that once a class is certified, unnamed class members "may enter an appearance through an attorney if [they] so desire[]."  Fed. R. Civ. P. 23(c)(2)(B)(iv).  The notice sent to class members in this case likewise notified them that they have the right to appear through counsel, for example, at the fairness hearing regarding the proposed settlement with Southern and Farrell.  However, it is well-established that unnamed class

_____

risk that the attorney-signed opt-out forms did not reflect the wishes of class members, the district court appropriately exercised its power by requiring individually signed opt-out forms (and rejecting the attorney-signed forms).")

members are not parties to a class action for most other
purposes.  See, e.g., Day v. Persels & Associates, LLC, 729 F.3d
1309, 1316-17 (11th Cir. 2013) (holding that absent class
members are not "parties" whose consent is required for a
magistrate judge to enter final judgment); Wainwright v. Kraftco
Corp., 54 F.R.D. 532, 534 (N.D. Ga. 1972) ("Nothing in Rule 23
suggests that class members are deemed 'parties.' . . . Indeed,
if class members were automatically deemed parties, all class
actions would be converted into massive joinders. Such a result
would emasculate Rule 23."); see also Devlin v. Scardelletti,
536 U.S. 1, 15-16 (2002) (Scalia, J., dissenting) (explaining
that despite the majority's decision to treat an unnamed class
member as a party to the judgment approving a class settlement
for the limited purpose of the appeal thereof, it was
"undisputed" that "it is only [named representative] members of
the class, and those who intervene or otherwise enter through
third-party practice, who are parties" for purposes of discovery
and motion practice).

        Federal Rule of Civil Procedure 24 governs
intervention:

        (a)  INTERVENTION OF RIGHT. On timely motion, the court
    must permit anyone to intervene who:

            (1)  is given an unconditional right to intervene
            by a federal statute; or

> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> (b) PERMISSIVE INTERVENTION.
>
> > (1) *In General.* On timely motion, the court may permit anyone to intervene who:
> >
> > > (A) is given a conditional right to intervene by a federal statute; or
> > >
> > > (B) has a claim or defense that shares with the main action a common question of law or fact.
>
> . . .
>
> > (3) *Delay or Prejudice.* In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24.

As part of its broad authority to control the progress of class actions certified under Rule 23, the court can also enter "orders that . . . impose conditions on the representative parties or on intervenors[.]"  Fed. R. Civ. P. 23(d)(1)(C).

B.     Notice Requirements

In the context of a class action for damages, the requirements of due process for notice to class members were described by the Supreme Court in <u>Mullane v. Central Hanover</u>

Bank & Trust Co.:

> An elementary and fundamental requirement of due
> process in any proceeding which is to be accorded
> finality is notice reasonably calculated, under all
> the circumstances, to apprise interested parties of
> the pendency of the action and afford them an
> opportunity to present their objections. The notice
> must be of such nature as reasonably to convey the
> required information, and it must afford a reasonable
> time for those interested to make their appearance . .
> . .
>
> But when notice is a person's due, process which is a
> mere gesture is not due process. The means employed
> must be such as one desirous of actually informing the
> absentee might reasonably adopt to accomplish it. The
> reasonableness and hence the constitutional validity
> of any chosen method may be defended on the ground
> that it is in itself reasonably certain to inform
> those affected, . . . or, where conditions do not
> reasonably permit such notice, that the form chosen is
> not substantially less likely to bring home notice
> than other of the feasible and customary substitutes.

339 U.S. 306, 314-15 (1950) (citations omitted).

Federal Rule of Civil Procedure 23(c)(2)(B)

effectuates these requirements in the context of class actions

which are, like the instant action, certified under Rule

23(b)(3):

> For any class certified under Rule 23(b)(3), the court
> must direct to class members the best notice that is
> practicable under the circumstances, including
> individual notice to all members who can be identified
> through reasonable effort. The notice must clearly and
> concisely state in plain, easily understood language:
>
>> (i) the nature of the action;
>>
>> (ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  In addition, Federal Rule of Civil Procedure 23(e) provides that as a condition of a proposed settlement in a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal.  Fed. R. Civ. P. 23(e)(1).

While Rule 23 provides the general process to follow in providing notice to absent class members, it does not purport to detail every requirement necessary to satisfy due process.  See In re Nissan Motor Corp. Antitrust Litigation, 552 F.2d 1088, 1104 (5th Cir. 1977).  In Nissan, the Fifth Circuit observed that notice "must also contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member."  Id.  However, the need to describe the proceedings must be balanced with the concern that "an overly detailed notice would not only be unduly expensive, but would

13

also confuse class members and impermissibly encumber their rights to benefit from the action." <u>Id.</u> (citations omitted).

With respect to the method of delivering notice to absent class members, neither due process nor the Federal Rules requires more than "notification . . . reasonably certain to inform those affected." <u>Vancouver Women's Health Collective Soc. v. A.H. Robins Co., Inc.</u>, 820 F.2d 1359, 1364 (4th Cir. 1987) (citing <u>Mullane</u>, 339 U.S. at 314-315). Absent class members cannot challenge a notice by simply showing "that many [class members] . . . did not actually receive the notices that were sent to them." <u>In re Integra Realty Resources, Inc.</u>, 262 F.3d 1089, 1110 (10th Cir. 2001). Instead, individuals objecting to the notice plan must show "that the notice was not reasonably calculated to apprise the absent class members of the action, or that some better method of notification offered a practicable means of notifying the class." <u>Id.</u> Due to this contextual inquiry, courts have found arguments based on "actual notice rates" to be unhelpful. <u>See</u> <u>DeJulius v. New England Health Care Employees Pension Fund</u>, 429 F.3d 935, 944 (10th Cir. 2005); <u>In re Adelphia Commc'ns Corp. Sec. Litigation</u>, 271 Fed. Appx. 41, 44 (2d Cir. 2008) ("for due process to be satisfied, not every class member need receive actual notice [of the class settlement], as long as class counsel acted reasonably in

14

selecting means likely to inform persons affected"); <u>Silber v.</u>
<u>Mabon</u>, 18 F.3d 1449, 1453-54 (9th Cir. 1994) (standard for
adequacy of notice is "best practicable" not "actually
received").


<u>Analysis</u>


  Before addressing the movants' objections to the
adequacy of the notice, the following discussion takes up class
plaintiffs' argument that the instant motions should be denied
because the movants are not parties to this action.
Subsequently, the court reaches the issues raised by the movants
to the extent necessary to resolve the motions.


 A.  Procedural Objections


  As an initial matter, it is appropriate to note the
unusual posture and timing of the instant motions.   The movants
have not cited any case in which non-party class members, before
the opt-out period has expired, have sought to object to the
adequacy of notice.   Clearly, while the movants claim not to
have received the notice by direct mail, the notice plan was
effective in reaching them to the extent they became aware of
the notice during the opt out period and, with the benefit of
counsel, had the opportunity to analyze the notice and the

15

efficacy of its communication to class members prior to filing these motions.

Allowing Carrico to intervene in order to entertain her motions would be inappropriate.  First, intervention of right is unavailable inasmuch as existing parties adequately represent the interest of movants who choose not to opt out. Movants are requesting an extension of the opt-out deadline and the issuance of a new notice addressing the perceived defects identified in their filings.  Neither form of relief is necessary to avoid "impair[ing] or imped[ing] the movant's ability to protect [their] interest," because, even assuming that the current notice implicates that interest in the case of other members of the class who did not receive it or who were misled by the suggested defects, each movant had the opportunity to timely opt out to fully protect his or her interest.  In addition, the court's certification of the class necessarily included the finding that class members and their counsel would "adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Movants have not suggested facts that would call this finding into question, as required to intervene as of right under Rule 24.

Second, while the movants have claims sharing common questions with those presented in this action as required by Rule 24(b)(1)(B), permissive intervention is simply unnecessary to protect their claims.  Although the movants, as unnamed class members, are not parties to this action, the broad language of Rule 23(d) regarding the court's authority to enter orders in such an action, e.g., to "determine the course of proceedings", Fed. R. Civ. P. 23(d)(1)(A), and "deal with similar procedural matters" Fed. R. Civ. P. 23(d)(1)(E), suggests that there is no impediment to the court's entering an order adjudicating the instant motions.  Addressing the adequacy of notice at this time will further the conduct of these proceedings, but the court's doing so should not be read to imply that non-parties have an unfettered right to be heard on motions as they please.  Given the centrality of notice to the legitimacy of the class action, and the fact that movants have an undisputed interest in the action as unnamed class members, it would be unduly formalistic to refrain from addressing their concerns about the notice.

B.    Adequacy of Delivery of Notice

Having concluded that the objections to the adequacy of notice have been sufficiently raised, the court proceeds to evaluate the merits of those objections.

17

A large portion of the movants' argument is focused on their allegation that notice did not effectively reach class members. In their initial filings, this assertion was supported by movant Carrico's own purported survey of 63 individuals whom she calls class members, and by movant's expert, Todd B. Hilsee. Plaintiffs' response makes plain that Mr. Hilsee misunderstood the number of class members reached by the notice. Mr. Hilsee supposes that only 30% of the class would be reached by the 92,000 direct mailings sent as part of the notice plan. See Hilsee Decl. at 7. To arrive at this estimate, Mr. Hilsee appears to have divided the number of mailings by the estimate of class members affected by the water interruption initially stated in the plaintiffs' complaint, 300,000. Id. at 8 n. 1. In its order certifying the class, the court noted that an updated estimate based on discovery, which reflected customer information provided by the water company defendants and United States Census Bureau data, suggests there are approximately 224,180 class members. See ECF No. 470 at 42. This number includes residential, business and hourly worker class members, many of whom may be double counted (e.g., because they both reside and work in the affected area).

18

Because the mailing addresses were determined based on the water company's customer records, the number of mailings (92,000) corresponds to the number of households or businesses that were included in the direct mail plan, not the number of individual class members. As the mailings were sent to every identifiable customer served by the water company during the relevant period, Mr. Hilsee's statement that only 30% of the class would be reached by those mailings is plainly implausible. The court is thus unpersuaded by his conclusions that the notice was insufficient to provide notice to class members and that the plan failed to provide individual notice to the class.[4]

Perhaps recognizing this, movant Carrico attached additional exhibits to her reply memorandum to support her criticism of the reach of the notice.[5]  Carrico submitted the affidavit of Bobby L. Hymel of Gravitas Marketing, describing the results of a poll commissioned by counsel for Carrico. Because Mr. Hymel's affidavit was submitted only in support of

---

[4] Mr. Hilsee also notes that the current notice plan would not reach transient class members who have left the area since January 2014. See Hilsee Decl. at 9. Prior to sending the mailings, the plan administrator checked for reported changes of address. The movants have not suggested any other practicable method to reach transient class members.

[5] Also, two counsel on behalf of movants submitted affidavits indicating that they conferred with their clients, who are class members and who indicated that they did not receive the notice.

movant Carrico's reply brief, class counsel and defendants did
not have the opportunity to respond to his methodology or
findings.  While the full details of this poll are not before
the court, it is of dubious value in evaluating the adequacy of
notice.  The telephone survey, taken about two months after the
mailing of the notice at issue, may not accurately reflect
whether class member households in fact received the notice.  In
his affidavit, Mr. Hymel states that the poll chose its
respondents "from a list of known current residents of Kanawha
County, West Virginia."  (ECF No. 619-3 at 2).  However, there
is no indication whether the poll attempted to distinguish
current residents from those who were living in the area in
January 2014, or whether the survey respondents were served by
the defendant water company in January 2014.  Neither is there a
statement of the questions asked.  At the outset, then, one has
no way of knowing how many of the survey respondents were
members of the class.

        Even putting these methodological concerns to one
side, as noted by the court in DeJulius, a survey of "actual
notice rates" is not helpful in determining whether the notice
chosen was the best practicable under the circumstances as
required by Rule 23.  See 429 F.3d at 944.  The notice at issue
was mailed directly to customers affected by the Do Not Use

order issued by the water company as a result of the events in
January 2014, as identified by the water company defendants.
Movants have not adequately explained why they believe the
selected form of notice was not reasonable under the
circumstances, nor have they proposed any alternative method
that would more effectively reach the absent class members.

Movants' remaining objections to the form of notice
criticize the use of a bulk rate and single sheet for the notice
mailing.  The movants cite no authority for the proposition that
in sending direct mail notices, which are otherwise the gold
standard for class notice, the use of bulk pricing creates a
defect in the notice plan.  The latter objection to the form of
notice, alleging that the notice was not distinguishable from
"junk mail," is factually inaccurate.  The outer fold of the
notice was clearly marked with language in a large font
informing recipients that it contained an "important legal
notice of pendency of class action and partial settlement in
litigation arising out of the January, 2014, water contamination
event."  (See ECF No. 514-1).

C.      Adequacy of Content of Notice

        Turning to the movants' objections to the content of
the notice, none of the issues raised implicate the notice's
overall adequacy.  Both movant Carrico and Mr. Hilsee base much
of their evaluation of the notice's content on a checklist
prepared by the Federal Judicial Center to assist judges in
developing class action notice plans.[6]  While this document
discusses best practices for notice, its suggestions do not
supplant the notice requirements set out in Rule 23.  In its
order approving the form of notice, the court necessarily
concluded that the proposed notice was written in the clear and
concise language required by the rule, and that it otherwise
contained the information required.  In addition, the notice
largely complies with the checklist's recommendations.  Mr.
Hilsee cited portions of the checklist discussing the
availability of a trained administrator or class counsel to
answer questions, and in fact both class counsel and the staff
of the toll-free number were available to do so.  Many of the
additional portions cited inquire about whether class members

---

[6] The checklist, *Federal Judicial Center Plain Language
Notice Guide* (2010)*,* was submitted to the court as Exhibit D to
Carrico's reply brief (ECF No. 619-4) and is available at
http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotC
heck.pdf (last accessed March 22, 2016).

will receive individual notice and how effectively the notice will reach those class members.  As discussed above, the court is satisfied that the decision to mail notice directly to the customers identified by the water company defendants meets these recommendations.

Movant Carrico's argument that the content of the notice was deficient is also undercut by the cases she cites in support of that contention, which are distinguishable in that they address much more serious notice defects than any said to be at issue here.  The court in In re Katrina Canal Breaches Litigation found a settlement notice inadequate where it failed to include critical information regarding the possibility of a cy pres distribution and misleadingly suggested that class counsel would not seek attorneys' fees.  628 F.3d 185, 197-99 (5th Cir. 2010).  By contrast, the notice issued in this action advised recipients that class counsel would request attorneys' fees from any potential recovery.  In Georgine v. Amchem Products, Inc., additional notice was only necessary due to "the adverse effects of an allegedly massive campaign, launched by attorneys who oppose the [class] settlement, to solicit opt-outs through purportedly misleading mass mailings and advertisements targeted to absent class members."  160 F.R.D. 478, 479 (E.D. Pa. 1995).  While some concerns about misleading communications

23

to absent class members were raised by class counsel earlier in
these proceedings,[7] the movants do not rely on any such
communications in their challenge to the notice.

While the movants point to additional information they
would have found helpful and generally state that the notice was
"confusing," none of the additions they propose are necessary to
render the notice adequate.  The test for whether a given item
must be included in a class notice is whether that information
is such that "a reasonable person would consider [it] to be
material in making an informed, intelligent decision of whether
to opt out or remain a member of the class and be bound by the
final judgment." Nissan, 552 F.2d at 1105.  Movants complain
that the notice did not provide a geographical description of
the areas in which affected class members work and reside.
Under the circumstances of this case, the court is not persuaded
that there is a serious risk that absent class members will be
unable to determine whether or not they are part of the proposed

---

[7] On January 25, 2016, the court held a hearing to discuss
concerns raised by class counsel regarding certain
communications made by attorneys, including some counsel for the
movants, who represent parties in state court actions relating
to the January 2014 chemical spill.  Class counsel stated that
these communications could confuse class members during the opt
out period.  At that time, the court took no position with
respect to the communications at issue and instructed the
parties to proceed by motion if further relief was sought.  See
Transcript of Proceedings (January 25, 2016) (ECF No. 565).

class.  Because the claims alleged are based on a regional
environmental event involving a widely-disseminated Do Not Use
order for tap water, individuals who were affected are in the
best position to recognize whether they are part of the class.
In addition, since the affected area includes part but not all
of nine West Virginia counties, any attempt to precisely
delineate its boundaries within the notice would likely have led
to more confusion.  Similarly, inclusion of additional text
regarding pending state court actions or further describing the
legal claims brought in the consolidated complaint would have
made the notice harder for a layperson class member to
understand, not easier.

        Movant Carrico also argues the notice should have
"advise[d] the absent class that the class member may have to
file a different individual case in order to prove damages, may
have to hire an additional attorney to file that case or may
have to forego a trial by jury on their personal damage issue or
may have to accept a settlement which they are not a part of."
ECF No. 581 at 11.  This speculative parade of horribles facing
absent class members is completely inconsistent with the actual
proceedings in this class action.  While the court has
bifurcated liability and damages determinations, it nowhere
suggested that class members will not be entitled to recover

damages in this action, through their own counsel or,
potentially, through the representation of class counsel at
further proceedings should a liability determination be reached
in the fault-only phase.  Rather than discussing all the
potential procedural developments that may occur in the case,
the initial notice needed only to alert the class members to an
action affecting their rights and "sufficiently inform [them] of
the terms of the proposed settlement and their available
options."  Decohen v. Abbasi, LLC., 299 F.R.D. 469, 478 (D. Md.
2014) (citing In re MicroStrategy, Inc. Sec. Litig., 150 F.
Supp. 2d 896, 906 (E.D. Va. 2001)).  Indeed, the proposed
settlements with the individual defendants, Southern and
Farrell, represent a miniscule portion of that which is at stake
in this case.

     Finally, many of the movants' arguments, while
presented as critiques of the notice, in fact take issue with
the court's certification of the class on the limited issue of
liability.  While a bifurcated process is necessarily more
complex than a certification on all issues, the notice explained
that "[i]f the verdict at the conclusion of the class trial is
in favor of plaintiffs, the Court will determine the method and
manner of additional proceedings to determine whether you may be
entitled to damages and the nature and extent of any such

damages." (ECF No. 514-1).  The movants argue that the failure
to more extensively discuss damages and the process to be used
to determine recovery implicates the adequacy of the notice, was
"misleading," and would make it difficult for absent class
members to make an informed response to the notice.   However,
these arguments overlook the fact that "[c]ertifying a class to
determine the defendant's liability, while leaving the class
members to pursue their individual damages claims, is a common
example of partial certification."   In re Motor Fuel Temperature
Sales Practices Litig., 292 F.R.D. 652, 666 (D. Kan. 2013)
(quotation omitted).  Whenever a court takes this route, there
will be some degree of uncertainty regarding the eventual
recovery of damages.  While Carrico believes that the statement
regarding these further proceedings in the notice was
"misleading and confusing," the necessarily contingent nature of
those proceedings prevented the parties from describing them in
more detail in this early notice.  Balancing the need to
describe the proceedings with the concern that overwhelming
class members with information could lead to more confusion, the
parties made a reasonable decision to include the statement they
did regarding the need for further proceedings following the
liability trial.  See Nissan, 552 F.2d 1088, 1104 (noting that
"an overly detailed notice would . . . confuse class members").
To the extent movants preferred not to pursue their claims

through a bifurcated class action, their remedy was to opt out of the class.[8]

In short, the court finds no defect in the notice that would warrant the relief requested by movants.  The basic requirements of Rule 23 and due process are intended to ensure that notices fairly and reasonably apprise class members of a pending action affecting their rights and their options with respect to that action, but those requirements should not transform the notice into "a long 'brief' of the parties' positions, precise in every detail and slated in such fashion as to please every litigant."  Goldwater v. Alston & Bird, 673 F. Supp. 930, 932 (S.D. Ill. 1987) (declining to order amendment of a notice based on trivial objections).

---

[8] Similarly, the objection that notice of the two individual settlements should not have been included with the initial class notice is contradicted by case law approving this "single-notice procedure."  See In re Corrugated Container Antitrust Litig., 643 F.2d 195, 223 (5th Cir. 1981).

## Conclusion

The court concludes that movant Carrico may not intervene because she has not shown that class counsel are inadequately protecting the interests of the class, cannot show prejudice because she had notice of these proceedings and the opportunity to opt out during the opt-out period, and allowing intervention would cause undue delay.  The court also concludes that the movants' objections to the adequacy of notice lack merit, and that the notice sent satisfied the requirements of due process and Rule 23.  Accordingly, the court ORDERS that:

1.      Rachel Carrico's Motion and Petition to Require Adequate Notice and Extension of Time to Opt Out (ECF No. 581), Motion to Require Re-Notice of Putative Class (ECF No. 584) and Motion to Intervene (ECF No. 599) be, and they hereby are, denied;

2.      Paula J. Compston's Motion and Petition to Require Adequate Notice and Extension of Time to Opt Out (ECF No. 583) be, and it hereby is, denied; and

3.      Charles Justice and Cindra Justice's Motion and Petition to Require Adequate Notice and Extension of Time to Opt Out (ECF No. 586) be, and it hereby is, denied.

4.      Movant Carrico's motion for hearing on her motion
filed September 26, 2016, is denied as unnecessary.

        Inasmuch as the movants' filings, prior to the opt-out
deadline, evidence their intent to opt out of the class, the
court further ORDERS that the named movants may file, no later
than ten days following the entry of this order, a letter opting
out of the class consistent with the instructions in the class
notice.

        The Clerk is directed to forward copies of this
written opinion and order to counsel of record and any
unrepresented parties.

                                DATED:  September 30, 2016

                                John T. Copenhaver, Jr.
                                United States District Judge