UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

CRYSTAL GOOD, individually and as
parent and next friend of minor children
M.T.S., N.T.K. and A.M.S. and
MELISSA JOHNSON, individually and as parent of her unborn
child, MARY LACY and JOAN GREEN and JAMILA AISHA OLIVER,
WENDY RENEE RUIZ and KIMBERLY OGIER and ROY J. McNEAL and
GEORGIA HAMRA and MADDIE FIELDS and BRENDA BAISDEN, d/b/a
FRIENDLY FACES DAYCARE, and ALADDIN RESTAURANT, INC., and
R. G. GUNNOE FARMS LLC, and DUNBAR PLAZA, INC.,
d/b/a DUNBAR PLAZA HOTEL, on behalf of themselves
and all others similarly situated,

          Plaintiffs,

v.                                    Civil Action No.: 2:14-01374

AMERICAN WATER WORKS COMPANY, INC., and
AMERICAN WATER WORKS SERVICE COMPANY, INC.,
and EASTMAN CHEMICAL COMPANY, and
WEST VIRGINIA-AMERICAN WATER COMPANY,
d/b/a WEST VIRGINIA AMERICAN WATER, and
GARY SOUTHERN and DENNIS P. FARRELL,

          Defendants.


MEMORANDUM OPINION & ORDER

          Pending is the plaintiffs' motion for summary judgment

on the issue of defendant Eastman Chemical Company's compliance

with the Toxic Substances Control Act, filed on May 10, 2016.


          I.   Factual and Procedural Background

          In this class action, plaintiffs seek to recover on

behalf of a class of residents, businesses, and hourly wage

workers who were impacted by the spill of a coal processing chemical from a storage tank at a facility operated by Freedom Industries, Inc. ("Freedom") on January 9, 2014.  The spill resulted in the release of thousands of gallons of the chemical, Crude 4-methylcyclohexanemethanol ("Crude MCHM"), into the Elk River.  Due to the spill, crude MCHM infiltrated the water supply at a treatment plant operated by defendant West Virginia-American Water Company, resulting in the interruption of the water supply to nearly 300,000 customers.

Eastman is the exclusive producer and distributor of crude MCHM.  Plaintiffs contend generally that Eastman failed to warn of the dangers stemming from the chemical release, negligently characterized the risk of crude MCHM and its potential environmental and health hazards, and negligently sold that allegedly hazardous chemical to Freedom without proper storage and handling instructions and notwithstanding information suggesting that Freedom did not have adequate protections in place to prevent a containment failure.

In Count 21 of the operative complaint, plaintiffs also allege that Eastman has failed to comply with provisions of the Toxic Substances Control Act ("TSCA"), 15 U.S.C. §§ 2601-2695d.  Plaintiffs argue that Eastman's Pre-Manufacture Notice for Crude MCHM ("PMN"), a notice submitted to the Environmental

2

Protection Agency ("EPA") in 1997 following the enactment of
TSCA, did not meet the requirements of 15 U.S.C. § 2604 (TSCA §
5) and that over the years, Eastman failed to properly notify
the EPA of twenty-two studies which supported a conclusion that
crude MCHM poses "a substantial risk of injury to health or the
environment," as required by 15 U.S.C. § 2607(e) (TSCA § 8(e)).
Finally, plaintiffs argue that Eastman failed to keep proper
records of adverse health events relating to crude MCHM as
required by 15 U.S.C. § 2607(c)).  Plaintiffs have brought
claims under the citizen suit provision of TSCA, 15 U.S.C. §
2619, to restrain Eastman's ongoing violations of the Act.  As
required by section 2619, plaintiffs sent a notice letter to the
EPA informing the agency of the alleged violations of TSCA prior
to asserting their private claims.

        Plaintiffs' motion seeks summary judgment on their
TSCA claims.  The parties have agreed that there are no material
facts in dispute as to plaintiffs' TSCA claims and that the
claims are resolvable as a matter of law by the court.  The only
issue is plaintiffs' entitlement to an injunction ordering
Eastman to correct its alleged failures to comply with TSCA's
reporting and recordkeeping requirements.  The bulk of
plaintiffs' motion for summary judgment reviews the twenty-two
studies of crude MCHM plaintiffs have identified as reportable

under TSCA § 8(e) as posing a "substantial risk" under the
statute.  In their conclusion, plaintiffs describe the relief
they are seeking as follows:

> [T]he Court should impose the remedy to which
> plaintiffs are entitled under Section 20(a) of TSCA –
> namely, an order "restraining" the ongoing TSCA
> violations of Eastman and directing it to come into
> compliance with the Act. This order should:
>
> 1. Direct Eastman to submit the 22 reports and studies
>    subject to reporting under Section 8(e) to EPA's Section
>    8(e) docket within 15 days;
>
> 2. Require Eastman to withdraw its 1997 PMN and resubmit it
>    with all available data on crude and pure MCHM and a
>    full and complete description of exposure and release at
>    user sites;
>
> 3. Require Eastman to maintain in its file under Section
>    8(c) records of all known reports of adverse health
>    effects relating to the January 9 spill of MCHM into the
>    Elk River.

Mem. Sum. Judg. TSCA at 29 (ECF No. 729).


     In response to the summary judgment motion, Eastman
argues that plaintiffs have neither statutory authorization nor
constitutional standing to assert their claims under TSCA.
First, Eastman argues that plaintiffs have impermissibly
expanded their claims beyond those contained in the notice
letter sent to the EPA.[1]  Second, Eastman argues that plaintiffs

---

[1] A citizen suit to restrain violations of TSCA may not be
commenced until at least 60 days following the issuance of a
notice by the plaintiff to the EPA and the person alleged to be
in violation of the act.  15 U.S.C. § 2619(b)(1).  The scope of
a subsequent citizen suit is limited to the violations

are seeking an order affirmatively compelling Eastman to act, rather than an order to "restrain" ongoing violations of TSCA, which is the only relief available in citizen suits brought under the Act.  Third, Eastman argues that plaintiffs cannot establish standing under Article III of the U.S. Constitution because they have alleged no concrete injury fairly traceable to Eastman's purported violations of TSCA and the relief they seek would do nothing to redress any injury suffered by the plaintiffs.  Eastman then addresses each of the studies plaintiffs have identified as reportable under the statute, arguing that none of them meet the reportability standards established therein or in EPA's guidance on the subject.

In their reply, plaintiffs dispute each of the points raised by Eastman and reassert their entitlement to injunctive relief under the statute.  However, plaintiffs' discussion of the injuries supporting standing focused on injuries due to the spill, rather than any injury directly relating to the alleged TSCA violations.  ECF No. 911 at 4-5 ("Ms. Good has testified that she suffered from eye irritation . . ., incurred out-of-pocket expenses related to securing alternate water for her

---

identified in the notice letter.  See Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 629 F.3d 387, 400-03 (4th Cir. 2011) (interpreting an identical notice requirement in the Clean Water Act, 33 U.S.C. § 1365(b)).

family, suffered damage to personal property and felt annoyed, inconvenienced and emotionally distressed by the whole affair.").  Accordingly, by order entered July 25, 2016, the court ordered the parties to submit additional briefing on the issue of standing, with attention to "the facts supporting a conclusion that plaintiffs have suffered an injury, fairly traceable to Eastman's alleged violation of the Act, which will be redressed by a favorable decision of this court."  ECF No. 933 at 2 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

The plaintiffs filed their brief in support of standing on August 2, 2016.  Plaintiffs argue, as an initial matter, that the court determined they have standing to pursue their TSCA claims in its order denying Eastman's motion to dismiss those claims, that Eastman did not move for summary judgment for lack of standing, and as a result that the court should reject any new standing arguments made in Eastman's response to plaintiffs' summary judgment motion.

Elaborating on their theory of injury, plaintiffs argue that plaintiff Crystal Good's injuries due to exposure to MCHM impacted her in a "personal and individual way" and were caused by Eastman's alleged TSCA violations.  Plaintiffs attach as an exhibit the report of a medical evaluation of Ms. Good

6

that discusses her symptoms.  (ECF No. 936-1).  Plaintiffs also
quote the declaration of their expert, Robert Sussman, to
establish the causal connection between Eastman's Pre-
Manufacture Notice and Ms. Good's injuries:

> Had Eastman made timely reports of toxicology
> studies and filed a complete, compliant PMN, the
> additional information provided to EPA would likely have
> resulted in greater scrutiny of MCHM's potential for
> adverse health effects and significant exposure. This
> may well have led to requirements to conduct additional
> toxicology studies to evaluate MCHM's health and
> environmental effects, resulting in more informative
> data on risks to human health and aquatic organisms at
> the time of the spill. It could also have led to greater
> controls on environmental release at coal preparation
> and related facilities, and these could have prevented
> the spill from occurring.

Sussman Decl. at 4-5 (ECF No. 847-19).  Plaintiffs also suggest
that the fear of long-term health effects due to MCHM exposure
has caused an ongoing injury suffered by plaintiffs.  Plaintiffs
assert that Eastman's failure, in its PMN for crude MCHM, to
discuss the "open loop" nature of coal prep plants, that is, the
fact that such plants continually discharge materials into the
environment, injures the plaintiffs because it disguises the
fact that crude MCHM allegedly "is polluting West Virginia's
stream[s] and rivers every day."  ECF No. 936 at 6.  Finally,
plaintiffs argue that the threat of imminent or repeated injury
is significant because representative class members live near or
downstream from such coal prep plants and "[e]ven in the absence
of an accidental spill . . . Eastman's product will end up in

the environment because Crude MCHM slurry from coal processing plants inevitably migrates to the waters of the United States."

Plaintiffs next argue that their injuries are fairly traceable to Eastman's reporting and recordkeeping violations because "[i]f Eastman had not engaged in the alleged unlawful conduct, then the spill caused by Freedom would have been an event of a different character and the harms experienced by Plaintiffs would have been less severe." Id. at 9. Plaintiffs assert that Freedom's actions were not an independent action of the type that would create a standing issue and that they need only show Eastman's conduct was a "primary factor" causing their injuries. Id. (citing DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 344 (2006). On the issue of redressability, plaintiffs argue that their injuries are redressable because TSCA allows citizen suits "to restrain" ongoing or continuous violations, and Eastman's alleged TSCA compliance failings are ongoing.

Eastman filed a response on the issue of standing on August 9, 2016. Eastman argues that plaintiffs have continually failed to provide facts establishing standing and have relied on conjecture and conclusory assertions rather than evidence to support their arguments. Most centrally, Eastman argues that none of the injuries identified by plaintiffs could be redressed by the injunctive relief permitted by TSCA's citizen suit

provision.  Eastman points out that while plaintiffs have
described injuries due to the January 2014 spill, "'past wrongs
do not in themselves amount to [a] real and immediate threat of
injury' and 'a future or conjectural threat of injury is
insufficient to support injunctive relief.'"  ECF No. 942 at 3
(quoting Simmons v. Poe, 47 F.3d 1370, 1382 (4th Cir. 1995)).
Eastman argues that none of the recordkeeping and reporting
steps sought by plaintiffs would redress an injury or threat of
injury identified in the plaintiffs' filings.  In addition to
the redressability issues, Eastman opposes standing on the
grounds that plaintiffs have not identified a "concrete and
particularized" injury and that the plaintiffs' discussion of
the threat of future harm due to MCHM exposure cannot support
standing because it is purely "conjectural or hypothetical."
Id. at 4-6.  Finally, Eastman argues that the alleged injuries
identified by the plaintiffs are not fairly traceable to
Eastman's TSCA reporting and recordkeeping, but were in fact
caused by the independent conduct of third parties.

        Plaintiffs filed a reply with respect to standing on
August 12, 2016 (ECF No. 945).  The reply focuses on the
"increased risk of environmental injury" faced by plaintiffs due
to future crude MCHM spills.  ECF No. 945 at 2 (quoting Friends
of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d

149, 160 (4th Cir. 2000)).  Plaintiffs repeat their assertion that they live downstream from coal prep plants and face a credible threat of future injury from crude MCHM emissions.  As to redressability, plaintiffs argue that the statutory relief available under 15 U.S.C. § 2619 would redress their injuries and that for standing purposes, "[p]laintiffs must simply demonstrate, and have demonstrated, a substantial likelihood . . . that requiring Eastman to report studies to the EPA will reduce the future threat to human health posed by a release of Crude MCHM into the environment."  Id. at 5.

## II.    Legal Standards

### A.    Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Material" facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (same).  A "genuine" dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable

10

to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  <u>Anderson</u>, 477 U.S. at 248.  On the other hand, "[f]actual disputes that are irrelevant or unnecessary will not be counted."  <u>Id.</u>

B.     Article III Standing

The judicial power of the United States extends only to "Cases" and "Controversies."  U.S. Const. art. III § 2.  The requirement of standing is "an essential and unchanging part" of the requirement that cases heard by federal courts involve a live case or controversy between the parties.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975).  "[I]t is founded in concern about the proper -- and properly limited -- role of the courts in a democratic society."  <u>Id.</u>

Standing must be established separately for each form of relief sought.  <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 185 (2000).  The Supreme Court, in an oft-cited passage from the case <u>Lujan v. Defenders of Wildlife</u>, succinctly articulated the three basic constitutional requirements of standing:

Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " . . . . Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." . . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

504 U.S. at 560-561 (citations omitted).

At each stage of litigation, "the party invoking federal jurisdiction bears the burden of establishing these elements." <u>Id.</u> at 561. At the summary judgment stage, "the plaintiff can no longer rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken as true." <u>Id.</u> In making this showing in the context of an action for purely injunctive relief, the plaintiff cannot establish standing based on wholly past violations. <u>Los Angeles v. Lyons</u>, 461 U.S. 95, 102 (1983) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects"); <u>Steel Co. v. Citizens for Better Env't</u>, 523 U.S. 83, 108 (holding that an injunction "cannot conceivably remedy any past

12

wrong").

### III.   Discussion

As an initial matter, the court finds it necessary to discuss standing despite the plaintiffs' argument that the issue was decided at the motion to dismiss stage.  First, the court's reference to plaintiffs' "standing" for their TSCA claims in the order on motions to dismiss merely acknowledged that plaintiffs were seeking the type of injunctive relief envisioned by the statute.  This statement addressed "statutory standing" or the plaintiffs' authorization to bring the type of claim alleged in the operative complaint, an issue that is entirely distinct from the constitutional standing inquiry.  See CGM, LLC v. BellSouth Telecommunications, Inc., 664 F.3d 46, 52 (4th Cir. 2011) (comparing dismissal for lack of statutory standing to dismissal for failure to state a claim under Fed. Rule. Civ. Proc. 12(b)(6)).  Furthermore, constitutional standing implicates the court's subject-matter jurisdiction, cannot be waived, and the court must confirm standing requirements have been satisfied "whether or not the issue has been timely raised by the parties."  Miller v. Augusta Mut. Ins. Co., 157 Fed. Appx. 632, 636 n. 4 (4th Cir. 2005).

Inasmuch as plaintiffs may seek only injunctive relief

under TSCA's citizen suit provision, the question of standing turns on the existence of a continuing or threatened injury to plaintiffs that would be redressed by the relief sought by their TSCA claims.  The plaintiffs' repeated references to physical injuries suffered by plaintiff Crystal Good as a result of the January 2014 chemical spill, as well as general statements regarding past injuries such as property damage, economic loss, and annoyance and inconvenience, are, at most, minimally relevant to their standing to pursue their purely prospective TSCA claims.  While the future threat of exposure to crude MCHM due to ongoing releases from coal prep plants could conceivably represent an ongoing or future threat of injury to the plaintiffs, this is precisely the type of "conjectural or hypothetical" future harm that the Supreme Court has dismissed as insufficient to support standing.  Lujan, 504 U.S. at 560-61.

The plaintiffs fail to properly support their claims with respect to the threat of injury as required at the summary judgment stage.  For the first time in their briefing on standing, plaintiffs allege that crude MCHM "is polluting West Virginia's stream[s] and rivers every day."  ECF No. 936 at 6. This proposition is supported by a citation to the report of plaintiffs' expert Jack Spadaro, which discusses findings of crude MCHM contamination in six streams by the West Virginia

14

Department of Environmental Protection following the January 2014 spill.[2]  Mr. Spadaro's expert opinion, standing alone, would not be sufficient to plausibly suggest that any particular plaintiff is at risk of exposure to crude MCHM in the future.

While plaintiffs are correct that an "increased risk of environmental injury" can be enough to support standing, Gaston Copper, 204 F.3d at 160, that risk itself must still be more than merely hypothetical.  In Gaston Copper, the defendants' alleged permit violations threatened waters used by the plaintiff organization's members.  Id.  The Fourth Circuit's determination that this threat was sufficient to confer standing on the plaintiff was based on the fact that the threat was "certainly impending."  Id. (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)).  By contrast, where such injury is speculative, uncertain, or based merely on the plaintiffs' subjective fears, the threat of such injury cannot support standing.  Clapper v. Amnesty Intern. USA, 133 S. Ct. 1138, 1147-50 (2013) (holding that plaintiffs' "speculative

---

[2] Mr. Spadaro's expert opinion is the subject of a pending motion to exclude his testimony.  However, for purposes of this motion the court need not address the challenge to his testimony because even assuming it is admissible, his expert report summarizing his opinion that coal prep plants discharge waste such as crude MCHM into the environment would be insufficient by itself to raise a genuine issue of material fact as to plaintiffs' broad claims of ongoing contamination of West Virginia's waters with crude MCHM.

chain of possibilities" resulting in injury due to government surveillance did not establish injury for standing purposes); see also Lyons, 461 U.S. at 107 n. 8 ("It is the reality of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions") (emphasis in original).

Even assuming, for the sake of argument, that plaintiffs could establish an actual or imminent threat of injury due to future exposure to crude MCHM, there is a more serious barrier to plaintiffs' standing to bring TSCA claims based on that injury in the form of the redressability requirement. That is, plaintiffs cannot show that it would be "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Lujan, 504 U.S. at 561. As discussed above, the only relief sought by plaintiffs is an order directing Eastman to correct its reporting with respect to certain studies on crude MCHM, to re-issue a corrected Pre-Manufacture Notice, and to begin keeping records on reported adverse health events relating to crude MCHM. To the extent plaintiffs face a threat of exposure to crude MCHM, none of these measures would ameliorate that situation. See Warth, 422 U.S. at 508 (redressability requires that plaintiffs "personally would benefit in a tangible way from

the court's intervention"). To the extent plaintiffs' argument
is based on the assumption that the EPA, after receiving
Eastman's report of the studies identified by the plaintiffs
relating to crude MCHM, will take some uncertain action to
address the alleged emissions from coal prep plants, this
connection to the plaintiffs' potential injury is both too
remote and too speculative.

The court also notes that it is undisputed that
Eastman made these studies available to the public and
government officials, including regional EPA staff, shortly
following the spill. Plaintiffs' own argument in support of
standing reveals this deficiency when they state that an order
on TSCA compliance "will reduce the future threat to human
health posed by a release of Crude MCHM into the environment."
ECF No. 945 at 5 (emphasis added). The lack of specificity in
this purported benefit to plaintiffs shows that the relief
requested would not meaningfully redress a harm specific to the
plaintiffs. Similarly, the opinion of plaintiffs' expert, Mr.
Sussman, that Eastman's TSCA filings "would likely have resulted
in greater scrutiny of MCHM's potential for adverse health
effects and significant exposure," which could, in turn, lead to
additional oversight, shows the number of uncertain steps
between the increased reporting sought by plaintiffs and any

tangible benefit.

For the reasons discussed, the court finds that plaintiffs lack standing to pursue their claims under TSCA because 1) any injury or threat of injury to plaintiffs relating to Eastman's failure of compliance with the TSCA provisions in issue is "conjectural or hypothetical" rather than "concrete and particularized and 2) none of the injuries identified by plaintiffs, even were they sufficient to support standing, would be redressed by the relief sought by those claimants.

IV.    Conclusion

Based upon the foregoing, the court concludes that it lacks subject-matter jurisdiction over plaintiffs' TSCA claims because plaintiffs cannot establish standing to bring those claims under Article III of the U.S. Constitution.  Accordingly, the court need not consider the issues of Eastman's compliance with the various TSCA provisions cited by the plaintiffs.

It is ORDERED that the plaintiffs' motion for summary judgment on the issue of Eastman's compliance with the Toxic Substances Control Act (ECF No. 722) be, and it hereby is, denied.  Inasmuch as the court has concluded that plaintiffs' TSCA claims fail as a matter of law for lack of standing, it is

further ORDERED that those claims stated in Count 21 of the operative complaint be, and they hereby are, dismissed.


The Clerk is directed to forward copies of this memorandum opinion and order to counsel of record and any unrepresented parties.

DATED:    October 12, 2016

John T. Copenhaver, Jr.
United States District Judge