UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

CRYSTAL GOOD, individually and as
parent and next friend of minor children
M.T.S., N.T.K. and A.M.S. and
MELISSA JOHNSON, individually and as parent of her unborn
child, MARY LACY and JOAN GREEN and JAMILA AISHA OLIVER,
WENDY RENEE RUIZ and KIMBERLY OGIER and ROY J. McNEAL and
GEORGIA HAMRA and MADDIE FIELDS and BRENDA BAISDEN, d/b/a
FRIENDLY FACES DAYCARE, and ALADDIN RESTAURANT, INC., and
R. G. GUNNOE FARMS LLC, and DUNBAR PLAZA, INC.,
d/b/a DUNBAR PLAZA HOTEL, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

v.                                  Civil Action No.: 2:14-01374

AMERICAN WATER WORKS COMPANY, INC., and
AMERICAN WATER WORKS SERVICE COMPANY, INC.,
and EASTMAN CHEMICAL COMPANY, and
WEST VIRGINIA-AMERICAN WATER COMPANY,
d/b/a WEST VIRGINIA AMERICAN WATER, and
GARY SOUTHERN and DENNIS P. FARRELL,

        Defendants.


MEMORANDUM OPINION & ORDER

        Pending are the motion by Eastman Chemical Company

("Eastman") for summary judgment on the issue of responsible

care (ECF No. 726), Eastman's motion to exclude the expert

testimony of Lawrence M. Stanton (ECF No. 734), and plaintiffs'

motion to strike and exclude the testimony of Michele R.

Sullivan, Ph.D. (ECF No. 852).

I.

On January 9, 2014, approximately 300,000 residents in the Charleston, West Virginia, and the surrounding area suffered an interruption in their water supply.  The interruption was caused by a spill into the Elk River of a mixture used for coal cleaning purposes, composed primarily of a chemical known as Crude MCHM that was sold and distributed exclusively by Eastman Chemical Company.  Crude MCHM consists primarily of the chemical 4-methylcyclohexane methanol.  The mixture was prepared and stored in a facility owned and operated by Freedom Industries, Inc. ("Freedom Industries").  Freedom Industries called the mixture that spilled into the Elk River "Shurflot 944" ("Shurflot").  Shurflot mixed Crude MCHM with other elements, present in relatively small proportion.  The mixture containing Crude MCHM infiltrated and contaminated the WV American water treatment plant in Charleston, known as the Kanawha Valley Treatment Plant ("KVTP"), which draws its water from the Elk River.

By order entered on October 8, 2015 (ECF No. 470), the court granted the plaintiffs' motion to certify an issues class under Federal Rule of Civil Procedure 23(c)(4) for the class-wide determination of the defendants' fault for the spill and resulting water service interruption.  The issues class

2

certification also includes the comparative fault of Freedom, a non-party, for those events. As to Eastman, plaintiffs advance two theories of liability, based on strict liability and common-law negligence.

Under their strict liability theory, plaintiffs contend Eastman is liable for failing to warn of the dangers inherent to Crude MCHM, failing to properly instruct Freedom concerning the proper storage and handling of its product, and for producing and selling a product that was unreasonably dangerous and defective given its hazardous characteristics. Under their negligence theory, plaintiffs allege that Eastman failed to exercise reasonable care, as measured by applicable industry standards, in its sale of Crude MCHM to Freedom.

A.   Summary Judgment Motion on the Issue of Responsible Care

Eastman seeks summary judgment on the issue of whether the American Chemistry Council's ("ACC") Responsible Care initiative ("Responsible Care") constitutes a set of industry standards that impose a duty upon Eastman with respect to the plaintiffs. Eastman argues that Responsible Care is a voluntary program rather than a codified set of standards against which its conduct can be measured. The motion seeks a ruling that such a program does not create a duty to plaintiffs where none

otherwise exists, and that "without evidence of a duty owed to Plaintiffs, Eastman is entitled to judgment as a matter of law" on plaintiffs' negligence claims.  Eastman's Mem. Responsible Care (ECF No. 727) at 1.

In their Memorandum in Support of Class Certification, plaintiffs described their view that Responsible Care guidelines provide "a standard of reasonable care for industry association members to take action to ensure that a downstream user's storage and handling of a product [do not pose] a risk to public safety."  ECF No. 414-21 at 18-19.  Plaintiffs have argued that Eastman's conduct did not comport with Responsible Care inasmuch as Eastman failed to ensure its product, Crude MCHM, was properly stored and handled by Freedom.  Id. at 19.  In addition, plaintiffs argue that Eastman failed to meet "clear industry expectations" requiring its personnel to be trained in Responsible Care's product stewardship principles.  Id. Plaintiffs focus in particular on the fact that Glenda Flick, an Eastman employee, visited the Freedom site prior to the spill, on May 31, 2012, but did not assess the adequacy of Freedom's storage methods for Crude MCHM nor did she investigate the condition of the tanks holding Crude MCHM.  Plaintiffs argue that had Ms. Flick been properly trained in the principles of Responsible Care, she would have identified the risks posed by

Freedom's storage practices and notified the relevant Eastman personnel.  <u>Id.</u>

Eastman attacks the plaintiffs' reliance on Responsible Care as the basis for a duty owed by Eastman on several fronts.  First, Eastman argues that even if Responsible Care were an industry standard, this would not create a duty to plaintiffs, a group Eastman describes as "tantamount to the public at large."  Eastman's Mem. Responsible Care at 5. Second, relying on the testimony of its expert Michele Sullivan, Eastman argues that Responsible Care in fact "has no features of an industry standard."  <u>Id.</u> at 6.  In Eastman's view, Responsible Care cannot supply a standard of conduct because it is intended to be flexible by design, allowing each member to "tailor the initiative to its own needs."  Sullivan Supp. Rep. 2016 at 4.  Eastman's interpretation of Responsible Care is consistent with that of the ACC, which in its amicus brief (ECF No. 783-2) characterized Responsible Care as an "aspirational initiative" that was not intended to create industry standards or mandate uniform action. <u>Id.</u> at 14-15.  Sullivan also opines that Responsible Care's product stewardship principles do not include a requirement that members audit or inspect their customers' facilities.  Sullivan Rep. 2015 (ECF No. 726-1 at 7).

Plaintiffs respond with a number of arguments

supporting their interpretation of Responsible Care.  First, they rely on their expert, Lawrence M. Stanton, for the proposition that Responsible Care has been widely adopted by the chemical industry and "embodies and/or codifies the well-accepted industry standard of care," though Stanton does not cite any specific examples.  Pls.' Resp. Responsible Care (ECF No. 831 at 3) (citing 2015 Stanton Decl. (ECF No. 831-2)).[1] Second, plaintiffs rely on Mr. Stanton for an extensive discussion of the purportedly mandatory nature of Responsible Care's requirements.  Id. at 4.  Plaintiffs also cite statements made by Eastman and its employees on the importance of Responsible Care and the particular role it plays at the company.  Id. at 6-7 (describing Responsible Care as an "indispensable information resource," the "principle [sic] link to customers," and the "eyes and ears" of the company).

Turning to their legal arguments, plaintiffs point out that the ultimate test of whether a defendant owes a legal duty

---

[1] Plaintiffs also argue that Eastman engaged in "advocacy efforts" which sought to limit federal regulation by bolstering confidence in Responsible Care as a system of self-policing. The only support for this observation comes from general assertions by plaintiffs' expert and one paragraph in a Responsible Care implementation document.  See RCMS – Implementation, Operation and Accountability (ECF No. 831-4 at 6) (merely stating that Eastman has "an established federal regulatory advocacy program" for matters of health, safety, environmental and security regulation.)

is the foreseeability of injury, and that whether injuries were reasonably foreseeable to Eastman is a mixed question of law and fact that should be reserved for the jury.  Id. at 8 (citing Neely v. Belk Inc., 668 S.E.2d 189, 198 (W. Va. 2008)). Plaintiffs also argue that Eastman's own policies show that Responsible Care is an industry standard "by design" and that a number of sources drawn from other industry participants confirm that point.  Pls.' Resp. Responsible Care at 13-17 (quoting websites of various chemical company characterizing Responsible Care as a "industry standard.")

        In its reply, Eastman reiterates its argument that plaintiffs have failed to identify authority which supports imposing a duty on Eastman owed to plaintiffs.  Eastman Reply on Responsible Care at 1 (ECF No. 901).  Eastman argues that imposing a duty on it to police its customers would essentially render it a marketplace insurer.  Id. at 5.  Eastman also argues that West Virginia law precludes imposition of such a duty where Freedom, a third party, is criminally responsible for the plaintiffs' injuries.  Eastman Reply on Responsible Care at 4 ("a person usually has no duty to protect others from the criminal activity of a third party because the foreseeability of risk is slight, and because of the social and economic consequences of placing such a duty on a person" (quoting Miller

**v. Whitworth**, 455 S.E.2d 821, 825 (W. Va. 1995))).

As to Responsible Care, Eastman argues that it cannot be treated as an industry standard due to its emphasis on continual improvement, variation in implementation between companies, and explicit language in guidance documents disclaiming any intent to create binding standards.  Eastman cites its expert for the proposition that Responsible Care, even if it were an industry standard, would not require Eastman to inspect Freedom's facilities or monitor how Crude MCHM was being stored.  Eastman also objects to several of the materials relied upon in the plaintiffs' reply, including industry publications referencing Responsible Care produced from websites and testimony by an Eastman employee regarding safety measures applicable to Crude MCHM adopted by Eastman following the spill. Eastman argues that the latter would be inadmissible under Federal Rule of Evidence 407 as a remedial measure.[2]

---

[2] For the reasons discussed below, neither the statements from industry members' websites cited by plaintiffs nor the testimony challenged by Eastman under Federal Rule of Evidence 407 would be material to the court's ruling on these motions for summary judgment.  Accordingly, to the extent Eastman's reply contains a motion to strike those materials from the plaintiffs' response, it is ORDERED that the motion to strike be, and it hereby is, dismissed as moot.

B.    Motion to Exclude Lawrence M. Stanton

        Eastman moves to exclude Lawrence M. Stanton
("Stanton"), plaintiffs' expert on Responsible Care and
Eastman's compliance therewith.  Stanton describes his
background as including "extensive experience and training in
the standards of care owed the public by the chemical industry
and its constituent companies, such as [Eastman]."  2015 Stanton
Decl. at 1.  Stanton's recent experience includes working as the
Director of the EPA's Office of Emergency Management and the
founding director of the Department of Homeland Security's
Infrastructure Security Compliance Division.  Most relevantly,
Stanton claims to have "designed major components of chemical
risk management business practices, including as a central
participant in the American Chemistry Council's development of
the Responsible Care Security Code."  Id. at 2.[3]

        Stanton has provided two expert declarations in
connection with this case.  In his initial declaration, Stanton
states his opinion that Eastman "fell short" of the requirements
of Responsible Care, exercising a level of care "beneath

---

        [3] An extensive statement of Stanton's background was
attached to his initial expert declaration.  See ECF No. 734-1
at 23.  Eastman has not directly challenged Stanton's
qualifications as an expert, focusing instead on the content of
his proffered opinions.

industry standards." Id. at 4.  Stanton opines that Eastman was aware of hazards associated with Crude MCHM and failed to properly assess the risks associated with Freedom's storage and handling of the product.  In particular, Stanton states that "Eastman was aware that [Freedom's] physical plant was in a deteriorated condition and that the company was not on firm financial footing.  In simple terms, [Freedom] could not be assumed to understand the hazards and risks of MCHM or how to properly manage those hazards and risks." Id. at 5 (citations omitted).  Despite that knowledge, Stanton concludes that Eastman "failed to take appropriate corrective action commensurate with the risk of a spill." Id. at 6.  Finally, Stanton concludes that Eastman's failure to warn Freedom, the water company, and officials of the risks due to Crude MCHM "led directly to the incident of January 9, 2014." Id.

Stanton's opinion that Eastman's conduct did not meet the standards imposed by Responsible Care is based in part on a review of twelve Responsible Care Guiding Principles.  Stanton opines that six of these principles specifically emphasize the importance of communication of risk and hazard information to stakeholders:

> III.  To work with customers, carriers, suppliers, distributors and contractors to foster the safe and secure use, transport and disposal of chemicals and provide hazard and risk information that can be

10

accessed and applied in their operations and products.

. . .

VI.   To promote pollution prevention, minimization of
waste and conservation of energy and other critical
resources at every stage of the life cycle of our
products.

VII.  To cooperate with governments at all levels and
organizations in the development of effective and
efficient safety, health, environmental and security
laws, regulations and standards.

VIII. To support education and research on the health,
safety, environmental effects and security of our
products and processes.

IX.   To communicate product, service, and process
risks to our stakeholders and listen to and consider
their perspectives.

. . .

XII.  To promote Responsible Care® by encouraging and
assisting others to adhere to these Guiding
Principles.

2015 Stanton Decl. at 11-12 (quoting The American Chemistry

Council's Responsible Care Guiding Principles) (emphasis

omitted).  Stanton identifies two specific hazards associated

with Crude MCHM--its potential corrosiveness and its strong

odor--which Eastman was aware of and in his view was obligated

to analyze and effectively communicate to Freedom.  Id. at 13.

     In his second declaration, Stanton adds observations

that Eastman "worked to build confidence in the Responsible Care

Code and its product stewardship" and "sought to limit the

extent of regulations to which [Eastman] was subject, including regulations that may have materially impacted the Elk Creek [sic] spill." 2016 Stanton Decl. (ECF No. 734-2 at 4). Stanton disagrees with Eastman's characterization of Responsible Care as an aspirational initiative, arguing that Responsible Care is a code of conduct and that the chemistry industry has represented as much to the government for years. Id. at 6 ("The Responsible Care Code was offered as a better, more effective substitute to regulations [and] was accepted as such by government on the grounds that it was not 'aspirational' but was in fact an enforceable set of standards . . .").

Eastman's motion to exclude Stanton rests on several grounds. First, Eastman argues that Stanton's opinions constitute inadmissible legal conclusions and are supported by nothing more than Stanton's self-proclaimed authority on the matters at issue. Second, Eastman argues that much of Stanton's proffered testimony is not relevant and not supported by sufficiently reliable data and facts as required by Daubert v. Merrell Dow Pharm., 509 U.S. 579 (1993). In particular, Eastman argues that Stanton's assertions that Responsible Care is an industry standard is based on nothing more than his subjective interpretation of Responsible Care, and notes his concession that Responsible Care "is not a list of specific requirements."

12

ECF No. 735, pg. 7 (quoting Stanton's 2015 Dep. at 195). Eastman
also emphasizes that Stanton did not evaluate the practices of
other chemical companies in reaching the conclusions contained
within his reports. Id. at 8.  Third, Eastman seeks to exclude
Stanton because his testimony would be unduly prejudicial and
would tend to confuse or mislead the jury.

        In opposition to Eastman's motion to exclude Stanton,
plaintiffs argue that the court has already ruled that Eastman's
criticisms go to the weight of Stanton's testimony rather than
their admissibility.  Plaintiffs refer to the court's order of
October 8, 2015 (ECF No. 470), which considered Stanton's
initial declaration in the context of the plaintiffs' motion for
class certification.  At that time, the court denied Eastman's
motion to exclude Stanton for purposes of class certification,
finding that to the extent Stanton "relies on Responsible Care
standards that have not been adopted as industry standards and .
. . reaches conclusions regarding Eastman's conduct based on
incomplete or selective evidence," those objections went to the
weight rather than the admissibility of his opinion.  See 310
F.R.D. 274, 286 (S.D.W. Va. 2015).  Plaintiffs further argue
that Stanton's opinions are not legal conclusions, that courts
routinely allow expert testimony on industry standards of care,
and that Stanton's testimony on Eastman's lobbying efforts are

both relevant and admissible "at a minimum, insofar as they inform the existence of industry standard[s] commensurate with Responsible care."  Pls.' Resp. Stanton (ECF No. 826) at 12.

In reply, Eastman argues that the court's prior treatment of Stanton's testimony should not control because it addressed only those issues germane to class certification.  In addition, Eastman points out that Stanton's 2016 declaration was produced after class certification, and that his conclusions regarding Eastman lobbying efforts are based on uncorroborated hearsay.

C.   Motion to Exclude Michele Sullivan

Plaintiffs, in turn, seek to strike and exclude the testimony of Michele Sullivan, Ph.D. ("Sullivan"), Eastman's expert on Responsible Care.  Sullivan describes herself as an "[e]xperienced senior chemical product safety/stewardship and regulatory compliance professional and recognized expert."  ECF No. 852-1 at 17.  While she has worked as an independent consultant in these areas since 2002, Sullivan's most relevant experience was a period from 1999 to 2001 during which she served as a Senior Director at the American Chemistry Council, with responsibilities including work on Responsible Care. Sullivan has issued two reports for Eastman in connection with

this case, on May 22, 2015 and February 22, 2016.

Sullivan's 2015 report discusses the background of Responsible Care, concluding that Responsible Care "is not an industry standard" because it "embraces a flexible approach for improving performance . . . [and] does not prescribe specific duties or standards of conduct." Sullivan Rep. 2015 (ECF No. 734-5) at 13. Sullivan states her opinion that Responsible Care "is not a manufacturer's guarantee of safety" and that "Responsible Care does not create a duty for Eastman to send an employee to the Freedom Industries facility nor to inspect the conditions of the site." Id. Sullivan states that Responsible Care includes a concept of "working with customers" with respect to hazards and risks, but that the particular steps a company takes to communicate risks should be commensurate with the risks posed by a particular product. Id. at 11-12. In addition, she states that "[t]here is no particular methodology or technique for quantifying risk required by Responsible Care" and in the case of Crude MCHM, Eastman's decision to rely primarily on a Material Safety Data Sheet ("MSDS") to communicate the product's risks was appropriate. Id.

Sullivan's second report largely responds to criticisms levied by Stanton, in particular the suggestion that Sullivan was conflating a global initiative by the International

Council of Chemical Associations (ICCA) with the domestic
Responsible Care program.  Sullivan Rep. 2016 (ECF No. 734-6) at
2-3, 7.  Sullivan reiterates that Responsible Care is not an
industry standard and states that the ICCA documents she relies
upon are relevant because "there is only one Responsible Care
globally."  Id. at 7.

     Plaintiffs move to exclude Sullivan's testimony and to
strike her reports in their entirety, arguing that her opinions
"examine Responsible Care in theory, not in practice, and convey
her subjective, unilateral interpretation of certain Responsible
Care documents."  Mem. Excl. Sullivan (ECF No. 853-2) at 2.
Plaintiffs also argue that Sullivan fails to base her opinions
on whether Responsible Care constitutes an industry standard on
a factual basis or any analysis specific to current industry
practices.  Id. at 4-5.  As a result, plaintiffs argue "there is
no analytical tie between the current industry and Dr.
Sullivan's opinions with respect to what is not industry
standard whatsoever."  Id.  Plaintiffs also highlight portions
of Sullivan's deposition which in their view constitute
concessions that she is not qualified to render an expert
opinion with respect to management systems or standards of care.
Id. at 5-7.  Plaintiffs also object to the portions of
Sullivan's reports which extensively quote portions of

Responsible Care documents, arguing that those materials should be presented directly to the jury rather than introduced through an expert.  Finally, plaintiffs move to strike and exclude Sullivan's opinion that Eastman's conduct complied with Responsible Care, arguing that her opinion was reached without any actual review of Eastman's product stewardship with respect to Crude MCHM.  Id. at 9-10.

In response, Eastman argues that Sullivan is fully qualified to testify on Responsible Care and that plaintiffs' challenges to her qualifications rest on statements "cherry-picked" from her depositions rather than her significant qualifications.  Eastman argues that plaintiffs seek to exclude Sullivan because her opinion contradicts their theory of liability.  Eastman argues that Sullivan's general observations regarding the role of Responsible Care in the industry are relevant and supported by the Responsible Care literature, and that Sullivan did in fact engage in an analysis of Eastman's practices with respect to Responsible Care.

In their reply (ECF No. 902), plaintiffs again argue that Sullivan's opinions should be stricken in their entirety as speculative and not sufficiently tied to the facts of the case. Plaintiffs claim that Eastman's position that Sullivan should be allowed to testify as to the general contours of Responsible

Care concedes that she has not considered the adequacy of
Eastman's practices in particular.  Plaintiffs also rely on
Sullivan's deposition testimony to challenge her expertise in
several areas, including "management systems" and the evaluation
of "standards of conduct."  Id. at 6-10.  Finally, plaintiffs
argue that portions of Sullivan's report reciting boilerplate
language from Responsible Care documents and purporting to
confirm Eastman's compliance with those documents should be
stricken and excluded.  Id. at 12-14.

## II.   Legal Standards

### A.   Summary Judgment

        Summary judgment is appropriate only "if the movant
shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  "Material" facts are those necessary to
establish the elements of a party's cause of action.  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News
& Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d
570, 576 (4th Cir. 2010) (same).  A "genuine" dispute of
material fact exists if, in viewing the record and all
reasonable inferences drawn therefrom in a light most favorable
to the non-moving party, a reasonable fact-finder could return a
verdict for the non-movant.  Anderson, 477 U.S. at 248.

When examining the record, the court must neither resolve disputes of material fact nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Instead, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).  Along those lines, inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

B.   Daubert Standard

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony.  A qualified expert's testimony is admissible if "it rests on a reliable foundation and is relevant."  Daubert v. Merrell Dow Pharm., 509 U.S. 579, 597 (1993).  Neither Rule 702 nor case law establish a mechanistic test for determining the reliability of an expert's proffered testimony.  Rather, "'the test of reliability is flexible' and 'the law grants a district court the same broad latitude when it decides how to determine reliability as it

19

enjoys in respect to its ultimate reliability determination.'"
United States v. Wilson, 484 F.3d 267, 274 (4th Cir. 2007)
(quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141-42
(1999)).

　　　　Testimony is relevant if it has any tendency to prove
or disprove an issue of fact that is of consequence in
determining the action. Fed. R. Evid. 401.  Though relevance
"typically presents a low barrier to admissibility," United
States v. Leftenant, 341 F. 3d 338, 346 (4th Cir. 2003),
evidence must have some "plus value" to the trier of fact.
United States v. Queen, 132 F. 3d 991, 998 (4th Cir. 1997).

　　　　The court is not obliged to "determine that the
proffered expert testimony is irrefutable or certainly correct"
-- "[a]s with all other admissible evidence, expert testimony is
subject to testing by '[v]igorous cross-examination,
presentation of contrary evidence, and careful instruction on
the burden of proof.'"  United States v. Moreland, 437 F.3d 424,
431 (4th Cir. 2006) (quoting Daubert, 509 U.S. at 596)
(alteration in original); see also Maryland Cas. Co. v. Therm-O-
Disc., Inc., 137 F.3d 780, 783 (4th Cir. 1998) (noting that
"[a]ll Daubert demands is that the trial judge make a
'preliminary assessment' of whether the proffered testimony is
both reliable ... and helpful").  Instead, the inquiry of the

court is focused on the principles and methodology employed by the expert, not the conclusion reached.  <u>Westberry v. Gislaved Gummi AB</u>, 178 F.3d 257, 261 (4th Cir. 1999).

III.    Application

At the outset, the court notes that the arguments between the parties as to Eastman's motion for summary judgment on the issue of Responsible Care encompass two distinct disagreements.  First, there is a dispute about whether, as a matter of law, Eastman owed a duty of care to the plaintiffs. In that context, Eastman seeks a ruling that Responsible Care does not supply such a duty.  The court has previously concluded that Eastman may owe a duty of care to Plaintiffs arising from the purported failure to provide information concerning the potential hazards of Crude MCHM.  To the extent that Eastman's motion seeks a ruling that it owed no duty to Plaintiffs, it is denied as moot.

Second, the parties dispute whether Responsible Care is an industry standard and, if so, whether Eastman's conduct comported with its requirements.  The court concludes that the record lacks competent evidence to establish that Responsible Care represents the industry standard.

"Responsible Care" is an environmental, health, and

21

safety performance initiative of the chemical industry,
promulgated by the ACC.[4]  The Responsible Care guidelines are
intended to "establish[] a sense of direction and provide[] a
unifying vision" to "guide the actions of employees and
management." Responsible Care Management System Implementation
Guidance ("RCMS Guide"), ECF No. 783-3, pg. 5.  "Product
stewardship" refers to the objectives of Responsible Care as
they relate to product handling and safety.

        Surprisingly, there appear to be very few cases in
which courts have considered whether the ACC's Responsible Care
guidelines represent the "industry standard" for the chemical
industry.  Eastman cites two prior cases in which courts
purportedly held that Responsible Care is not an industry
standard that creates a legal duty, Lescs v. William R. Hughes,
Inc., 1999 WL 12913 (4th Cir. Jan. 14, 1999) (unpublished), and
E. S. Robbins Corp. v. Eastman Chem. Co., 912 F. Supp. 1476
(N.D. Ala. 1995).[5]  Plaintiffs, in contrast, rely on Westley v.

_____

[4] Formerly known as the Chemical Manufacturers' Association.
[5] Eastman also cites Weist v. E.I. DuPont De Nemours & Co.,
2008 U.S. Dist. LEXIS 25615 (W.D.N.Y. Feb. 8, 2008) for the
proposition that, even assuming the adoption of Responsible Care
by the defendant in that case, it does not demonstrate an
assumption of a voluntary duty to monitor a customer's handling
of a manufacturer's products.  The opinion cited is a magistrate
judge's Report and Recommendation that was rejected by the
district court with respect to a different issue having to do
with negligent entrustment for which factual development was
still outstanding, resulting in recommittal to the magistrate

Ecolab, Inc., a case in which the district court held that "product stewardship" is an industry standard in the chemical industry based, in part, on a reference to Responsible Care. See 2004 WL 1068805 at *11 (E.D. Pa. May 12, 2004) (unpublished). Plaintiffs attempt to distinguish the cases cited by Eastman, pointing out that Lescs and E. S. Robbins Corp. dealt with limited aspects of Responsible Care and did not explicitly hold that the program does not create a duty to third parties.

In Lescs v. William R. Hughes, Inc., the plaintiff asserted that defendant Dow Chemical failed to adhere to standards contained within the Responsible Care Progress Report for 1995-1996 in its production of the pesticide Dursban. 1999 WL 12913 (4th Cir. 1999) (unpublished). Dow's failure to adhere to Responsible Care, plaintiff asserted, meant that Dow failed to meet industry standards, and thus could be liable under Virginia law. Though the Fourth Circuit disposed of the issue on the grounds that the Responsible Care guidelines relied on by plaintiff were not in effect at the time of the production of the pesticide, the court also was not impressed with the vague language of Responsible Care. See id. at *12 ("…a review of the

---

judge.   Id. at *3.

[Responsible Care report] reveals little in the way of recognizable standards."); see also id. at *12, n. 12 ("To put it mildly, this language [of the Responsible Care report] paints with a broad brush.").

Similarly, in E. S. Robbins Corporation v. Eastman Chemical Company, the district court for the Northern District of Alabama rejected a purchaser's argument that Responsible Care imposed a duty on a chemical supplier to ensure that its products were handled by a carrier in a particular manner. 912 F. Supp. 1476 (N.D. Ala. 1995). The plaintiffs there contended that the product stewardship provisions of Responsible Care imposed a duty on the supplier (Eastman), owed to plaintiff, to supervise or train carrier employees in how to load the chemical product into plaintiff's storage tanks. In declining to recognize a duty, the court emphasized the general, aspirational nature of the guidelines. See id. at 1493 ("The documents simply show that Eastman . . . is studying a wide array of safety and health-related factors concerning their products.").

In contrast, in Westley v. Ecolab, Inc., the district court for the Eastern District of Pennsylvania found that Responsible Care was the industry standard for the chemical industry. 2004 WL 1068805 (E.D. Pa. 2004). In Westley, the plaintiff, who had been injured on the job while using a

24

chemical cleaning product, sought to offer the expert testimony
that the product's supplier had failed to properly train
plaintiff's employer as to how to handle the product under the
Responsible Care guidelines.  The defendant sought to exclude
the expert's testimony, arguing that Responsible Care guidelines
applied only to chemical manufacturers, not chemical product
suppliers.  The court, however, admitted the expert's testimony,
stating that:

> Since the concept of 'product stewardship' appears to
> be an accepted industry standard in the area of
> chemical safety, Dr. Davidson's testimony with regard
> to this standard is not inappropriate.

Id. at *11.  The court appears to have based its conclusion
entirely on the testimony of a single expert, Dr. Davidson,
without reference to any case authority on the role of
Responsible Care.  The opinion does not indicate what
additional evidence, if any, suggests that Responsible Care
was the industry standard.

        The brief treatments of the matter in the cited
opinions are of limited guidance.  However, the court
agrees with the concerns expressed in E. S. Robbins and
Lescs that the Responsible Care guidelines provide
relatively little in the way of substantive standards.  An
"industry standard," is one that is well known and commonly
accepted.  See Handley v. Union Carbide Corp., 804 F.2d

265, 273 (4th Cir. 1986).  Establishing an industrial
standard requires "at least some evidence that an equal or
similar standard was in place or recognized by a business
or industrial entity conducting the same or similar
activities as the defendant."  Id.  Though the Plaintiffs
question whether they are more properly characterized as
"codes" than guidelines, it appears to the court that
Responsible Care and its implementation material provide
simply a set of principles and framework against which
Eastman derived its own specific rules regarding the
handling of its product.  See RCMS Guide, ECF No. 783-3,
pg. 4 (explaining that the guide provides "generic
implementation guidance").

Beyond their heavy reliance on the district court
opinion in Westley, the only other support for Plaintiffs'
contention that Responsible Care represents the "industry
standard" for chemical companies is the opinion of Plaintiffs'
expert Stanton.  Stanton's opinions, however, are supported by
little more than his own assertions.

Stanton's assertion that Responsible Care "is the
standard of care in the US chemical industry today," is based
entirely on his professional experience with the chemical
industry and hazard regulations.  Though his experience is

26

extensive, the Federal Rules of Evidence require that the expert
establish some link between his experience and the facts.  See
Fed. R. Evid. 702 Advisory Committee notes (2000 amends.) ("If
the witness is relying solely or primarily on experience, the
witness must explain . . . how that experience is reliably
applied to the facts.").  As discussed above, an "industry
standard," requires at least some evidence that an equal or
similar standard has been adopted or recognized by another
industry actor.  See Handley, 804 F.2d at 273.  Stanton concedes
that he did not evaluate the practices of other chemical
companies in reaching the conclusions contained within his
reports. See Stanton 2015 Depo. at pp. 407-408.  Stanton also
acknowledges that Responsible Care does not impose specific
requirements or finite rules of behavior on chemical companies;
rather, it provides a list of general principles.  See id. at
pp. 195-196.  Without some foundation to conclude that the broad
principles of Responsible Care translated into specific
practices or actions of companies that were well known and
commonly accepted within the industry, "Responsible Care" is not
shown to represent the industry standard.  The court will grant
Eastman's motion for summary judgment, to the extent that it
seeks a ruling that Responsible Care is not an "industry
standard" and did not independently create a duty on Eastman
owed to Plaintiffs.

27

Turning to Eastman's motion to exclude the testimony of Stanton and in view of the reasoning above, the court concludes that Stanton's opinion is similarly deficient insofar as it asserts that Eastman failed to adhere to the Responsible Care guidelines.  The conclusions of Stanton's report rest on an assumption that Responsible Care imposed a duty on Eastman to take particular actions concerning the handling of Crude MCHM.  Given the court's finding that Responsible Care did not impose a duty on Eastman, the court believes that Stanton's testimony lacks relevance to a finder of fact and should be excluded. See Daubert, 509 U.S. at 597 (1993).  However, to the limited extent that Stanton has opined regarding risk management and whether the hazards of Crude MCHM would be obvious to those in the chemical industry, the court concludes that his opinion is both sufficiently reliable and relevant to a finder of fact as to be admissible.

As to Sullivan, her reports assert that Responsible Care was not an industry standard, and serve to rebut Stanton's assertion that Responsible Care represents the industry standard.  The remainder of her reports assert that Eastman's conduct did, in fact, comply with the Responsible Care guidelines.  Thus, for the reasons discussed previously, the

court believes they lack relevance and will be excluded.[6]

## IV.   Conclusion

For the above-stated reasons, the court ORDERS as follows:

1.    Eastman's motion for summary judgment be, and it hereby is, granted to the extent that Responsible Care is not the industry standard and does not impose an independent duty on Eastman, but otherwise denied;

2.    Eastman's motion to exclude Lawrence M. Stanton be, and it hereby is, granted to the extent that Stanton opines regarding Responsible Care, but denied regarding risk management and hazards of Crude MCHM; and

3.    Plaintiffs' motion to exclude Michele R. Sullivan, Ph.D. be, and it hereby is, granted.

---

[6] A motion to strike expert testimony is generally improper, and for that reason the court declines to strike any portion of Sullivan's reports.  The federal rules provide that "[t]he court may strike <u>from a pleading</u> an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f) (emphasis added).  The expert reports at issue are not pleadings as defined by Rule 7, and there is no provision in the rules for a motion to strike any other type of document.  In addition, motions to strike are generally viewed with disfavor, and the Fourth Circuit has held that such motions should be treated as "a drastic remedy."

The Clerk is directed to forward copies of this memorandum opinion and order to counsel of record and any unrepresented parties.

DATED:    October 13, 2016

John T. Copenhaver, Jr.
United States District Judge