UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CRYSTAL GOOD, et al.,

       Plaintiffs,

v.                     Civil Action No.: 2:14-01374

WEST VIRGINIA-AMERICAN WATER COMPANY,
d/b/a WEST VIRGINIA AMERICAN WATER,
and EASTMAN CHEMICAL COMPANY,

       Defendants.

## MEMORANDUM ORDER AND OPINION

Pending before the court is plaintiffs' motion for leave to file under seal limited redactions to plaintiffs' memorandum of law, and certain supporting exhibits, in opposition to defendants' motion to exclude expert testimony of Kate Novick, P.E. (ECF No. 872), filed June 10, 2016. Defendants have filed no objection.

### Background

Plaintiffs offered Novick as an expert on matters of emergency preparedness and risk management. On May 10, 2016, defendants West Virginia-American Water Company, American Water Works Service Company, and American Water Works Company ("water company" defendants) filed their motion to exclude the expert testimony of Kate Novick. The water company defendants argue that Novick should be precluded from testifying because 1) the

ANSI/AWWA G440-11[1] emergency preparedness practices on which she opines are, according to defendants, aspirational and not an industry standard; 2) Novick's experience is too limited to permit her to testify as to the industry standard; and 3) Novick's testimony inappropriately opines as to the intent of West Virginia-American Water ("WVAW").

Plaintiffs filed their memorandum in opposition to defendants' motion to exclude expert testimony of Kate Novick on June 10, 2016. The memorandum argues that West Virginia-American Water has adopted the G440 practices, and that Novick's testimony is necessary for a jury to understand West Virginia-American Water's vulnerability assessment. A portion of pages 6-7 of the memorandum discussing vulnerabilities within the Kanawha Valley treatment plant system is redacted. In support of their memorandum, plaintiffs filed three of Novick's reports, Exhibit A, "Expert Report of Kate Novick, January 22, 2016;" Exhibit B, "Expert Report of Kate Novick, February 22, 2016;" and Exhibit C, "Rebuttal Expert Report of Kate Novick, March, 8, 2016." Exhibit A discusses standard practices of water utilities concerning risk management, and whether West Virginia-American Water complied with those practices in its response to the spill. The report contains

---

[1] "ANSI/AWWA G440-11" is shorthand reference to American Water Works Association Management Standard on Emergency Preparedness Practices developed in 2011.

several brief redactions throughout.  The redacted portions
discuss points within the water system vulnerable to attack, as
well as the content of the West Virginia-American Water's 2003
vulnerability assessment.  Exhibits B and C similarly contain
brief redacted portions discussing system vulnerabilities and the
ability of West Virginia-American Water to respond to a terrorist
attack.  Plaintiffs' motion to seal seeks to seal the redacted
portions of their memorandum, Exhibit A, Exhibit B, and Exhibit C.

## Standard

        The court notes that "[p]ublicity of [court] ... records
... is necessary in the long run so that the public can judge the
product of the courts in a given case." Columbus-Am. Discovery
Grp. v. Atlantic Mut. Ins. Co., 203 F.3d 291, 303 (4th Cir. 2000).
The right of public access to court documents derives from two
separate sources: the common law and the First Amendment.  The
common law right affords presumptive access to all judicial
records and documents.  Nixon v. Warner Comms., Inc., 435 U.S.
589, 597 (1978); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d
178, 180 (4th Cir. 1988).  Submitted documents within the common
law right may be sealed, however, if competing interests outweigh
the public's right of access.  Nixon, 435 U.S. at 598-99; In re
Knight Publishing Co., 743 F.2d 231, 235 (4th Cir.1984). Quoting
Knight, the Fourth Circuit Court of Appeals has observed:

3

> Some of the factors to be weighed in the common law
> balancing test "include whether the records are sought
> for improper purposes, such as promoting public scandals
> or unfairly gaining a business advantage; whether
> release would enhance the public's understanding of an
> important historical event; and whether the public has
> already had access to the information contained in the
> records."

Va. Dept. of State Police v. Wash. Post, 386 F.3d 567, 575 (4th

Cir. 2004) (quoting Knight, 743 F.2d at 235).

The First Amendment right of access has a more limited

scope than the common law right, having only "been extended ... to

particular judicial records and documents." Stone, 855 F.2d at

180. The First Amendment Right of access attaches if: (1) "the

place and process have historically been open to the press and

general public;" and (2) "public access plays a significant

positive role in the functioning of the particular process in

question." Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 8-

9 (1986).

The First Amendment right of access, however, provides

much greater protection to the public's right to know than the

common law right. To avoid disclosure under the First Amendment

right of access, the movant must show "the denial [of access] is

necessitated by a compelling governmental interest, and is

narrowly tailored to serve that interest." Globe Newspaper Co. v.

Superior Court, 457 U.S. 596, 606-07 (1982).

4

<u>Analysis</u>

The defendant water companies have previously explained the necessity of strictly securing WVAW's emergency response planning and certain of the statements in the 2003 vulnerability assessment regarding the vulnerability to attack of the Kanawha Valley water system. See Memorandum of Law in Support of Motion to Exclude Lorenz, ECF No. 763. The explanation includes the following:

> The terrorist attacks on September 11, 2001 spurred substantial focus on the security of critical infrastructure, including water treatment plants and distribution systems. Congress passed the Public Health Security and Bioterrorism Preparedness and Response Act of 2002, which required water providers with facilities above a certain size to undertake a process for assessing the vulnerability of their systems to a terrorist attack. Water providers were directed to complete these vulnerability assessments and submit a report to [the] EPA by March 2003. WV American completed a vulnerability assessment for the KVTP and submitted it to [the] EPA on March 31, 2003.

Id. at 11-12. The water companies add the following in a footnote:

> Vulnerability assessments (VAs) conducted pursuant to the 2002 Bioterrorism Amendments are extremely sensitive documents, dissemination of which presents significant security concerns. EPA's protocol for handling VA-related documents "ensures that vulnerability assessments are stored behind closed doors, filed under lock at all times, and accessed only by designated persons under strict security procedures," "protective measures equivalent to those conferred to

> Secret national security information." Protocol to
> Secure Vulnerability Assessments Submitted by Community
> Water Systems to EPA (Nov. 30, 2002), [link omitted], at
> Executive Summary.  Though the results of vulnerability
> assessments were to be incorporated by water utilities
> into new or revised Emergency Preparedness Manuals (see
> 42 U.S.C. § 300I-2(b)), EPA guidance documents cautioned
> that "[s]pecific details identifying vulnerabilities
> should not be included."  Large Water System Emergency
> Response Plan Outline: Guidance to Assist Community
> Water Systems in Complying with the Public Health
> Security and Bioterrorism Preparedness and Response Act
> of 2002 (July 2003) [link omitted], at II.C.

Id. at n. 28.  The plaintiffs have not disputed this

characterization of the vulnerability assessment.  Even so, the

mere assertion that certain information implicates security

concerns is not sufficient to deny access to documents.  United

State v. Moussaoui, 65 Fed. Appx. 881, 887 (4th Cir. 2003), citing

In re Washington Post, 807 F.2d 383, 391-92 (4th Cir. 1986).

Rather, it is for the court to independently determine whether and

to what extent documents should remain under seal.  Id., citing

United States v. Pelton, 696 F.Supp. 156, 159 (D.Md. 1986).

Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion
to Exclude Expert Testimony of Kate Novick, P.E.

        Plaintiffs' memorandum of law in opposition to the

defendants' motion to exclude expert reports of Novick is eight

pages long, and contains approximately fourteen lines of redaction

on pages 6-7.  The redacted portions discuss the content of the

2004 vulnerability assessment, and in particular, a vulnerability

of the system to infiltration and the means of preparing for and responding to an attack on the system. Having reviewed the redacted material, the court finds that the disclosure of such information substantially risks exposing vulnerabilities in the water system and the means by which the water companies would respond to an attack on the system. The protection of the municipal water supply is a compelling governmental interest, and relatedly, the interest in protecting the sanctity of the water supply outweighs the public's interest in access to information concerning the system's vulnerability to terrorist attack. The court is satisfied that the redactions are narrowly tailored, and will grant the seal as to redacted content.

## Exhibit A, January 22, 2016 Expert Report of Kate Novick

Exhibit A discusses Novick's review of potential vulnerabilities in the water treatment system. It is approximately 40 pages long, and contains redactions on 10 pages. These redactions identify vulnerabilities within the water system susceptible to terrorist attack, as well as WVAW's plans to prepare for and respond to a terrorist attack. For reasons discussed above, the court finds that disclosure of such information substantially risks exposing vulnerabilities in the water system. The court finds that the redactions are narrowly tailored and will grant the seal as to the redacted content.

7

<u>Exhibit B, February 22, 2016 Expert Report of Kate Novick</u>

Exhibit B is approximately 25 pages in length and
contains redactions on 4 pages.  Each of the redactions refers to
means by which WVAW would prepare for and respond to a potential
terrorist attack or infiltration.  Having reviewed the redacted
material, the court finds it narrowly tailored and will grant the
motion to seal for reasons discussed above.

<u>Exhibit C, March 8, 2016 Rebuttal Expert Report of Kate Novick</u>

Exhibit C is 20 pages in length and contains redactions
on 9 pages.  Each redaction discusses vulnerabilities within the
water system and the means by which WVAW would prepare for and
respond to a potential terrorist attack or infiltration.  Having
reviewed the redacted material, the court finds it narrowly
tailored and will grant the motion to seal for reasons discussed
above.

The Clerk is directed to forward copies of this order
to counsel of record and any unrepresented parties.

ENTER:  September 26, 2017

John T. Copenhaver, Jr.
United States District Judge

8