UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CRYSTAL GOOD, individually and as
parent and next friend of minor children
M.T.S., N.T.K, and A.M.S, and MELISSA
JOHNSON, individually and as a parent of an
unborn child T.A.J., and JOAN GREEN and SUMMER JOHNSON
and MARY LACY and WENDY RENEE RUIZ and KIMBERLY
OGIER and ROY J. McNEAL and GEORGIA HAMRA and
MADDIE FIELDS and BRENDA BAISEDN, d/b/a FRIENDLY
FACES DAYCARE, and ALADDIN RESTAURANT, INC. and
R.G. GUNNOE FARMS LLC and DUNBAR PLAZA, INC.,
d/b/a DUNBAR PLAZA HOTEL, on behalf of
themselves and all others similarly situated,

          Plaintiffs,

v.                                Civil Action No. 2:14-cv-1374

WEST VIRGINIA-AMERICAN WATER COMPANY,
d/b/a WEST VIRGINIA AMERICAN WATER, and
AMERICAN WATER WORKS SERVICE COMPANY, INC.
and AMERICAN WATER WORKS COMPANY, INC. and
EASTMAN CHEMICAL COMPANY and GARY SOUTHERN
and DENNIS P. FARRELL,

          Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

          Pending before the court are motions filed early in

this case for settlement of claims against defendants Gary

Southern and Dennis P. Farrell.  Both were associated with

Freedom Industries ("Freedom") as officers and directors.

Freedom is the owner and operator of the site of the contamination spill on January 9, 2014, that spawned this case. The contaminant consisted of a liquid mixture containing crude methylcyclohexanemethanol ("MCHM" manufactured by Eastman) that leaked from tanks owned by Freedom into the Elk River near Charleston, West Virginia.  The leaked MCHM traveled downstream and penetrated the filtration system of a West Virginia American Water plant.  From there it made its way into the water lines of residences and businesses in a nine-county area.

On December 9, 2015, plaintiffs filed a motion seeking preliminary approval of a settlement with Southern for $350,000 that was reached in June 2015 and a settlement with Farrell for $50,000 that was reached in December 2014.  On December 16, 2015, the court entered an order preliminarily approving the two settlements.  In doing so, the court found that the settlement with each of them "warrants notification to the Class as it appears fair and reasonable at this juncture."  A final approval hearing was set for April 18, 2016, on notice to what was then a "fault" class that had been conditionally certified by the court on October 8, 2015.

Just prior to the hearing, the plaintiffs filed on April 6, 2016, a motion seeking final approval of the proposed

2

settlement with each Southern and Farrell.  With respect to the
Southern settlement, plaintiff's counsel noted to the court at
the hearing that, apart from the $350,000 to be paid in this
case, Southern had paid $300,000 to the Freedom bankruptcy
estate as part of the spill clean up efforts; and, in addition,
Southern had released his claim for indemnity and defense
coverage under an AIG insurance policy that covered Freedom and
its officers, thereby freeing up  policy proceeds of $3.3
million that were paid to the Freedom bankruptcy estate and were
allowed to be used for site clean up as well.  The court notes
that no reference to Southern's payment of $300,000 to Freedom
or his release of any claim respecting the AIG insurance policy
appeared in any of the motions filed, prior to the hearing,
seeking approval of the $350,000 settlement.  Neither did it
appear in a proposed written settlement agreement, dated May __,
2015, between the putative Good class and Southern, though
unsigned by him (Doc. 506-1).  This court, of course, was never
called upon to approve those Freedom arrangements with Southern,
whatever they may have been, because neither the $300,000 paid
to Freedom nor the AIG insurance policy proceeds paid to Freedom
were at issue herein.

Only two brief written objections to either settlement were received and neither constituted a studied or substantive objection.  At the hearing, no one objected.  The court, however, did not act upon the Farrell and Southern settlements. On September 20, 2016, Southern filed his own motion seeking final approval of the $350,000 settlement wherein he cites the $300,000 payment to Freedom and the AIG insurance policy resolution, although the value of his claim of an insured interest, if any, under the policy is never discussed.  Neither were either of these latter two matters embedded in any notice to the "fault" class.

I.

The $50,000 Dennis Farrell settlement, while meager in comparison to the $150,500,000 settlement offered by the water companies and Eastman, is deemed adequate in light of his limited financial condition.  He presently lists a net worth of $224,000.  If this case against him were to proceed to trial, his share of personal attorney fees and litigation costs would exhaust a substantial portion of his net assets, leaving little to pay a judgment against him.  In view of those circumstances, the approval of the proposed $50,000 cash settlement is

4

warranted as fair and reasonable.  Though notice of it has not

been given to the larger Settlement Class ultimately certified

by the court on September 21, 2017, it is deemed a de minimus

matter for which notice is not required.  Moreover, the cost of

sending notice of it, prior to hearing and its likely approval,

would consume most, if not all, of the settlement amount.

Accordingly, further notice need not be given and the court

grants final approval of the $50,000 Farrell settlement.

## II.

The Gary Southern settlement of $350,000 is one of a

significant amount.  It was reached early in the case prior to

many of the rulings with respect to the viability of the various

causes of action alleged.  As the case has proceeded, the

plaintiffs have substantially prevailed, achieving a settlement

aggregating $150,500,000 with Eastern and the water companies.

The discovery process focused on those major defendants rather

than Southern or Farrell who did not participate in discovery.

In 2016 another action in this court arising out of

the same contamination spill was filed by West Virginia

Hospitality and Travel Association, Inc., on behalf of several

of its members who comprise nearly all of the eight or nine

business entities that have opted out of the $150,500,000 settlement.  The named defendants are the same as in this case. In the West Virginia Hospitality case, it has been announced that settlements have been reached with all defendants except for Gary Southern.  Though the West Virginia Hospitality case has largely been on hold during its first two years while this case was being readied for trial and now settled, the plaintiffs in that case are pursuing the claim against Gary Southern aggressively, as was first indicated by Southern in his September 20, 2016, motion.

The West Virginia Hospitality complaint contains a potentially significant cause of action against Southern under section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a) that has thus far not been presented in this case.  The West Virginia Hospitality complaint also specifically seeks, in the framework of its public nuisance cause of action, "rehabilitative advertising" damages by way of abatement that are yet to be pursued in this case.

On July 18, 2015, Southern pled guilty to three misdemeanor criminal charges under the federal Clean Water Act and the Refuse Act, each stemming from the MCHM leak:  negligent

6

discharge of a pollutant, 33 U.S.C. §§ 1319(c)(1)(A), 1311;
unlawful discharge of refuse matter, 33 U.S.C. §§ 407, 411; and
negligent violation of a permit condition, 33 U.S.C. §§
1319(c)(1)(A), 1311, 1318.  As part of the plea agreement,
Southern stipulated that as both a board member from March 2010
to December 2013 and president beginning December 9, 2013, "[he]
was a responsible corporate officer of Freedom . . . having the
responsibility and authority, along with others, to ensure that
Freedom complied with all laws, including environmental laws."
Further, Southern stipulated that his "negligence[,] . . . as a
responsible corporate officer of Freedom, . . . was a proximate
and contributing cause, albeit not the only proximate or
contributing cause, of the discharge of some quantity of MCHM
into the Elk River from the [Freedom tank] on January 9, 2014."

        Unlike Farrell, Southern appears to be a wealthy
individual.  In that same plea agreement Southern acknowledges
ownership of $7,325,000 in an annuity and various identified
securities, as well as ownership of real property on Marco
Island, Florida, as to which the government had filed a lis
pendens, and a 2012 Bentley.  Those personal property assets
represented items that had been seized by the United States and
were agreed by the government to be returned to Southern, partly

7

following entry of his plea of guilty to the three counts noted above, at which time the lis pendens would also be released, and the rest within seven days after his sentencing.  The worth of the 2012 Bentley and the Marco Island real estate is unstated, as are all other assets that Southern may possess.

Inasmuch as the $350,000 settlement proposed with Southern comes at an early stage of the case before sufficiently significant discovery and rulings by the court had adequately revealed the full, realistic potential liability of the defendants, including to some extent that of Southern, and also comes before the filing in 2016 of the West Virginia Hospitality case alleging additional matter not pled in this case, and inasmuch further as the amount of the proposed settlement with Southern is quite small in relation both to the level of liability to which Southern may be subject and his total worth, the court withdraws its preliminary approval of the Southern $350,000 settlement and declines to send notice thereof to the current Settlement Class.

The Clerk is directed to forward copies of this order to all counsel of record and any unrepresented parties.

DATED:  June 8, 2018

8    John T. Copenhaver, Jr.
     United States District Judge