```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA
```

CRYSTAL GOOD, individually and as
parent and next friend of minor children
M.T.S., N.T.K, and A.M.S, and MELISSA
JOHNSON, individually and as a parent of an
unborn child T.A.J., and JOAN GREEN and SUMMER JOHNSON
and MARY LACY and WENDY RENEE RUIZ and KIMBERLY
OGIER and ROY J. McNEAL and GEORGIA HAMRA and
MADDIE FIELDS and BRENDA BAISEDN, d/b/a FRIENDLY
FACES DAYCARE, and ALADDIN RESTAURANT, INC. and
R.G. GUNNOE FARMS LLC and DUNBAR PLAZA, INC.,
d/b/a DUNBAR PLAZA HOTEL, on behalf of
themselves and all others similarly situated,

       Plaintiffs,

v.                                  Civil Action No. 2:14-cv-1374

WEST VIRGINIA-AMERICAN WATER COMPANY,
d/b/a WEST VIRGINIA AMERICAN WATER, and
AMERICAN WATER WORKS SERVICE COMPANY, INC.
and AMERICAN WATER WORKS COMPANY, INC. and
EASTMAN CHEMICAL COMPANY and GARY SOUTHERN
and DENNIS P. FARRELL,

       Defendants.

```
             ORDER GRANTING FINAL APPROVAL OF
        THE GOOD CLASS SETTLEMENT AND ENTERING JUDGMENT
```

       This matter comes before the court pursuant to a Joint Motion ((filed by Plaintiffs and Defendants West Virginia-American Water Company, American Water Works Service Company, Inc., and American Water Works Company, Inc. and Eastman Chemical Company ("Defendants")) for Final Approval of the

Proposed Class Settlement and for Final Approval of Attorneys' Fees, Costs and Incentive Awards (the "Joint Motion"), dated December 29, 2017 [Doc. 1180]. A Final Fairness Hearing regarding the Settlement was held on January 9, 2018, and continued to February 1, 2018, before this court in Charleston.

In accordance with and for the reasons stated in the Memorandum Opinion and Order entered July 6, 2017 [Doc. 1146], as modified herein, together with the Order Granting Preliminary Approval Of The *Good* Class Settlement, Directing Notice To The Class, And Scheduling Fairness Hearing [Doc. 1166] entered September 21, 2017, the court finds and ORDERS as follows:

1. The proposed Settlement Class meets all the applicable requirements of Fed. R. Civ. P. 23(a) and (b)(3), and hereby confirms and finally certifies the following class for settlement purposes:

    a. All natural persons, including adults and minors (including in utero), who resided in residential dwellings that were supplied tap water by West Virginia American's Kanawha Valley Water Treatment Plant ("KVTP") on January 9, 2014.
    b. All businesses, and non-profit and governmental entities, that operated in real property locations that were supplied tap water by the KVTP on January 9, 2014.

    c. All natural persons who were regularly employed as hourly wage earners for businesses that operated in real property locations that were supplied tap water by West Virginia American's KVTP on January 9, 2014.

    d. The Settlement Class includes all persons and entities who are Exhibit A Plaintiffs as specified at Section 5.3.2 of the Amended Settlement except those who are Opt Outs.

**Excluded from the Settlement Class are:**

    a. West Virginia-American Water Company and its officers, directors, and employees and any affiliates of West Virginia American and their officers, directors, and employees;

    b. Eastman and its officers, directors, and employees and any affiliates of Eastman and their officers, directors, and employees;

    c. Judicial officers assigned to this case and their immediate family members and associated court staff assigned to this case, other than court reporters;

    d. Settlement Class Counsel and attorneys who have made an appearance for the Defendants in this case;

    e. The Settlement Administrator, Notice Administrator, Guardian ad Litem, or other consultants and associated staff assigned to this case; and

    f. Persons or entities who have excluded themselves from the settlement class (Opt Outs).

All persons or entities who have not submitted timely and proper exclusion requests and who otherwise fall within the class definition are members of the Settlement Class.

2. Settlement Class Counsel have met the standards of Fed. R. Civ. P. 23(g) and have fairly and adequately represented the interests of the Settlement Class. The court confirms the appointment of Settlement Class Counsel.

3. The appointment of the accounting firm, Smith, Cochrane and Hicks, as the Settlement Administrator to fulfill the tasks and obligations set forth in the Amended Settlement Agreement is confirmed.

4. The Notice transmitted to the Settlement Class met the requirements of Fed. R. Civ. P. 23(c), constituted the best notice practicable under the circumstances, and satisfied the Constitutional due process requirements of notice with respect to all Settlement Class Members, including minors and those who are incapacitated. The Notice reflected and documented the details of the court's preliminary approval of the Settlement as well as the request for an award of attorneys' fees, reimbursement of costs and approval of incentive awards. The Notice Program was executed by qualified and experienced Notice Administrators and was completed in timely fashion, and in coordination with an experienced Settlement Administrator who established channels of communication for Settlement Class Members including maintenance of a website which posted the Notices and related documents.

5. Defendants have fully complied, to the best extent possible, with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. §1715.

6. The appointment of John A. Carr, Esq. as Guardian Ad Litem is confirmed and there is accepted his Report Of The Guardian Ad Litem On The Fairness Of The Proposed Amended Settlement Agreement, dated January 19, 2018 (Doc. 1195). Based on that Report, the court finds that the Amended Settlement Agreement is fair, reasonable and adequate with respect to Settlement Class Members who are minors, lack capacity or are incompetent. For purposes of the function of the Guardian Ad Litem, a minor is a person under age 18 and the definition of a Class Member who lacks capacity is the definition of incapacity provided in W.Va. Code §39B-1-102(5). The Guardian Ad Litem shall have the authority to assist Settlement Class Members who are minors or incapacitated with the claims filed by them or on their behalf other than residential simple claims. As to residential simple claims, the filing of the claims and the division of proceeds distributed thereon is ordinarily to be handled by the person or persons in whose name the water company account is listed. If a minor or incapacitated person is in a dispute, under Section V.B.3 of Exhibit 3 to the Amended Settlement Agreement, with the account holder over the division

of proceeds, the Guardian Ad Litem may represent the interests of the minor or incapacitated person in the resolution of the dispute by the Settlement Administrator.

7. The Amended Class Action Settlement Agreement, which memorializes the Settlement, is fair, reasonable and adequate within the meaning of Fed. R. Civ. P. 23(e). The Amended Class Action Settlement Agreement, along with all Exhibits thereto, is adopted and fully incorporated by reference into this Order and Judgment. In making this determination, the court has considered the current posture of this litigation and other pending actions and the risks and benefits to the parties involved in both settlement of these claims and continuation of the litigation.

8. As of the Effective Date, the Class Release shall be given full force and effect and Plaintiffs and the Settlement Class Members shall have released and be deemed to have released any and all Released Claims as detailed in and as governed by Section 9 of the Amended Settlement Agreement. Settlement Class Members and Plaintiffs and any legal or natural persons who may claim by, through or under them are, by operation of the Release, permanently barred and enjoined from commencing, asserting or continuing any Released Claims against any Released

Entity, as those terms are defined in the Amended Settlement Agreement. Valid Opt Outs are not bound by the Amended Settlement Agreement or the Final Approval Order. This Amended Settlement Agreement is the exclusive remedy for any and all Released Claims against any and all Released Entities.

9. In the court's order of July 6, 2017, preliminary approval was given to an award of a 25% fee on the guaranteed funds ($100,500,000) and on any amounts paid out of the contingent fund ($50,000,000). Within the order is a thorough exposition of applicable law and the attorney fee awards in other class action cases of similar size and complexity, all of which is incorporated herein.

Note was taken of the empirical studies by Professors Thomas Eisenberg and Geoffrey P. Miller finding that the mean percentage fee in 69 cases ranging from approximately $70 million to approximately $175 million was 19.4%. Pet. For Fees 20-21. See Thomas Eisenberg & Geoffrey P. Miller, Attorney Fees and Expenses in Class Action Settlements: 1993-2008, 7 J. Empirical Legal Stud. 248 (2010); William B. Rubenstein, Newberg on Class Actions § 15:78, 81 (5th ed.)(Eisenberg and Miller's studies show that "the mean award for recoveries of $1.1 million and less was 37.9%, while the mean for recoveries over $175.5

million was 12%"); In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 339 (3d Cir. 1998) (fees in common fund cases exceeding $100 million "ranged from 4.1% to 17.92%," noting the "inverse relationship" between fund size and attorney fee percentage); Carlson v. Xerox Corp., 596 F. Supp. 2d 400, 405 (D. Conn.), aff'd, 355 F. App'x 523 (2d Cir. 2009) (providing a chart of some of the largest class action settlements and noting that in only 6 of the top 26 cases was the fee awarded higher than 20% and in no case was it higher than 28%); Goldberger v. Integrated Res., Inc., 209 F.3d 43, 51-52 (2d Cir. 2000) (percentages in common fund cases between $50 and $75 million ranged between 11% and 19%). Order at 62-67, 76.

In the order of July 6, 2017, the court twice noted that it was unlikely that the $50 million contingent fund would be exhausted (Id. at 68, 81). Indeed, it was stated that "there is a risk that claimants will not access the contingent fund at all." Id. at 68. The parties estimated the number of simple claims at 37,000 residential and 5,000 business. Id. at 88. Based on these and other like estimates, the notice to the class estimated, for example, payment of $550 for each residential household plus $180 for each additional household member.

Instead, the Settlement Administrator has been overwhelmed by the filing of some 87,000 simple residential claims (also containing claims for 126,000 additional residents) as well as some 6,750 simple business and government claims, and 2,700 individual review claims. The total dollar amount of all claims timely filed is just in excess of $162,000,000. Although some of those claims will ultimately be denied, it is apparent that the entirety of the $150,500,000 will be expended inasmuch as the settlement funds for distribution have been oversubscribed.

In arriving at preliminary approval of a 25% attorney fee, the court did so with the expectation that the contingent fund of $50,000,000 would have been only partially accessed. Had all claims and costs and fees of all kind aggregated, say, $120,000,000, a 25% attorney fee would have been $30,000,000. While it is gratifying that the entire $150,500,000 will be accessed, the attorney fee percentage should be modified from that preliminarily approved in order to reflect the unanticipated high dollar volume of claims received so as to avoid a potential windfall benefit. In fixing the fee, the court recognizes the favorable settlement result that has been achieved by the plaintiff attorneys and their state court counterparts through the exceptional skill and dedication that

9

they have so professionally displayed throughout these proceedings. Without their services and willingness to risk the loss of their highly valuable time and the costs of litigation, there would be no settlement funds to disburse.

After taking into account all of the factors relating to the award of attorney's fees, both in class action generally and this case in particular, the court concludes that an overall attorney fee of 22% is a fair and reasonable attorney fee in this case and is hereby finally approved. The 22% fee applies to the guaranteed funds of $100,500,000, the contingent fund of $50,000,000 and the sums recoverable from the individual defendants, Gary Southern and Dennis P. Farrell; and it is premised on the disbursement of the entirety of those funds, along with sums recovered from the two individual defendants, for the benefit of the class claimants and the payment of the 22% attorney fees and all costs of every kind approved by the court.

As requested by the parties, these attorney fees shall be paid by the Settlement Administrator to the order of Bonnett, Fairbourn, Friedman & Balint, P.C., with one-half of the amount payable from the aggregate amount of the Eastman Fund and the American Water Guaranteed Settlement Fund to be paid on the

Effective Date and the balance of that amount payable to be paid upon distribution of Simple Claim settlement benefits to the Settlement Class.  Attorney fees based on payments made from the American Water Contingent Settlement Fund shall be paid in three installments, one 60 days after the first payments from the American Water Contingent Settlement Fund are first paid, the second 60 days later and the balance upon final distribution of payments to eligible Class Members.  Only those attorneys' fees expressly delimited under paragraphs 13.1 of the Amended Settlement Agreement shall be borne by the Eastman Fund, the American Water Guaranteed Settlement Fund or the American Water Contingent Settlement Fund established thereunder.  No other claims for attorney fees will be allowed by the court.

      10.  Attorneys representing Claimants in the Individual Review Option may earn up to 15% of the amount awarded under the Settlement to an eligible Claimant as a contingent fee from a Claimant, provided that the net payment to the Claimant after deducting fees and expenses must exceed the applicable Simple Claim Amount, if any.  No person may charge a fee to a Claimant for assisting in the preparation or filing of Simple Claim Forms, except that attorneys representing individual Business Claimants with 2013 Annual Revenue in excess of $100,000, may earn up to 15% of the amount awarded for a

Simple Claim Form claim if it was necessary for the attorney to analyze the Claim as an Individual Review Option claim to determine whether the Claimant should file a Simple Claim Form claim or an Individual Review Option claim.  All attorneys' fees and retainer contracts remain subject to applicable regulations, including, without limitation, Rule 1.5 of the West Virginia Rules of Professional Conduct, governing fee agreements.  The fees described in this paragraph shall be paid by the individual Claimant and shall not be paid from the Eastman Fund, the American Water Guaranteed Settlement Fund, or the American Water Contingent Settlement Fund.

      11.  The Settlement Administrator, Smith, Cochrane and Hicks, is engaged in the tedious process of examining each of those filed claims aggregating some $162,000,000, sorting out the invalid claims and those that are in some manner or to some extent deficient, following which those who wish to cure the defects in their claims will be given a 30-day opportunity to do so.  The Settlement Administrator, of course, cannot determine the amount to be paid on any given claim until the dollar amount of all those nearly 94,000 simple claims being paid can be determined.  And that cannot be determined until the 30-day cure period has run and the Settlement Administrator has resolved the disputes relating to the 30-day cure claims.

What is quite clear is that there will not be sufficient funds to pay the entirety of the amounts that were presented in the class notice as being the projected claim recoveries.  The likelihood, as seen at this juncture, is that the recoverable amount on the allowed claims will be in the range of twenty percent less than the projected figures set forth in the class notice to file claims.

In order for the initial payout to take place, the Amended Settlement Agreement provides that the Settlement Administrator must also first compute the aggregate value of all simple claim form claims and the aggregate maximum value of all Individual Review Option claims based on the requested individual review claim amounts, as well as administrative expenses, attorney fees and litigation costs.  Inasmuch as the requested claim amounts in the individual review claim forms are in a great many instances in dispute, the Settlement Administrator is directed to simply estimate the aggregate maximum value of all Individual Review Option claims without regard to the "requested individual review claim amounts" in order that payment of the simple claims will not be unduly depressed in amount or delayed in payment.  With that modification, the initial payment of simple claim form claims,

after the proposed payment is submitted to the parties and the court and reviewed and approved by the court, can then begin.

Payment of claims shall be by bank check and mailed at or within five days of the date of the check. The check shall carry the notation on its face that "This check void, and the claim may be deemed waived, unless presented for payment within 90 days of issue date." If the check is not presented to the bank on which it is drawn within 90 days of the date of the check, it shall be void and the claim may be deemed waived, and the sum for which the check is drawn shall be pooled with funds remaining for distribution that shall be distributed, along with any undistributed interest earned, to the claimants as the court may equitably direct in keeping with the provisions of the Amended Settlement Agreement and this order.

12. The court finds that reimbursement of the reasonable expenses incurred in the prosecution of this class action, and parallel litigation to the extent those efforts helped bring about the global resolution of this dispute, is appropriate. After reviewing the parties' updated submissions in support of the Joint Motion and in conjunction with the Final Fairness Hearing, the court finds that reimbursement of costs and expenses of $2,579,836, is fair and appropriate, which sum

14

shall be allocated by the court on an equitable basis to the various settlement funds.

All administrative expenses of the Settlement Administrator and the Notice Administrator, as well as that of the Guardian Ad Litem, the Appeal Adjudicator, and any other similar costs that may be incurred are subject to approval by the court and allocation on an equitable basis to the various settlement funds.

13. The court finds that the named plaintiffs are entitled to incentive awards to be paid from the Eastman Fund and the American Water Guaranteed Settlement Fund, of $15,000.00 each to Class Representatives Crystal Good; Melissa Johnson; Mary Lacy; Joan Green; Summer Johnson; Wendy Renee Ruiz; Kimberly Ogier; Roy J. McNeal; Georgia Hamra; Maddie Fields; Brenda Baisden, d/b/a Friendly Faces Daycare; Aladdin Restaurant, Inc.; R.G. Gunnoe Farms LLC; and Dunbar Plaza, Inc. d/b/a Dunbar Plaza Hotel; and $10,000.00 each to the plaintiffs named in *In re Water Contamination Litigation*, No. 16-C-6000, filed in West Virginia Circuit Court and transferred to the West Virginia Mass Litigation Panel (the "MLP Action"): Craig Cook; Ann Perrine; Joanna Gibson; Krisi Ord; Nicholas Shahoup, DDS;

15

Scott Miller/Bar 101 LLC d/b/a Bar 101 and Ichiban; Better Foods, Inc.; and Capitol Hotels, Inc.

14.  In reaching the findings in this Order, the court has given weight to the fact that the Settlement Class Members were afforded a full opportunity to object to the Settlement or any aspect of the Settlement, including the Motion for Award of Attorneys' Fees, Reimbursement of Costs and Incentive Awards, and that no objections to any aspect of the Settlement were formally or informally presented to the court.  No objections were heard at either the January 9 or February 1 Final Fairness Hearings.  The court finds that the lack of objections counsels in favor of final approval of the Settlement.

15.  The court determines under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directs that the judgment with respect to all claims by Settlement Class Members be certified as final judgments.  The court shall retain continuing and exclusive jurisdiction over the interpretation, enforcement and implementation of the Amended Settlement Agreement in accordance with its terms and this Order, including the confidentiality orders entered in this case and the included protections for information submitted by Claimants.

16. Settlement Class Members are ordered to dismiss with prejudice any Released Claims pending in any other Court.

17. The court permanently bars and enjoins each Settlement Class Member from filing, asserting, commencing, maintaining or consenting to any action against the Released Entities with respect to the Released Claims.

18. MLP Lead Counsel are ordered to seek dismissal with prejudice of all State Actions except any such action that is brought by an Opt Out.

19. The court approves the distribution of an aggregate payment for all members of a Household or all owners of an Eligible Business Location to a single representative of a Household or a Business Location and further approves and authorizes the Settlement Administrator to mail multiple payment checks for members of a Household to a single representative of the Household.

20. The parties shall complete all remaining obligations under the Amended Settlement Agreement.

17

21. All capitalized terms not otherwise defined in this Order shall have the meanings set forth in the Amended Settlement Agreement.

22. The Clerk will transmit copies of this Order to counsel for the parties.

DATED: June 8, 2018

John T. Copenhaver, Jr.
United States District Judge