# EXHIBIT A

## ESCROW AND QUALIFIED SETTLEMENT FUND AGREEMENT

This ESCROW AND QUALIFIED SETTLEMENT FUND AGREEMENT dated July 3, 2018 (the "***Escrow Agreement***"), is entered into by and among WEST VIRGINIA-AMERICAN WATER COMPANY, AMERICAN WATER WORKS COMPANY, INC. and AMERICAN WATER WORKS SERVICE COMPANY, INC. (the foregoing, collectively "***American Water Defendants***"), EASTMAN CHEMICAL COMPANY ("***Eastman,***" and collectively with American Water Defendants, the "***Defendants***"), each of the undersigned SETTLEMENT CLASS COUNSEL, on behalf of the members of the Settlement Class (as defined in the Settlement Agreement) (collectively, the Defendants and Settlement Class Counsel are referred to herein as the "***Settling Parties***" and each a "***Settling Party***"), Smith Cochran & Hicks, PLLC ("***Settlement Administrator***") and FIFTH THIRD BANK, an Ohio banking corporation, as escrow agent and depository in respect of the Qualified Settlement Funds established pursuant hereto (the "***Escrow Agent***"). All capitalized terms in this Escrow Agreement shall have the meaning as set forth in the Amended Class Action Settlement Agreement along with exhibits thereto dated August 25, 2017 filed in *Good vs. West Virginia-American Water Company et al.*, (as amended, modified, or otherwise supplemented from time to time, the "***Settlement Agreement***") unless otherwise defined herein.

## RECITALS

A.  The Settlement Agreement sets forth the terms and conditions of a full and final settlement of all claims of the Settlement Class Members against the Defendants relating to the Freedom Chemical Spill.

B.  The Settlement Agreement prescribes the terms, conditions and timing of certain payments to be made by the Defendants. The Settlement Agreement authorizes the use of certain funds for Advance Payments without a Final Approval Order. The Settlement Agreement calls for the establishment of three separate funds: the Eastman Fund, the American Water Guaranteed Settlement Fund and the American Water Contingent Settlement Fund, each of which is to be used, provided that the specified conditions are satisfied and provided further that there is a Final Approval Order, to pay the claims of Settlement Class Members, Attorneys' Fees and Litigation Expenses authorized by the Court and Administrative Expenses. Collectively, these three funds, defined in the Settlement Agreement, together with all interest or earnings in respect thereof, shall be called the "***Funds***" and each a "***Fund***."

C.  Under the Settlement Agreement, the American Water Guaranteed Settlement Fund and the American Water Contingent Settlement Fund (to the extent that it is funded) are both intended to qualify and be maintained at all times as "qualified settlement funds" as defined by U.S. Treasury Regulation 468B-1 *et seq*.

D.  The Eastman Fund is intended to qualify and be maintained as a "qualified settlement fund" as defined by U.S. Treasury Regulation 468B-1 *et seq*.

E.  The Court has approved the appointment of the Settlement Administrator responsible for, *inter alia*, processing the claims of the Settlement Class and determining the amount of

payments to be distributed to eligible claimants in accordance with the terms of the Settlement Agreement.

F.  Fifth Third Bank has agreed to serve as the Escrow Agent and to perform and fulfill all functions assigned to the Escrow Agent under this Escrow Agreement.

G.  This Escrow Agreement shall govern the deposit, investment, maintenance and disbursement of the Funds through procedures that assure compliance with the Settlement Agreement and any applicable orders of the Court.

NOW THEREFORE, subject to Court approval, the Settling Parties and the Escrow Agent agree as follows:

**ARTICLE 1**

**<u>ESCROW DEPOSIT</u>**

**<u>Section 1.1 – Funding</u>**

**(a)   Pre-Effective Date Funding.**

In the event that the Early Funding Date occurs , then on such date, pursuant to Sections 5.2 and 5.3 of the Settlement Agreement, Eastman shall deposit the Eastman Fund (calculated as provided in Section 5.3 of the Settlement Agreement and, as provided therein, <u>less</u> any Advance Payments made by Eastman) into the Eastman Settlement Fund Account (as defined below), and pursuant to Section 5.4.1 of the Settlement Agreement, the American Water Defendants shall deposit the sum of $50,000,000.00 (<u>less</u> any Advance Payments made by the American Water Defendants) into the American Water Guaranteed Settlement Fund Account (as defined below).

**(b)   Effective Date Funding.**

**Eastman Funding – Eastman Settlement Fund Account.**   Provided that the Early Funding Date has not occurred, on the Effective Date Eastman shall deposit the Eastman Fund (calculated as provided in Section 5.3 of the Settlement Agreement and, as provided therein, <u>less</u> any Advance Payments made by Eastman) into the Eastman Settlement Fund Account.  If the Early Funding Date has occurred, then Eastman shall have no further funding obligation on the Effective Date.

**American Water Defendants' Funding – American Water Guaranteed Settlement Fund Account.**   If the Early Funding Date has occurred, then on the Effective Date the American Water Defendants shall deposit into the American Water Guaranteed Settlement Fund Account the amount calculated as follows:  $76,000,000.00 <u>less</u> the amount paid on the Early Funding Date, and <u>less</u> any Advance Payments paid by the American Water Defendants after the Early Funding Date and before the Effective Date.

If the Early Funding Date has not occurred, then on the Effective Date the American Water Defendants shall deposit into the American Water Guaranteed Settlement Fund Account the sum of $76,000,000.00 <u>less</u> any Advance Payments paid by the American Water Defendants.

     **(c)**     **Post-Effective Date Funding.**

     **American Water Defendants' Funding – American Water Contingent Settlement Fund Account.** The American Water Contingent Settlement Fund Account shall be funded as provided at Section 5.4.3.1 and 5.4.3.2 of the Settlement Agreement. The American Water Defendants shall deposit the Initial Contingent Fund Contribution (if such contribution is determined to be necessary by the Settlement Administrator) to the American Water Contingent Settlement Fund Account as specified in the Settlement Agreement on a date to be determined by the Settlement Administrator. The American Water Defendants shall deposit additional sums (if such contribution is determined to be necessary by the Settlement Administrator) to the American Water Contingent Settlement Fund Account as specified in the Settlement Agreement on a date to be determined by the Settlement Administrator. The maximum aggregate amount of all such deposits in respect of the American Water Contingent Settlement Fund Account, including the Initial Contingent Fund Contribution, shall not exceed $50,000,000.00.

## Section 1.2. – Method of Deposits

     Defendants shall make deposits from time to time as required herein, by wire transfer of U.S. funds to the appropriate Settlement Account established by the Escrow Agent, and in accordance with the wire instructions of the Escrow Agent. The wire transfers shall be initiated so that under ordinary wire transfer procedures the funds would be expected to be received by the Escrow Agent on the Effective Date, the Early Funding Date, or such later date, as applicable. The Escrow Agent shall be prepared to receive such funds and shall promptly acknowledge receipt of such funds and shall deposit such funds into the appropriate Settlement Account as defined and prescribed herein. For any deposit occurring after the date of the Final Approval Order, the Settling Parties or Settlement Administrator shall provide written notice to the Escrow Agent at least one (1) Business Day prior to the date of each such deposit made under this Escrow Agreement.

     Eastman shall wire the Eastman Fund as follows:

     [*Redacted*].

     The American Water Defendants shall wire the American Water Guaranteed Settlement Fund as follows:

     [       ].

     The American Water Defendants shall wire the American Water Contingent Settlement Fund (to the extent it is funded) as follows:

     [       ].

## ARTICLE 2

## ESTABLISHMENT OF ACCOUNTS

### Section 2.1 – Settlement Accounts Generally

Pursuant to the terms and conditions of this Agreement, the Escrow Agent shall establish three separate segregated interest bearing escrow accounts:  (1) the "***Eastman Settlement Fund Account***" – which the Escrow Agent shall establish to hold the Eastman  Fund; (2) the "***American Water Guaranteed Settlement Fund Account***" – which the Escrow Agent shall establish to hold the American Water Guaranteed Settlement Fund as it is paid as specified above at Section 1.1; and (3) the "***American Water Contingent Settlement Fund Account***" – which the Escrow Agent shall establish to hold the assets of the American Water Contingent Settlement Fund if and as paid. Collectively, these three separate accounts shall be identified as the "***Settlement Accounts***" and each a "***Settlement Account***."  All investment earnings and/or income on each Settlement Account shall become part of the applicable Fund and the Funds (including such earnings and/or income) shall be disbursed only as specified in this Escrow Agreement.

### Section 2.2 – Purpose and Uses of Settlement Accounts

      (a)      **Pre-Effective Date.**

At any time prior to the Escrow Agent's receipt of a notice from Settlement Administrator in respect of the Effective Date, the Escrow Agent shall maintain the Settlement Accounts solely to hold, safe-keep and invest the Funds in the Settlement Accounts, except that, certain distributions for Advance Payments may be made prior to the Effective Date, solely pursuant to a Court order. (Advance Payments for Notice and Initial Administration under Section 5.1 of the Settlement Agreement, to the extent not fully paid before the establishment of the Settlement Accounts, will continue to be paid directly by the Defendants.)

      (b)      **Post-Effective Date.**

At any time after the Escrow Agent's receipt of a notice from Settlement Administrator in respect of the Effective Date, the Escrow Agent shall maintain the Settlement Accounts to hold, safe-keep and invest the assets in such Settlement Accounts in accordance with this Escrow Agreement; and shall transfer funds to a disbursement account to enable the payment of eligible claims, Attorneys' Fees and Litigation Expenses and Administrative Expenses as provided herein.

### Section 2.3 – Establishment of Disbursement Accounts

Substantially simultaneous with the execution of this Escrow Agreement, the Settlement Administrator shall establish a commercial deposit account for each of the Eastman Settlement Fund Account, the American Water Guaranteed Settlement Fund Account, and the American Water Contingent Settlement Fund Account, with Fifth Third Bank (in such role as a commercial depository, the "***Bank***").  Each such commercial deposit account shall be identified as the Disbursement Account for the applicable Fund (i.e., the Disbursement Account for the Eastman Settlement Fund Account, the Disbursement Account for the American Water Guaranteed Settlement Fund, and the Disbursement Account for the American Water Contingent Settlement

Fund (collectively the "***Disbursement Accounts***" or each a "***Disbursement Account***")). The Disbursement Accounts shall be used only to make payments for claims (claimant checks), Administrative Expenses and Attorneys' Fees and Litigation Expenses from each applicable Fund only as authorized by the Settlement Agreement. The Bank may receive instructions to print, issue and mail checks or to issue payments via wire transfer. The Disbursement Accounts shall be funded as specified below at Article 4.

The Disbursement Accounts shall be a "zero cost" solution as more particularly described in <u>Exhibit A</u> (the "***Disbursement Account Materials***") attached hereto. Such monthly credits shall "roll forward" and shall offset any transaction fees that ordinarily would be associated with a disbursement account.

The Bank shall implement "Positive Pay" services to prevent fraud and unauthorized cashing of checks. The Bank confirms that Bank shall allow checks issued from any Disbursement Account to be cashed at any of its six (6) locations in West Virginia with no charge to the check holder.

Notwithstanding anything herein to the contrary, solely with respect to the fees related to the Disbursement Accounts, the terms and conditions of the Disbursement Account Materials shall supersede the terms hereof in all respects.

## <u>Section 2.4 – Authority</u>

All signatories to this Escrow Agreement represent and warrant to the Escrow Agent and each other that they have full and complete authority to enter into and execute this Escrow Agreement on behalf of the party on whose behalf they are signing. Concurrent with the execution of this Escrow Agreement, the Settlement Administrator shall deliver to the Escrow Agent an Incumbency Certificate in the form of <u>Exhibit B</u> to this Escrow Agreement. Such Incumbency Certificate establishes the identity of the representatives of the Settlement Administrator entitled to issue an Escrow Directive to the Escrow Agent and to enter this Agreement (each an "***Authorized Representative***" of the Settlement Administrator). In the event of any change in the identity of such representative, a new Incumbency Certificate shall be executed and delivered to the Escrow Agent, executed on behalf of the Settlement Administrator. Each of the parties to this Escrow Agreement acknowledge and agree the Escrow Agent shall be fully protected in relying without inquiry on any Incumbency Certificate delivered to the Escrow Agent in accordance with this Escrow Agreement. In the event instructions are given (other than in writing at the time of execution of this Escrow Agreement), whether in writing, by electronic transmission or otherwise, the Escrow Agent may (but is not obligated to) seek confirmation of such instructions by telephone call back to an Authorized Representative, and the Escrow Agent may rely upon the confirmation of anyone purporting to be the Authorized Representative. If the Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, the Escrow Agent shall not be required to execute the instruction until all issues have been resolved in its sole discretion. The parties agree to notify the Escrow Agent of any errors, delays or other problems within five (5) calendar days after receiving notification that a transaction has been executed.

**Section 2.5 – Compliance Documentation**

The Settlement Administrator shall furnish the Escrow Agent with an Internal Revenue Service Form W-8 or Form W-9, properly completed and signed, and such other forms and documents that the Escrow Agent may reasonably request.

## ARTICLE 3

## FINANCIAL MANAGEMENT/INVESTMENT/REPORTS

**Section 3.1 – Investment of Funds**

The Funds shall be invested in an interest-bearing Fifth Third BankSafe Deposit Account (an account fully insured by the FDIC up to the applicable limits) or in other accounts fully insured by the Federal Deposit Insurance Corporation up to the applicable limits or invested in short term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA respectively, by Moody's Investor Services and Standard & Poor's, in each case, as the Escrow Agent may make available to the Settling Parties from time to time. The Escrow Agent is hereby authorized and directed to sell or redeem any such investments as it deems necessary to make any payments or distributions required under this Escrow Agreement. The Escrow Agent shall have no responsibility or liability for any loss which may result from any investment or sale of investment made pursuant to this Escrow Agreement, including without limitation, in excess of any applicable FDIC Coverage. The Escrow Agent is hereby authorized, in making or disposing of any investment permitted by this Escrow Agreement, to deal with itself (in its individual capacity) or with any one or more of its affiliates, whether it or any such affiliate is acting as agent of the Escrow Agent or for any third person or dealing as principal for its own account. The Settling Parties acknowledge that the Escrow Agent is not providing investment supervision, recommendations, or advice. Any loss or expense incurred as a result of an investment will be borne by the Funds.

**Section 3.2 – Statements**

The Escrow Agent shall send statements to each of the Settling Parties on a monthly basis reflecting activity in each of the Settlement Accounts for the preceding month. In addition, the Escrow Agent shall send statements to:

> Settlement Administrator
> Smith Cochran Hicks PLLC
> 3510 MacCorkle Ave, SE
> Charleston, WV 25304
> Attn: John S Jenkins, CPA

Although Settling Parties each recognize that they may obtain a broker confirmation or written statement containing comparable information at no additional cost, Settling Parties hereby agree that confirmations of investments or transactions are not required to be issued by the Escrow Agent for each month in which a monthly statement is rendered. No statement need be rendered for the Settlement Accounts if no activity occurred for such month.

# ARTICLE 4

# DISBURSEMENTS

## Section 4.1 – Notice of Funding Dates

The Settlement Administrator shall provide to the Escrow Agent a copy of the Final Approval Order and shall further provide written notice of the Effective Date and (if applicable) the Early Funding Date. The Settlement Administrator shall also provide such other documentation or information as the Escrow Agent may reasonably require to give effect to such orders, actions, or any disbursement or transfer required thereby.

## Section 4.2 – Disbursement of Funds/Escrow Directives

The Escrow Agent shall disburse assets of the Funds only to the Disbursement Accounts and *only* as specified in (i) an escrow directive in the form of Exhibit C attached hereto, executed by an Authorized Representative of the Settlement Administrator (each an "***Escrow Directive***") or (ii) a Court order. The Settlement Administrator is the only entity that is authorized to issue an Escrow Directive.

Promptly following the Escrow Agent's receipt of an Escrow Directive, the Escrow Agent shall transfer funds from the applicable Settlement Account to the associated Disbursement Account. A Disbursement Account will be funded only as specified in an Escrow Directive. The Escrow Agent may rely conclusively on any such Escrow Directive or Order delivered in accordance with this Escrow Agreement. The Escrow Agent may, but shall not be obligated to, seek clarification with respect to any Escrow Directive or Order from the Settlement Administrator. All disbursements to a Disbursement Account must be made within two (2) Business Days after the Escrow Agent's receipt of the Escrow Directive or Order, as applicable or (if applicable), within two (2) Business Days after the Escrow Agent receives a response to a request for clarification of an Escrow Directive or Order.

Provided that the deposits specified at Section 1.1 have been made, following its receipt of an Escrow Directive, the Escrow Agent shall disburse funds to Disbursement Accounts on the Effective Date for the payment of Attorneys' Fees as provided in the "Order Granting Final Approval of the Good Class Settlement and Entering Judgment", Case: 2:14-cv-01374 Document 1212 filed June 8, 2018 and appended hereto as Exhibit E. The Settlement Administrator shall provide to the Escrow Agent on July 10, 2018 an Escrow Directive specifying the Settlement Accounts from which funds shall be transferred to the related Disbursement Accounts to enable such payment.

The Escrow Agent shall not inquire into whether or not an Escrow Directive or Order complies with the requirements of the Settlement Agreement or this Escrow Agreement. The Escrow Agent shall not be liable for any action taken or not taken by it in accordance with an Escrow Directive or Order.

# ARTICLE 5

## DUTIES OF THE ESCROW AGENT

### Section 5.1 – Scope of Responsibility

Notwithstanding any provision to the contrary, the Escrow Agent is only obligated to perform the duties specifically set forth in this Escrow Agreement, which shall be deemed purely ministerial in nature. Under no circumstances will the Escrow Agent be deemed to be a fiduciary to any Settling Parties, the Settlement Administrator or any other person. The Escrow Agent will not be responsible or liable for the failure of any Settling Party or the Settlement Administrator to perform in accordance with this Escrow Agreement. The Escrow Agent shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document other than this Escrow Agreement. This Escrow Agreement sets forth all the obligations and duties of the Escrow Agent and no additional obligations of the Escrow Agent shall be inferred or implied from the terms of this Escrow Agreement or any other agreement, including without limitation, the Settlement Agreement. The permissive rights of the Escrow Agent to do things enumerated in this Escrow Agreement shall not be construed as duties. No provision of this Escrow Agreement shall require the Escrow Agent to risk or advance its own funds or otherwise incur any financial liability or potential financial liability in the performance of its duties or the exercise of its rights under this Escrow Agreement.

### Section 5.2 – Attorneys and Agents

The Escrow Agent shall be entitled to rely on and shall not be liable for any action taken or omitted to be taken in accordance with the advice of counsel or other professionals retained or consulted by the Escrow Agent in connection with any matter hereunder. As provided at Section 6.4, the Escrow Agent shall be reimbursed as set forth herein for any and all compensation (fees, expenses and other costs) paid and reimbursed to such counsel and professionals. The Escrow Agent may perform any and all of its duties through its agents, representatives, custodians, and nominees.

### Section 5.3 – Reliance

The Escrow Agent shall not be liable for any action taken or not taken by it in accordance with the consent of each Settling Party or the Settlement Administrator, or their respective agents, representatives, successors, or assigns, or in accordance with an order of the Court. The Escrow Agent shall not be liable for acting or refraining from acting upon any notice, request, consent, direction, requisition, certificate, order, affidavit, letter, or other paper or document believed by it to be genuine and correct and to have been signed or sent by the proper person or persons, without further inquiry into the person's or persons' authority.

# ARTICLE 6

## PROVISIONS CONCERNING THE ESCROW AGENT

### Section 6.1 – Indemnification

The Escrow Agent shall be indemnified, defended and held harmless from and against any and all loss, liability, cost, damage and expense, including, without limitation, any tax, late payment fee, interest, or penalty on or with respect to the Settlement Accounts or Disbursement Accounts, the investment thereof, any reasonable and necessary Court-approved attorneys' fees and expenses, or any other reasonable and necessary Court-approved professional fees and expenses, which the Escrow Agent may suffer or incur by reason of any action, claim or proceeding brought against the Escrow Agent, arising out of or relating in any way to this Escrow Agreement or any transaction to which this Escrow Agreement relates, unless such loss, liability, cost, damage or expense shall have been finally adjudicated to have been directly caused by the willful misconduct or gross negligence of the Escrow Agent. Any and all indemnification under this Section 6.1 shall be made solely from the Funds, Settlement Accounts and Disbursement Accounts, and the Settling Parties shall not have any liability or obligation with respect to such indemnification. The Escrow Agent shall not be indemnified for any damages directly resulting from or caused by the willful misconduct or gross negligence of the Escrow Agent. The amount of any indemnification must be first approved by the Court after giving adequate advance notice to the Settling Parties of the nature and amount of such indemnification sought. The provisions of this Section 6.1 shall survive the resignation or removal of the Escrow Agent and the termination of this Escrow Agreement.

### Section 6.2 – Exculpation; Limitation of Liability

The Escrow Agent shall not be liable, directly or indirectly, for any (i) damages, losses or expenses arising out of the services provided hereunder, other than damages, losses or expenses which have been finally adjudicated to have directly resulted from the Escrow Agent's gross negligence or willful misconduct, or (ii) special, indirect, punitive or consequential damages or losses of any kind whatsoever (including without limitation lost profits), even if the Escrow Agent has been advised of the possibility of such losses or damages and regardless of the form of action. The Escrow Agent shall not incur any liability for delay in performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control (including, but not limited to, any provision of any present or future law or regulation or any act of any governmental authority, any act of God or war or terrorism, or the unavailability of the Federal Reserve Bank wire services or any electronic communication facility).

### Section 6.3 – Resignation or Removal

The Escrow Agent may resign by furnishing written notice of its resignation to the Settling Parties and the Court. The Court or the Settling Parties may remove the Escrow Agent by furnishing to the Escrow Agent a written notice of its removal. If the Escrow Agent is removed, the Escrow Agent shall be entitled to receive payment of all allowable but unpaid fees and expenses incurred up to the effective date of removal. Such resignation or removal, as the case may be, shall be effective upon the delivery of such notice or upon the earlier appointment of a successor. Upon

resignation or removal, the Escrow Agent's sole responsibility shall be to safely keep the Funds until the appointment of a successor escrow agent.  The Escrow Agent shall deliver the assets of the Funds to a successor escrow agent upon receipt of an Escrow Directive or an order of the Court that directs such delivery and the manner of delivery.  Notwithstanding the foregoing, to the extent the Bank continues to maintain the Disbursement Accounts, the fees and expenses set forth on Exhibit A in respect of the Disbursement Accounts shall continue to be payable when due thereunder.

## Section 6.4 – Compensation

The Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached hereto as Exhibit D.  In addition, the Escrow Agent shall be reimbursed upon request for all reasonable expenses, disbursements and advances.  This fee schedule is intended to provide the full compensation for the services of the Escrow Agent under this Escrow Agreement. All compensation, expenses, disbursements, and reimbursements to the Escrow Agent shall be Administrative Expenses and shall be paid solely from one or more of the Settlement Accounts through the associated Disbursement Account(s) and allocated among the Settlement Accounts and Disbursement Accounts pursuant to an Escrow Directive, as provided in the Settlement Agreement.

In the event that the Escrow Agent is asked to render a service not contemplated in this Escrow Agreement then the Parties shall establish a schedule for extraordinary fees to compensate the Escrow Agent for such services.  In the event that the Escrow Agent is made a party to any litigation pertaining to this Escrow Agreement or the subject matter hereof, then the Escrow Agent may be reimbursed for all costs and expenses, including reasonable attorneys' fees and expenses only as provided at Section 6.1.

## ARTICLE 7

## TAX MATTERS

## Section 7.1 – Tax Treatment/Tax Returns/Tax Payments of Qualified Settlement Funds

It is the intent of the Settling Parties that the American Water Guaranteed Settlement Fund, the American Water Contingent Settlement Fund, and the Eastman Fund each shall be treated at all times as "Qualified Settlement Funds" within the meaning of IRC § 468B and the regulations promulgated by the United States Treasury Department ("*Treasury Regulations*") § 1.468B-1 through 1.468B-5 and any applicable state laws regarding qualified settlement funds.  Further, the Escrow Agent may petition the Court to amend, either in whole or in part, any administrative Article of this Agreement that causes unanticipated tax consequences or liabilities inconsistent with the foregoing.   For purposes of § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of each of the Qualified Settlement Funds shall be the Settlement Administrator. West Virginia-American Water Company or Eastman, as applicable, shall be classified as a "transferor" within the meaning of Treasury Regulation § 1.468B-1(d)(1) for each of the Qualified Settlement Funds.

The Escrow Agent shall obtain an EIN for each of the American Water Guaranteed Settlement Fund, the American Water Contingent Settlement Fund, and the Eastman Fund. The American Water Defendants and Eastman, as applicable, shall make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treasury Regulation § 1.468B-1(j)(2) if necessary to the earliest permitted date. The Escrow Agent shall timely and properly prepare, deliver and file all necessary documentation for any such election. The Escrow Agent shall cooperate with the Settlement Administrator to enable the Settlement Administrator to timely and properly prepare and file any informational and other tax returns necessary or advisable with respect to the Qualified Settlement Funds and the distributions and payments therefrom including without limitation the returns described in Treasury Regulation § 1.468B-2(k) and, to the extent applicable, Treasury Regulation § 1.468B-2(1). Settlement Class Counsel and the Defendants shall, promptly upon the request of the Escrow Agent, furnish to the Escrow Agent any forms, documentation or information as the Escrow Agent may request from time to time, in order to comply with the Treasury Regulations and applicable law.

## Section 7.2 – Tax Payments of Settlement Funds

All taxes with respect to the Settlement Funds shall be treated as and considered to be Administrative Expenses. The Escrow Agent will disburse funds to the applicable Disbursement Accounts for payment of taxes as directed in an Escrow Directive. The Escrow Agent shall cooperate with the Settlement Administrator so that the Settlement Administrator may timely prepare and file all income tax and other tax returns and statements required of the Funds under the applicable provisions of the Internal Revenue Code, as amended, and any other applicable local, state, and/or foreign law.

Notwithstanding the foregoing, the parties agree that for tax reporting purposes, the Earnings shall be reported as having earned by such applicable Fund. The Escrow Agent will report the amount of any and all Earnings on IRS Form 1099-INT to the applicable Fund, and will issue any other Form 1099s to such Fund accordingly. The Escrow Agent shall have no duty to prepare or file any information reports (including without limitation IRS Forms 1099-B) other than such information reports of interest earned on the Escrow Fund as the Escrow Agent is required to prepare and file in the ordinary course of its business.

## Section 7.3 – Savings Provisions for Qualified Settlement Funds

Notwithstanding anything herein to the contrary, in the event that any portion of this Agreement relating to any of the Funds shall at any time not be in compliance with Internal Revenue Code Section 468B, as amended, together with any and all Treasury Regulations and IRS Notices, Announcements and directives thereunder, such offending Article or Section of this Agreement shall be considered null and void, solely to the extent necessary to comply therewith, without any action by any court or the Escrow Agent. The intent of this Agreement is to establish the American Water Guaranteed Settlement Fund, the American Water Contingent Settlement Fund, and the Eastman Fund as Qualified Settlement Funds that are at all times in compliance with Internal Revenue Code 468B and all administrative authority and announcements thereunder. In the event that this Section applies to render all or any portion of such offending Article or Section null, void of of no effect, the remainder of this Agreement shall not be affected thereby, and each

remaining term and Section of the Agreement shall be valid and enforced to the fullest extent permitted by law.

### Section 7.4 – Tax Indemnification

The Funds shall indemnify and hold the Defendants harmless for any taxes that may be deemed to be payable by the Defendant(s) by reason of the income earned on the Funds.

## ARTICLE 8

## TERMINATION

### Section 8.1 – Disbursement of Assets

The Settlement Claims Program shall terminate as provided in Section 6.6 of the Settlement Agreement.  The Escrow Agent shall disburse any assets remaining in the Settlement Accounts as directed in the termination Order required by Section 6.6 of the Settlement Agreement. Notwithstanding anything in the Settlement Agreement, the Disbursement Accounts shall not be closed until the Settlement Administrator shall have paid all federal, state and local taxes owed by or on behalf of each Settlement Account and received confirmation that such payments have been properly computed.

### Section 8.2 – Post-Asset Disbursement

Once all assets are disbursed from the Settlement Accounts as provided in the termination Order (including any and all required tax payments), this Escrow Agreement shall terminate and the Escrow Agent shall be discharged, without any further action or notice.

## ARTICLE 9

## MISCELLANEOUS

### Section 9.1 – Successors and Assigns

This Escrow Agreement shall be binding on and inure to the benefit of the Settling Parties and the Escrow Agent and their respective successors and permitted assigns.  No other persons shall have any rights under this Escrow Agreement.  Any corporation or association into which the Escrow Agent may be converted or merged, or with which it may be consolidated, or to which it may sell or transfer all or substantially all of its corporate trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation or transfer to which the Escrow Agent is a party, shall be and become the successor escrow agent under this Escrow Agreement and shall have and succeed to the rights, powers, duties, immunities and privileges as its predecessor, without the execution or filing of any instrument or paper or the performance of any further act.

At any time that this Escrow Agreement remains in effect, the Settling Parties may jointly designate a replacement or successor Settlement Administrator by written notice to the Escrow Agent, in form and substance to its satisfaction, provided that, such replacement or successor

Settlement Administrator shall execute and deliver an Incumbency Certificate in the applicable form of <u>Exhibit B</u> hereto.

Except as provided hereby, the parties shall not assign or delegate any of their respective rights or duties under this Escrow Agreement without the prior written consent of the Settling Parties and the Escrow Agent, and approval of the Court.

### Section 9.2 – Notices

All notices and other communications required under this Escrow Agreement including Escrow Directives shall be in writing and shall be given by certified mail, return receipt requested, or  by FedEx overnight with a copy via email at the addresses for the recipient parties as set forth below except that Escrow Directives that direct the Escrow Agent to disburse funds for payment of Administrative Expenses, Attorneys' Fees and Litigation Expenses and eligible claim payments shall be communicated by email or another agreed electronic means. Any such notice or other communication that is communicated by mail shall be deemed given five (5) Business Days after the date such notice is deposited in the United States mail. It shall be the responsibility of the parties to notify each other in writing of any name or address changes. In the case of notices and communication delivered to the Escrow Agent, such notices or communications shall be deemed to have been given on the date actually received by the Escrow Agent.

|  |  |
|---|---|
| **If to Settlement Class Counsel:** | Van Bunch, Esq. |
|  | Bonnett Fairbourn Friedman & Balint PC |
|  | 2325 E. Camelback Road, Suite 300 |
|  | Phoenix, AZ  85016 |
|  | Telephone:  (602) 274-1100 |
|  | Facsimile:  (602) 274-1199 |
|  | E-mail:  vbunch@bffb.com |

Anthony J. Majestro, Esq.
Powell & Majestro, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV  25301
Telephone:  (304) 346-2889
Fax: (304) 346-2895
E-mail:  amajestro@powellmajestro.com

**If to Eastman:**

Chief Litigation Officer
Eastman Chemical Company
P.O. Box 511
Kingsport, TN  37662
(For non-P.O. Box, use 200 South Wilcox,
Building 280, 37660)
Telephone:  (423) [229-3198]
Fax:  (423) [229-1239]

_And copy to_:
Deborah E. Greenspan
Blank Rome LLP
1825 Eye Street, N.W.
Washington, DC  20006
Telephone:  (202) 420-3100
E-mail:  dgreenspan@blankrome.com

**If to American Water:**

Deputy General Counsel
American Water Works Company, Inc.
1025 Laurel Oak Road
Voorhees, NJ  08043

_And_

General Counsel
West Virginia-American Water Company
1600 Pennsylvania Avenue
Charleston, WV  25301

_And copy to_:
Kent Mayo
Baker Botts L.L.P.
1299 Pennsylvania Ave., N.W.
Washington DC  20004
E-mail:  kent.mayo@bakerbotts.com

| If to Settlement Administrator: | Smith Cochran & Hicks PLLC |
| | 3510 MacCorkle Ave. SE |
| | Charleston, WV  25304 |
| | Attn:  John S. Jenkins, CPA |
| | Telephone:  (304) 345-1151 |
| | Fax:  (304) 346-6731 |
| | E-mail:  jjenkins@scjcpa.com |
| If to Escrow Agent: | Fifth Third Bank |
| | 8100 Burlington Pike |
| | Florence, KY  41042 |
| | Attn:  Derrick Theetge |
| | Telephone:  (859) 283-8634 |
| | E-mail:  Derrick.Theetge@53.com |

**Section 9.3 – Governing Law**

This Escrow Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to principles of conflicts of laws.

**Section 9.4 – Submission to Jurisdiction**

Each of the Settlement Accounts shall be subject to the continuing jurisdiction of the Court until all assets in a Settlement Account shall have been fully disbursed in accordance with this Escrow Agreement.  The Settling Parties, the Settlement Administrator, and the Escrow Agent hereby irrevocably submit to the exclusive jurisdiction of the Court over any action or proceeding arising out of or relating to this Escrow Agreement and any and all transactions related to or arising out of this Escrow Agreement.  Any conflict, dispute or disagreement regarding the meaning of any provision of this Escrow Agreement and/or the obligations of the Escrow Agent shall be resolved by the Court.

**Section 9.5 – WAIVER OF JURY TRIAL**

EACH PARTY HEREBY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS ESCROW AGREEMENT OR THE SUBJECT MATTER HEREOF.  THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS (INCLUDING NEGLIGENCE), BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.

**Section 9.6 – Entire Agreement**

This Escrow Agreement constitutes the entire understanding among the Settling Parties, the Settlement Administrator and the Escrow Agent related to the Funds, Settlement Accounts, the Disbursement Account and the duties and responsibilities set forth herein.

**Section 9.7 – Severability**

If any provision of this Escrow Agreement shall be determined to be illegal or unenforceable, the remaining provisions of this Escrow Agreement shall remain in full force and effect, and this Escrow Agreement shall be construed as if the illegal or unenforceable provision were not a part hereof, so long as the remaining provisions of this Escrow Agreement shall be sufficient to carry out the overall intent of the parties hereto as expressed herein.

**Section 9.8 – Amendment**

This Escrow Agreement may be amended, modified, superseded, rescinded, or canceled only by a written instrument executed by the Settling Parties, the Settlement Administrator and the Escrow Agent.

**Section 9.9 – Waivers**

The failure of the Escrow Agent or any of the Settling Parties to require performance of any provision under this Escrow Agreement shall in no manner affect the right at a later time to enforce the same provision.  A waiver by any of the parties of any such condition or breach of any term, covenant, representation, or warranty contained in this Escrow Agreement, in any one or more instances, shall neither be construed as a further or continuing waiver of any such condition or breach nor a waiver of any other condition or breach of any other term, covenant, representation, or warranty contained in this Escrow Agreement.

**Section 9.10 – Business Days**

For purposes of this Escrow Agreement, "Business Days" shall refer to any day other than Saturday, Sunday or any other day in which banks in the state of Ohio are authorized to be closed.

**Section 9.11 – Headings**

The headings of the Articles and Sections of this Escrow Agreement are for guidance and convenience of reference only and shall not limit or otherwise affect any of the terms or provisions of this Escrow Agreement.

**Section 9.12 – Exhibits**

All Exhibits attached to this Escrow Agreement are hereby incorporated into and made a part of this Escrow Agreement

**Section 9.13 – Further Assurances**

Each of the Settling Parties, Settlement Administrator and the Escrow Agent shall perform all other acts and execute and deliver all other documents as may be necessary or appropriate to carry out the purposes and intent of this Escrow Agreement. The Settling Parties acknowledge that prior to the establishment of the accounts provided hereunder, and from time to time throughout the term of the Escrow Agreement, the Escrow Agent is authorized to establish and effectuate identity verification procedures to obtain information which may be used to confirm the Settlement Administrator's identity and the identity of authorized representatives of the Settlement Administrator including without limitation name, address and organizational documents or driver's license ("***Identifying Information***") only to the extent required by applicable law or the policies and procedures of the Escrow Agent.   The Escrow Agent acknowledges that the Settling Parties are not account holders and will not open accounts under this Escrow Agreement.

**Section 9.14 – Counterparts**

This Escrow Agreement may be executed and delivered in one or more counterparts, each of which when executed and delivered shall be an original, and all of which when executed shall constitute one and the same instrument.

**Section 9.15 – IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT**

*To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions (which includes the Escrow Agent) to obtain, verify and record information that identifies each person who opens an account.  What this means for you: For a non-individual person such as a business entity, a charity, a trust or other legal entity the Escrow Agent will ask for documentation to verify its formation and existence as a legal entity.  The Escrow Agent may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.  For an individual person, the Escrow Agent may ask for your name, address, date of birth and other information that will allow the Escrow Agent to identify you.  The Escrow Agent may also ask to see the individual's driver's license or other identifying documents.*

*[Remainder of Page Intentionally Blank; Signature Page Follows]*

IN WITNESS WHEREOF, the Parties have caused this Escrow Agreement to be executed by duly authorized representatives effective as of the date first written above.

**SETTLEMENT CLASS COUNSEL:**    **AMERICAN WATER DEFENDANTS:**

By:_____      For American Water Works Company, Inc. and
Name:     American Water Works Service Company, Inc.
Title:

     By:_____
     Name:
By: _____      Title:
Name:
Title:

     For West Virginia-American Water Company

By:_____      By:_____
Name:     Name:
Title:     Title:

**EASTMAN:**    **SETTLEMENT ADMINISTRATOR:**
     Smith Cochran & Hicks PLLC

By:_____
Name:     By:_____
Title:     Name:  John S. Jenkins, CPA
     Title:  Member

     **ESCROW AGENT:**

     FIFTH THIRD BANK, as Escrow Agent

     By: _____
     Name:  Derrick Theetge
     Title:  Vice President

18

# **EXHIBIT A**

## DISBURSEMENT ACCOUNT MATERIALS



## West Virginia Water Settlement - Pricing Proposal

**Treasury Management Officer:** Steve Pentony                              June 27, 2018

**Collected Balance:** $40,000,000

| ACCOUNT SERVICES | | PROPOSED PRICE |
|---|---|---|
| **STANDARD SERVICES** | | |
| MONTHLY MAINTENANCE | $ | 10.0000 |
| DISB CHECKS PAID | $ | 0.1200 |
| ELECTRONIC DEBITS TRANSACTIONS | $ | 0.4100 |
| COMMERCIAL DEPOSITS | $ | 0.8450 |
| DISB CHECK PAID MICR REJECT & REPAIR | $ | 0.4100 |
| UNENCODED ITEMS DEPOSITED | $ | 0.1700 |
| DEPOSIT ADJUSTMENT | $ | 10.7500 |
| PAPER ITEM ADMIN FEE | $ | 0.0109 |
| WIRE INCOMING NON-STRUCTURED | $ | 21.0000 |
| WIRE INCOMING STRUCTURED | $ | 13.0000 |
| ACH CREDIT RECEIVED | $ | 0.0400 |
| ACH DEBIT RECEIVED | $ | 0.0400 |
| ACH ADDENDA RECEIVED | $ | 0.0945 |
| *DEPOSIT ADMINISTRATION FEE | $ | 0.0750 |
| NEGATIVE COLLECTED FEE | | 18.0000% |
| **Subtotal - STANDARD** | | |
| | | |
| **EDI INTEGRATED PAYABLES** | | |
| EDI ORIG MONTHLY MAINTENANCE | $ | 203.2500 |
| EDI ORIG FILE PROCESS-53 | $ | 0.1300 |
| EDI ORIG CHECK PRINT | $ | 0.3600 |
| EDI ORIG CHK PRINT- SAME DAY | $ | 0.4600 |
| EDI ORIG CHK PRINT- BUNDLE | $ | 2.0000 |
| **Subtotal - EDI INTEGRATED PAYABLES** | | |
| | | |
| **INTEGRATED DISBURSEMENTS** | | |
| INT PAYABLES WIRE OUTBOUND REP | $ | 20.5000 |
| INT PAYABLES WIRE OUTBOUND NREP | $ | 28.7500 |
| INT PAYABLES WIRE OUTBOUND USD INTL | $ | 46.7500 |
| **Subtotal - INTEGRATED DISB** | | |
| | | |
| **CHECK MAILING POSTAGE** | | |
| USPS PASS THROUGH POSTAGE | $ | 0.4030 |
| **Subtotal - POSTAGE** | | |
| | | |
| **FIFTH THIRD DIRECT - ACH ORIGINATED** | | |
| ONLINE ACH MONTHLY FEE | $ | 18.1250 |
| ONLINE ACH MODULE | $ | 30.0000 |
| ACH CREDIT ORIGINATED | $ | 0.1125 |
| ACH DEBIT ORIGINATED | $ | 0.1125 |
| ACH ADDENDA ORIGINATED | $ | 0.0460 |
| ACH FILE PROCESSED | $ | - |
| ACH RETURN/NOC RPT VIA WEB | $ | 10.0000 |
| ACH UNWORKED NOC | $ | 28.2500 |
| ACH RETURNED TRANSACTION | $ | 2.5000 |
| ACH NOTIFICATION OF CHANGE | $ | 2.5000 |
| **Subtotal - ACH ORIGINATED - ONLINE** | | |



## West Virginia Water Settlement - Pricing Proposal

| ACCOUNT SERVICES | PROPOSED PRICE |
|---|---|
| **ARP / POSITIVE PAY** | |
| ARP MONTHLY BASE CHARGE | $ 40.0000 |
| ARP OUTSTANDING BALANCE REPORTING | $ 62.5000 |
| ARP CHECKS PAID | $ 0.0600 |
| ARP CHECKS ISSUED | $ 0.0800 |
| ARP DEPOSIT RECONCILIATION PER ITEM | $ 0.1300 |
| ARP PAID ITEM TRANSMISSION | $ 0.0169 |
| ARP PAID NO ISSUE | $ 3.0000 |
| ARP DATA ENTRY | $ 0.5100 |
| ARP ONLINE ISSUE MGMT PER ITEM | $ 0.3450 |
| ARP ONLINE ISSUE MGMT BASE CHARGE | $ 20.0000 |
| POSITIVE PAY MONTHLY BASE CHARGE | $ 40.0000 |
| BANK MAINTAIN POS PAY EXCPTN | $ 0.0400 |
| POSITIVE PAY RETURN CANCEL ON FILE | $ 18.0000 |
| POSITIVE PAY PAYEE LINE PER ITEM | $ 0.0225 |
| ARP RETURN ITEM | $ 16.7500 |
| **Subtotal - ARP / POSITIVE PAY** | |
| | |
| **FIFTH THIRD DIRECT - ONLINE PORTAL** | |
| ONLINE PRIOR DAY BASE | $ 30.3000 |
| ONLINE PRIOR DAY ACCOUNT | $ 11.0000 |
| ONLINE PRIOR DAY DETAIL | $ 0.0500 |
| ONLINE STOP PAYMENT FEE | $ 14.5000 |
| ONLINE INTRADAY BASE | $ 31.5000 |
| ONLINE INTRADAY PER ACCOUNT | $ 12.5000 |
| ONLINE INTRA DAY DETAIL | $ 0.0500 |
| ONLINE WIRE MODULE | $ 10.0000 |
| ONLINE WIRE OUTBOUND DOMESTIC | $ 8.4000 |
| **Subtotal - ONLINE PORTAL** | |
| | |
| **ACH ORIGINATED - DIRECT SEND** | |
| ACH DIRECT SEND MONTHLY MAINTENANCE | $ 40.2500 |
| ACH DIRECT SEND ORIGINATED CR | $ 0.2250 |
| ACH DIRECT SEND ORIGINATED DR | $ 0.2250 |
| ACH DIRECT SEND ORIG ADDENDA | $ 0.0327 |
| ACH DIRECT SEND FILE PROCESS | $ 0.3450 |
| ACH DIRECT SEND TEST FEE | $ 300.0000 |
| ACH CONTROL TOTAL WEB OPT | $ 5.7000 |
| ACH CONTROL TOTAL FILE OPT | $ 23.5000 |
| ACH RETURN/NOC RPT VIA WEB | $ 10.0000 |
| ACH ACKNOWLEDGEMENT FILE | $ 8.8000 |
| ACH UNWORKED NOC | $ 28.2500 |
| ACH RETURNED TRANSACTION | $ 2.5000 |
| ACH NOTIFICATION OF CHANGE | $ 2.5000 |
| **Subtotal - ACH ORIG - DIRECT SEND** | |

\* Deposit Administration fee per $1,000 in Average Ledger balances

*The above list pricing is per unit costs for the possible services needed to facilitate the processing of disbursement items. Service Fees are dependent on the average collected balance in the account and activity volumes from month to month. Possible services, collected balances and activity volume may have an impact on the zero cost solution. Service fees will be accrued during the duration of the account and will be settled at time of requested termination of the account.*



## Treasury Management Proposal

*Good v. American Water Qualified Settlement Fund*

**Fifth Third Bank**
**Dan Gilkey & Steve Pentony**



© Fifth Third Bank  |  All Rights Reserved  |  Member FDIC

# Contents

- Your Fifth Third Team

- RFP Response

- Treasury Management Solutions

- Financial Strength

FIFTH THIRD BANK

# Your Dedicated Relationship Team

| CONTACT | DESCRIPTION OF ROLE |
|---------|---------------------|
| **Bob Welty**<br>**Market President – WV**<br>304.353.4106<br>Bob.Welty@53.com | ▪ Serves as the Senior Banker in the West Virginia Region of Fifth Third Bank<br>▪ Oversees and manages the commercial and wealth management activities for this region of the Bank |
| **Dan Gilkey, Vice President**<br>**Relationship Manager**<br>614.744.7798<br>Daniel.Gilkey@53.com | ▪ Primary contact for general Fifth Third business<br>▪ Intimate with your corporate objectives, your accounts and your business requirements<br>▪ Consults with you about new and existing services, to ensure your continued satisfaction and bring together the right Fifth Third specialists to meet your financial needs |
| **Steve Pentony, Vice President**<br>**Treasury Management Officer**<br>614.744.5035<br>Steve.Pentony@53.com | ▪ Consults with you concerning your business needs in order to develop a customized account and payments solution<br>▪ Coordinates the work of the sales and service team<br>▪ Informs you of industry trends and new services<br>▪ Makes recommendations to optimize your treasury management processes |
| **Donna McDonald**<br>**Client Advisor**<br>304.353.4131 (phone)<br>304.353.4118 (fax)<br>Donna.McDonald@53.com | ▪ Serves as your primary contact for routine inquiries relative to how services are functioning, determining the nature of any problems<br>▪ Identifies the appropriate follow up action and instituting that action to ensure a swift, accurate and complete resolution<br>▪ Acts in direct contact with the Relationship Managers, Treasury Management Officers, and Treasury Management Sales Associates to ensure that the entire team is always aware of needs and questions |
| **Premier Commercial Support Center**<br>800.488.6773<br>CSCPremier.Bancorp@53.com<br>Hours: M-F 7:00 am–10:00 p.m. (ET) | ▪ Fifth Third has a state-of-the-art support center to service our commercial clients. The Commercial Support Center is staffed with trained, knowledgeable service professionals. |

FIFTH THIRD BANK

# RFP Response

## 1. Please outline your institution's experience in managing QSFs.

- Fifth Third Bank has an extensive history in partnering with claimants and claims administrators on the managing and distribution of settlement funds. We have partnered with these groups on settlement funds ranging from $1 million dollars to $700 million dollars.
    - Class action settlement accounts/custodian.
        - Freddie Mac Settlement – 2008
        - Merrill Lynch Settlement - 2010
        - National Mortgage Settlement – 2012-13
        - Ebooks/Apple Settlement - 2014-16

- We have established a process in which the funds from the settlement account are managed and disbursed. The process includes:
    - The initial drafting of the Escrow agreement
    - The establishment of an interest bearing Escrow account in which the funds will be deposited.
    - The establishment of a disbursement account from which the claimants checks will be cleared. This account is funded at the time the claims administrator executes their first payment file. At that time the funds are transferred from the Escrow account to the disbursement account.
    - Fifth Third Bank will provide a zero cost solution on the disbursement account.

## 2. Please explain your institution's plan to comply with the following requirement: *"…from the date the funds are first deposited, [funds] shall be maintained as a 'Qualified Settlement Fund' within the meaning of and defined in Section 468B of the U.S. Internal Revenue Code and in the IRS regulations promulgated thereunder, and shall be deposited in an interest-bearing account or accounts fully insured by the Federal Deposit Insurance Corporation consistent with an escrow agreement directing its operation."*

- The fund will be maintained in accordance with IRC §468B and the associated Treasury Regulations. All amounts received will be segregated and maintained in a separate interest-bearing account pursuant to the court's approval of the establishment of the fund in accordance with the final settlement agreement. No transfers will be accepted other than those specified in the escrow agreement. We will obtain an EIN for the fund and file Forms 1120-SF and any other tax filings as necessary. Tax liabilities will be estimated and any necessary quarterly payments will be made.

# RFP Response Continued

## 3. Please your outline institution's plan to distribute funds from the QSF, including all fees and costs your institution will charge for the management of the QSF under each scenario:

- **A.) a scenario in which your institution would cut and send out checks**

  - Fifth Third Bank partners with a third party vendor that will facilitate the creation and the mailing of the checks for the Claims Administrator. This option would be facilitated through our Integrated Payables solution. We have included additional information regarding this solution in the proposal document. This solution would not be included in the zero fee solution proposed earlier as there are additional costs involved in this setup. To provide an accurate cost proposal for this scenario additional details are required.

- **B.) a scenario in which the Claims Administrator cuts and sends out checks**

  - Fifth Third Bank will provide a zero cost solution for the disbursement account which will include the following services:

    - Online Portal access via Fifth Third Direct, with Fifth Third Direct you can manage all of your accounts, organize cash, payables, receivables and produce reports- all from a single location.
    - Account reconciliation services
    - Positive Pay (fraud prevention) services- decide on positive pay exception items, view information and originate stop payments.

  - Fifth Third Bank will provide monthly earnings credits from the balances in the account that will build continuously to offset 100% of the transaction fees for the life of the account.  Earnings credits will roll each month to offset future fees. The current Earnings Credit rate is .40%.  At the time all disbursement activity has been completed and fees have been offset, the Bank will provide the ability to convert the account to an interest bearing structure for the remaining funds.
  - Recipients of the class action settlement that do not have a current banking relationship elsewhere can cash their checks at the following locations.

| **Fifth Third Bank**<br>101 River Road<br>Barboursville, WV 25504 | **Fifth Third Bank**<br>3049 Mount Vernon Rd<br>Hurricane, WV 25526 | **Fifth Third Bank**<br>700 Virginia Street East<br>Charleston, WV 25301 | **Fifth Third Bank**<br>102 Lakeview Drive<br>Cross Lanes, WV 25313 | **Fifth Third Bank**<br>1566 Hal Greer Blvd<br>Huntington, WV 25701 | **Fifth Third Bank**<br>4515 Maccorkle Ave SE<br>Charleston, WV 25304 | **Fifth Third Bank**<br>1008 Oak Street<br>Kenova, WV 25530 |
|---|---|---|---|---|---|---|

  - Proper identification will be required when cashing their check.

- **C.) a scenario in which class members may elect EFT (such as PayPal or Venmo)**

  - Fifth Third Bank will provide the Claims Administrator the ability to initiate disbursements to class members by ACH.

FIFTH THIRD BANK

4

# Fifth Third Direct<sup>SM</sup>

## Access And Manage Your Financial Information With A Robust Suite Of Online Tools

### Treasury Management Solutions

- Account Management and Reporting
- Payment Initiation
- Electronic Deposit Manager
- Commercial Card Management
- Deposit Management
- Returns Management
- ACH Transaction Management
- Positive Pay Decisioning
- Wholesale Lockbox Imaging
- Retail Lockbox Exception Management

### Merchant Services

- Investment Management
- Global Trade Services
- Direct Send Transmission
- Deposit Statements and Images



FIFTH THIRD BANK

## Information Management Solutions

# Gain Access To Crucial Cash Flow Information Through Fifth Third Bank's Internet Portal, Fifth Third Direct<sup>SM</sup>

Offering you a comprehensive array of sophisticated, user-friendly Internet products and services, available through a single point of entry including:

- Domestic and International Wire and ACH payment Initiation

- Lockbox imaging and exception management

- Positive Pay decisioning

- Commercial Card maintenance

- File delivery

- Letter of credit initiation



6

# Fifth Third Direct Risk Management

## Employs several best practices to combat on-line fraud and cybercrime

- Protection through unique user credentials known as multi-factor authentication

  - RSA GoID Tokens are issued to protect clients with online payment entitlements

  - Identification questions provides an additional layer of Passive identity protection for all Fifth Third Direct users

- Utilization of dual control requiring two separate users to process wires: one to originate and a second, separate user, to approve

- Provision of Trusteer Rapport, a no-cost browser-based downloadable security software plug-in, offered directly through Fifth Third Direct, to compliment anti-virus and other security tools

# Information Management Solutions

## Gain access to crucial cash flow information through Fifth Third Direct[SM]

**Offering you a comprehensive array of sophisticated, user-friendly Internet products and services, available through a single point of entry including:**

- Wire and ACH transfers

- Lockbox imaging

- Positive Pay decisioning

- Commercial Card maintenance

- File delivery

- Letter of credit initiation

# Account Reconcilement

## Full and Partial Account Reconcilement services relieve you of time consuming tasks

### Partial Account Reconcilliation

- Provides you with a monthly listing of paid checks in numerical order

- Includes subtotals for special types of payments, disbursing locations, or other data you request

### Full Account Reconcilliation

- Send an electronic file of your issued checks

- Consolidates your file of issued checks with our records of paid items to provide a full reconciliation report

### Key Features & Benefits

**Features**
- Timely and accurate data
- Detailed reports via Fifth Third Direct or via direct transmission
- Unique reconcilement plans
  - Partial Reconcilement
  - Full Reconcilement

**Benefits**
- Free your staff to focus on more productive assignments
- Automate and streamline the process of reconciling
- Enhanced audit controls

FIFTH THIRD BANK

9

# Check and ACH Positive Pay Solution Benefits

## Minimizes check and ACH fraud losses with easy to use prevention tools

- Accounts protected by ensuring that only the checks or ACH transactions you issued are paid *(compares account number, dollar amount, check number and payee)*

- Checks verified at the branch teller line to eliminate check cashing risk

- Return window for check positive pay is 10 a.m. to 2 p.m.; 12 p.m. for ACH

- Bank Maintained displays only exception items to review to help identify fraudulent checks or ACH debits

- You can make decisions to return fraudulent items or pay acceptable items:
  - Check images are available for review
  - Reminder email notifications sent each hour until decisions are made

- Dual approval entitlements to protect decisions

- Continuous control by allowing you to audit your employees' decisions



FIFTH THIRD BANK

# Mobile Positive Pay

## The convenience of mobile decisioning and approvals for both Check and ACH Positive Pay






# ACH Positive Pay

## Protect your account and  minimize loss with our ACH Positive Pay fraud prevention service

- Reduce  your losses with fraud control

- Make decisions regarding acceptance or rejection of ACH entries on your account

- Access easily through Fifth Third Direct

# ACH Positive Pay

## Access ACH Positive Pay via Fifth Third Direct, Fifth Third Bank's online portal



# Positive Pay

## Protect your account and minimize loss with our Positive Pay fraud prevention tools

**How Check Positive Pay works:**

- Employs technologically advanced methods, comparing check-paid items against issue information to identify discrepancies

- Reports suspect items to you promptly via Fifth Third Direct, our web portal

- Helps make sure that only the checks you issue are paid



# Positive Pay Options

## Safeguard your business against fraud by monitoring and detecting unusual or unauthorized activities

**Positive Pay options for added fraud protection:**

- Payee Name Verification

  – Mitigates fraud on the check payee line

- Perfect Posting Positive Pay

  – Helps mitigate coding errors before items clear the account

- Reverse Positive Pay

  – Maintain issue file and reconciliation internally



# Why Integrated Payables?



# How Integrated Payables Works



*Additional fee requirements may exist.*

17

# Integrated Disbursements Sample



## Check Features

- Configurable Branding

- Copy Ban - Latest printing technology designed to combat color copying on the most sophisticated copiers.

- Warning Bands

- Laid Lines

- Watermarks

- Thermo chromic Inks

- Paper – 24# White MICR Bond

- Color- The check stock is always white.

- Patterns – Void pantograph



# Financial Strength

## Providing industry leading financial strength

- 155 year longevity

- 4Q16 net income $372 million

- Total assets of $142 billion

- Among the top 25 bank holding companies in U.S.

- Deposit rating of A- and A3 by Standard & Poor's and Moody's



Fifth Third Bancorp 12/31/2016 capital ratios*

| | |
|---|---|
| 15.00% | Total Capital Ratio |
| 10.30% | Tier 1 Capital Ratio |
| 8.91% | Tier 1 Common Ratio |
| 8.87% | Tangible Common Equity Ratio** |

16%  14%  12%  10%  8%  6%  4%  2%  0%

----- lines represent regulatory "well-capitalized" levels
*current period regulatory capital ratios are estimated
**excluding unrealized gains/losses

Important notice

This document has been prepared by Fifth Third Bank ("Fifth Third") or one of its subsidiaries for the sole purpose of providing a proposal to the parties to whom it is addressed in order that they may evaluate the capabilities of Fifth Third to supply the proposed services. It is not intended to provide specific investment advice or investment recommendations and does not constitute either a commitment to enter into a specific transaction or an offer or solicitation, with respect to the purchase or sale of any security.
The information contained in this document has been compiled by Fifth Third and includes material which may have been obtained from information provided by various sources and discussions with management but has not been verified or audited. This document also contains confidential material proprietary to Fifth Third. Except in the general context of evaluating our capabilities, no reliance may be placed for any purposes whatsoever on the contents of this document or on its completeness. No representation or warranty, express or implied, is given and no responsibility or liability is or will be accepted by or on behalf of Fifth Third or by any of its subsidiaries, members, employees, agents or any other person as to the accuracy, completeness or correctness of the information contained in this document or any other oral information made available and any such liability is expressly disclaimed.

This document and its contents are confidential and may not be reproduced, redistributed or passed on, directly or indirectly, to any other person in whole or in part without our prior written consent.

This document is not an offer and is not intended to be contractually binding. Should this proposal be acceptable to you, and following the conclusion of our internal acceptance procedures, we would be pleased to discuss terms and conditions with you prior to our appointment.

Securities offered through Fifth Third Securities, Inc., a registered broker/dealer and member of FINRA and SIPC.

Deposit and credit products provided by Fifth Third Bank. Member FDIC.

**FIFTH THIRD BANK**

## EXHIBIT B

### CERTIFICATE OF INCUMBENCY

The undersigned, [●], of [●], hereby certifies that the following named officers have been duly appointed, qualified and acting in the capacity set forth opposite his/her/its name, have been authorized by appropriate corporate or limited liability company action to execute this Escrow and Qualified Settlement Fund Agreement ("***Escrow Agreement***") or amendments thereto on behalf of the above-named party and to furnish to Fifth Third Bank, as Escrow Agent, with directions relating to any matter concerning this Escrow Agreement and the funds and/or property held pursuant thereto, the following signature is the true and genuine signature of said officer and that each person's contact information is current and up-to-date at the date hereof.  Each of the Authorized Representatives is authorized to issue instructions, confirm funds transfer instructions by callback and effect changes in Authorized Representatives, all in accordance with the terms of the Escrow Agreement.

| Name and Title | Signature | Telephone Numbers | Date of Birth |
|---|---|---|---|
| _____ | _____ | Office:_____<br>Cell:_____ | _____ |
| _____ | _____ | Office:_____<br>Cell:_____ | _____ |
| _____ | _____ | Office:_____<br>Cell:_____ | _____ |

Such officers are hereby authorized to furnish the Escrow Agent with directions relating to any matter concerning this Agreement and the funds and/or property held pursuant thereto.

IN WITNESS WHEREOF, this Certificate of Incumbency has been executed this _____ day of [●], 20[●].

[●]

By_____

Name_____

Title:  Secretary

## EXHIBIT C

## ESCROW DIRECTIVE

[Date]

Fifth Third Bank
8100 Burlington Pike
Florence, KY 41042
Attn:  Derrick Theetge

    Re: Settlement in re. *Good vs. West Virginia-American Water Company et al.*

    In accordance with the Escrow and Qualified Settlement Fund Agreement (the "***Escrow Agreement***"), dated as of _____, 2018, the undersigned hereby directs the Escrow Agent to disburse the amount(s) set forth below to the Disbursement Account (Account number [_____])

1)  Disbursement from Eastman Settlement Fund Account: $_____

      Bank Name:  Fifth Third Bank
      ABA# 042000314
      A/C: # 72037910
      Trust Operations

      Memo section of wire
      FFC A/C#: 28-003-9753575
      A/C Name: Escrow Eastman Fund

Purpose of the disbursement:_____

2)  Disbursement from American Water Guaranteed Settlement Fund Account: $_____

      Bank Name:  Fifth Third Bank
      ABA# 042000314
      A/C: # 72037910
      Trust Operations

      Memo section of wire
      FFC A/C#: 28-003-9753559
      A/C Name: Escrow American Water Guaranteed Settlement Fund

Purpose of the disbursement:_____

Exhibit C

3)  Disbursement from American Water Contingent Settlement Fund Account: $_____

       Bank Name:  Fifth Third Bank
       ABA# 042000314
       A/C: # 72037910
       Trust Operations

       Memo section of wire
       FFC A/C#: 28-003-9753567
       A/C Name: Escrow American Water Contingent Settlement Fund

Purpose of the disbursement:_____

**Disbursement Amount from Each Disbursement Account: $** _____

| Disbursement No. | Ultimate Payee |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

*[Remainder of Page Intentionally Blank; Signature Page Follows]*

Exhibit C

**SETTLEMENT ADMINISTRATOR:**

_____

By: _____
Name:
Title:

Exhibit C

## **EXHIBIT D**

## **SCHEDULE OF FEES**

The Escrow Agent has waived fees for services as Escrow Agent.

## <u>EXHIBIT E</u>

<u>ORDER GRANTING FINAL APPROVAL OF THE GOOD CLASS SETTLEMENT AND
ENTERING JUDGMENT, CASE:  2:14-CV-01374 DOCUMENT 1212 FILED JUNE 8, 2018</u>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CRYSTAL GOOD, individually and as
parent and next friend of minor children
M.T.S., N.T.K, and A.M.S, and MELISSA
JOHNSON, individually and as a parent of an
unborn child T.A.J., and JOAN GREEN and SUMMER JOHNSON
and MARY LACY and WENDY RENEE RUIZ and KIMBERLY
OGIER and ROY J. McNEAL and GEORGIA HAMRA and
MADDIE FIELDS and BRENDA BAISEDN, d/b/a FRIENDLY
FACES DAYCARE, and ALADDIN RESTAURANT, INC. and
R.G. GUNNOE FARMS LLC and DUNBAR PLAZA, INC.,
d/b/a DUNBAR PLAZA HOTEL, on behalf of
themselves and all others similarly situated,

                Plaintiffs,

v.                                        Civil Action No. 2:14-cv-1374

WEST VIRGINIA-AMERICAN WATER COMPANY,
d/b/a WEST VIRGINIA AMERICAN WATER, and
AMERICAN WATER WORKS SERVICE COMPANY, INC.
and AMERICAN WATER WORKS COMPANY, INC. and
EASTMAN CHEMICAL COMPANY and GARY SOUTHERN
and DENNIS P. FARRELL,

                Defendants.

ORDER GRANTING FINAL APPROVAL OF
THE *GOOD* CLASS SETTLEMENT AND ENTERING JUDGMENT


        This matter comes before the court pursuant to a Joint

Motion ((filed by Plaintiffs and Defendants West Virginia-

American Water Company, American Water Works Service Company,

Inc., and American Water Works Company, Inc. and Eastman

Chemical Company ("Defendants")) for Final Approval of the

Proposed Class Settlement and for Final Approval of Attorneys' Fees, Costs and Incentive Awards (the "Joint Motion"), dated December 29, 2017 [Doc. 1180].  A Final Fairness Hearing regarding the Settlement was held on January 9, 2018, and continued to February 1, 2018, before this court in Charleston.

In accordance with and for the reasons stated in the Memorandum Opinion and Order entered July 6, 2017 [Doc. 1146], as modified herein, together with the Order Granting Preliminary Approval Of The *Good* Class Settlement, Directing Notice To The Class, And Scheduling Fairness Hearing [Doc. 1166] entered September 21, 2017, the court finds and ORDERS as follows:

1.   The proposed Settlement Class meets all the applicable requirements of Fed. R. Civ. P. 23(a) and (b)(3), and hereby confirms and finally certifies the following class for settlement purposes:

> a. All natural persons, including adults and minors (including in utero), who resided in residential dwellings that were supplied tap water by West Virginia American's Kanawha Valley Water Treatment Plant ("KVTP") on January 9, 2014.
>
> b. All businesses, and non-profit and governmental entities, that operated in real property locations that were supplied tap water by the KVTP on January 9, 2014.

2

    c. All natural persons who were regularly employed
as hourly wage earners for businesses that
operated in real property locations that were
supplied tap water by West Virginia American's
KVTP on January 9, 2014.

    d. The Settlement Class includes all persons and
entities who are Exhibit A Plaintiffs as
specified at Section 5.3.2 of the Amended
Settlement except those who are Opt Outs.

Excluded from the Settlement Class are:

    a. West Virginia-American Water Company and its
officers, directors, and employees and any
affiliates of West Virginia American and their
officers, directors, and employees;

    b. Eastman and its officers, directors, and
employees and any affiliates of Eastman and their
officers, directors, and employees;

    c. Judicial officers assigned to this case and their
immediate family members and associated court
staff assigned to this case, other than court
reporters;

    d. Settlement Class Counsel and attorneys who have
made an appearance for the Defendants in this
case;

    e. The Settlement Administrator, Notice
Administrator, Guardian ad Litem, or other
consultants and associated staff assigned to this
case; and

    f. Persons or entities who have excluded themselves
from the settlement class (Opt Outs).

All persons or entities who have not submitted timely and proper

exclusion requests and who otherwise fall within the class

definition are members of the Settlement Class.

3

2.   Settlement Class Counsel have met the standards of Fed. R. Civ. P. 23(g) and have fairly and adequately represented the interests of the Settlement Class.  The court confirms the appointment of Settlement Class Counsel.

3.   The appointment of the accounting firm, Smith, Cochrane and Hicks, as the Settlement Administrator to fulfill the tasks and obligations set forth in the Amended Settlement Agreement is confirmed.

4.   The Notice transmitted to the Settlement Class met the requirements of Fed. R. Civ. P. 23(c), constituted the best notice practicable under the circumstances, and satisfied the Constitutional due process requirements of notice with respect to all Settlement Class Members, including minors and those who are incapacitated.  The Notice reflected and documented the details of the court's preliminary approval of the Settlement as well as the request for an award of attorneys' fees, reimbursement of costs and approval of incentive awards.  The Notice Program was executed by qualified and experienced Notice Administrators and was completed in timely fashion, and in coordination with an experienced Settlement Administrator who established channels of communication for Settlement Class Members including maintenance of a website which posted the Notices and related documents.

4

5.  Defendants have fully complied, to the best extent possible, with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. §1715.

6.  The appointment of John A. Carr, Esq. as Guardian Ad Litem is confirmed and there is accepted his Report Of The Guardian Ad Litem On The Fairness Of The Proposed Amended Settlement Agreement, dated January 19, 2018 (Doc. 1195).  Based on that Report, the court finds that the Amended Settlement Agreement is fair, reasonable and adequate with respect to Settlement Class Members who are minors, lack capacity or are incompetent.  For purposes of the function of the Guardian Ad Litem, a minor is a person under age 18 and the definition of a Class Member who lacks capacity is the definition of incapacity provided in W.Va. Code §39B-1-102(5).  The Guardian Ad Litem shall have the authority to assist Settlement Class Members who are minors or incapacitated with the claims filed by them or on their behalf other than residential simple claims.  As to residential simple claims, the filing of the claims and the division of proceeds distributed thereon is ordinarily to be handled by the person or persons in whose name the water company account is listed.  If a minor or incapacitated person is in a dispute, under Section V.B.3 of Exhibit 3 to the Amended Settlement Agreement, with the account holder over the division

5

of proceeds, the Guardian Ad Litem may represent the interests
of the minor or incapacitated person in the resolution of the
dispute by the Settlement Administrator.

7.   The Amended Class Action Settlement Agreement,
which memorializes the Settlement, is fair, reasonable and
adequate within the meaning of Fed. R. Civ. P. 23(e).  The
Amended Class Action Settlement Agreement, along with all
Exhibits thereto, is adopted and fully incorporated by reference
into this Order and Judgment. In making this determination, the
court has considered the current posture of this litigation and
other pending actions and the risks and benefits to the parties
involved in both settlement of these claims and continuation of
the litigation.

8.   As of the Effective Date, the Class Release shall
be given full force and effect and Plaintiffs and the Settlement
Class Members shall have released and be deemed to have released
any and all Released Claims as detailed in and as governed by
Section 9 of the Amended Settlement Agreement.   Settlement Class
Members and Plaintiffs and any legal or natural persons who may
claim by, through or under them are, by operation of the
Release, permanently barred and enjoined from commencing,
asserting or continuing any Released Claims against any Released

6

Entity, as those terms are defined in the Amended Settlement Agreement.  Valid Opt Outs are not bound by the Amended Settlement Agreement or the Final Approval Order.  This Amended Settlement Agreement is the exclusive remedy for any and all Released Claims against any and all Released Entities.

9.  In the court's order of July 6, 2017, preliminary approval was given to an award of a 25% fee on the guaranteed funds ($100,500,000) and on any amounts paid out of the contingent fund ($50,000,000).  Within the order is a thorough exposition of applicable law and the attorney fee awards in other class action cases of similar size and complexity, all of which is incorporated herein.

Note was taken of the empirical studies by Professors Thomas Eisenberg and Geoffrey P. Miller finding that the mean percentage fee in 69 cases ranging from approximately $70 million to approximately $175 million was 19.4%.  Pet. For Fees 20-21.  See Thomas Eisenberg & Geoffrey P. Miller, Attorney Fees and Expenses in Class Action Settlements:  1993-2008, 7 J. Empirical Legal Stud. 248 (2010); William B. Rubenstein, Newberg on Class Actions § 15:78, 81 (5th ed.)(Eisenberg and Miller's studies show that "the mean award for recoveries of $1.1 million and less was 37.9%, while the mean for recoveries over $175.5

7

million was 12%"); In re Prudential Ins. Co. Am. Sales Practice
Litig. Agent Actions, 148 F.3d 283, 339 (3d Cir. 1998) (fees in
common fund cases exceeding $100 million "ranged from 4.1% to
17.92%," noting the "inverse relationship" between fund size and
attorney fee percentage); Carlson v. Xerox Corp., 596 F. Supp.
2d 400, 405 (D. Conn.), aff'd, 355 F. App'x 523 (2d Cir. 2009)
(providing a chart of some of the largest class action
settlements and noting that in only 6 of the top 26 cases was
the fee awarded higher than 20% and in no case was it higher
than 28%); Goldberger v. Integrated Res., Inc., 209 F.3d 43, 51-
52 (2d Cir. 2000) (percentages in common fund cases between $50
and $75 million ranged between 11% and 19%).  Order at 62-67,
76.

In the order of July 6, 2017, the court twice noted
that it was unlikely that the $50 million contingent fund would
be exhausted (Id. at 68, 81).  Indeed, it was stated that "there
is a risk that claimants will not access the contingent fund at
all."  Id. at 68.  The parties estimated the number of simple
claims at 37,000 residential and 5,000 business.  Id. at 88.
Based on these and other like estimates, the notice to the class
estimated, for example, payment of $550 for each residential
household plus $180 for each additional household member.

8

Instead, the Settlement Administrator has been overwhelmed by the filing of some 87,000 simple residential claims (also containing claims for 126,000 additional residents) as well as some 6,750 simple business and government claims, and 2,700 individual review claims. The total dollar amount of all claims timely filed is just in excess of $162,000,000. Although some of those claims will ultimately be denied, it is apparent that the entirety of the $150,500,000 will be expended inasmuch as the settlement funds for distribution have been oversubscribed.

In arriving at preliminary approval of a 25% attorney fee, the court did so with the expectation that the contingent fund of $50,000,000 would have been only partially accessed. Had all claims and costs and fees of all kind aggregated, say, $120,000,000, a 25% attorney fee would have been $30,000,000. While it is gratifying that the entire $150,500,000 will be accessed, the attorney fee percentage should be modified from that preliminarily approved in order to reflect the unanticipated high dollar volume of claims received so as to avoid a potential windfall benefit. In fixing the fee, the court recognizes the favorable settlement result that has been achieved by the plaintiff attorneys and their state court counterparts through the exceptional skill and dedication that

they have so professionally displayed throughout these proceedings.  Without their services and willingness to risk the loss of their highly valuable time and the costs of litigation, there would be no settlement funds to disburse.

After taking into account all of the factors relating to the award of attorney's fees, both in class action generally and this case in particular, the court concludes that an overall attorney fee of 22% is a fair and reasonable attorney fee in this case and is hereby finally approved.  The 22% fee applies to the guaranteed funds of $100,500,000, the contingent fund of $50,000,000 and the sums recoverable from the individual defendants, Gary Southern and Dennis P. Farrell; and it is premised on the disbursement of the entirety of those funds, along with sums recovered from the two individual defendants, for the benefit of the class claimants and the payment of the 22% attorney fees and all costs of every kind approved by the court.

As requested by the parties, these attorney fees shall be paid by the Settlement Administrator to the order of Bonnett, Fairbourn, Friedman & Balint, P.C., with one-half of the amount payable from the aggregate amount of the Eastman Fund and the American Water Guaranteed Settlement Fund to be paid on the

10

Effective Date and the balance of that amount payable to be paid upon distribution of Simple Claim settlement benefits to the Settlement Class.  Attorney fees based on payments made from the American Water Contingent Settlement Fund shall be paid in three installments, one 60 days after the first payments from the American Water Contingent Settlement Fund are first paid, the second 60 days later and the balance upon final distribution of payments to eligible Class Members.  Only those attorneys' fees expressly delimited under paragraphs 13.1 of the Amended Settlement Agreement shall be borne by the Eastman Fund, the American Water Guaranteed Settlement Fund or the American Water Contingent Settlement Fund established thereunder.  No other claims for attorney fees will be allowed by the court.

    10.  Attorneys representing Claimants in the Individual Review Option may earn up to 15% of the amount awarded under the Settlement to an eligible Claimant as a contingent fee from a Claimant, provided that the net payment to the Claimant after deducting fees and expenses must exceed the applicable Simple Claim Amount, if any.  No person may charge a fee to a Claimant for assisting in the preparation or filing of Simple Claim Forms, except that attorneys representing individual Business Claimants with 2013 Annual Revenue in excess of $100,000, may earn up to 15% of the amount awarded for a

11

Simple Claim Form claim if it was necessary for the attorney to analyze the Claim as an Individual Review Option claim to determine whether the Claimant should file a Simple Claim Form claim or an Individual Review Option claim.  All attorneys' fees and retainer contracts remain subject to applicable regulations, including, without limitation, Rule 1.5 of the West Virginia Rules of Professional Conduct, governing fee agreements.  The fees described in this paragraph shall be paid by the individual Claimant and shall not be paid from the Eastman Fund, the American Water Guaranteed Settlement Fund, or the American Water Contingent Settlement Fund.

11.  The Settlement Administrator, Smith, Cochrane and Hicks, is engaged in the tedious process of examining each of those filed claims aggregating some $162,000,000, sorting out the invalid claims and those that are in some manner or to some extent deficient, following which those who wish to cure the defects in their claims will be given a 30-day opportunity to do so.  The Settlement Administrator, of course, cannot determine the amount to be paid on any given claim until the dollar amount of all those nearly 94,000 simple claims being paid can be determined.  And that cannot be determined until the 30-day cure period has run and the Settlement Administrator has resolved the disputes relating to the 30-day cure claims.

What is quite clear is that there will not be
sufficient funds to pay the entirety of the amounts that were
presented in the class notice as being the projected claim
recoveries.  The likelihood, as seen at this juncture, is that
the recoverable amount on the allowed claims will be in the
range of twenty percent less than the projected figures set
forth in the class notice to file claims.

In order for the initial payout to take place, the
Amended Settlement Agreement provides that the Settlement
Administrator must also first compute the aggregate value of all
simple claim form claims and the aggregate maximum value of all
Individual Review Option claims based on the requested
individual review claim amounts, as well as administrative
expenses, attorney fees and litigation costs.  Inasmuch as the
requested claim amounts in the individual review claim forms are
in a great many instances in dispute, the Settlement
Administrator is directed to simply estimate the aggregate
maximum value of all Individual Review Option claims without
regard to the "requested individual review claim amounts" in
order that payment of the simple claims will not be unduly
depressed in amount or delayed in payment.  With that
modification, the initial payment of simple claim form claims,

13

after the proposed payment is submitted to the parties and the court and reviewed and approved by the court, can then begin.

Payment of claims shall be by bank check and mailed at or within five days of the date of the check.  The check shall carry the notation on its face that "This check void, and the claim may be deemed waived, unless presented for payment within 90 days of issue date."  If the check is not presented to the bank on which it is drawn within 90 days of the date of the check, it shall be void and the claim may be deemed waived, and the sum for which the check is drawn shall be pooled with funds remaining for distribution that shall be distributed, along with any undistributed interest earned, to the claimants as the court may equitably direct in keeping with the provisions of the Amended Settlement Agreement and this order.

12.  The court finds that reimbursement of the reasonable expenses incurred in the prosecution of this class action, and parallel litigation to the extent those efforts helped bring about the global resolution of this dispute, is appropriate.  After reviewing the parties' updated submissions in support of the Joint Motion and in conjunction with the Final Fairness Hearing, the court finds that reimbursement of costs and expenses of $2,579,836, is fair and appropriate, which sum

14

shall be allocated by the court on an equitable basis to the various settlement funds.

All administrative expenses of the Settlement Administrator and the Notice Administrator, as well as that of the Guardian Ad Litem, the Appeal Adjudicator, and any other similar costs that may be incurred are subject to approval by the court and allocation on an equitable basis to the various settlement funds.

13.  The court finds that the named plaintiffs are entitled to incentive awards to be paid from the Eastman Fund and the American Water Guaranteed Settlement Fund, of $15,000.00 each to Class Representatives Crystal Good; Melissa Johnson; Mary Lacy; Joan Green; Summer Johnson; Wendy Renee Ruiz; Kimberly Ogier; Roy J. McNeal; Georgia Hamra; Maddie Fields; Brenda Baisden, d/b/a Friendly Faces Daycare; Aladdin Restaurant, Inc.; R.G. Gunnoe Farms LLC; and Dunbar Plaza, Inc. d/b/a Dunbar Plaza Hotel; and $10,000.00 each to the plaintiffs named in *In re Water Contamination Litigation*, No. 16-C-6000, filed in West Virginia Circuit Court and transferred to the West Virginia Mass Litigation Panel (the "MLP Action"): Craig Cook; Ann Perrine; Joanna Gibson; Krisi Ord; Nicholas Shahoup, DDS;

15

Scott Miller/Bar 101 LLC d/b/a Bar 101 and Ichiban; Better Foods, Inc.; and Capitol Hotels, Inc.

14.   In reaching the findings in this Order, the court has given weight to the fact that the Settlement Class Members were afforded a full opportunity to object to the Settlement or any aspect of the Settlement, including the Motion for Award of Attorneys' Fees, Reimbursement of Costs and Incentive Awards, and that no objections to any aspect of the Settlement were formally or informally presented to the court.   No objections were heard at either the January 9 or February 1 Final Fairness Hearings.   The court finds that the lack of objections counsels in favor of final approval of the Settlement.

15.   The court determines under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directs that the judgment with respect to all claims by Settlement Class Members be certified as final judgments.   The court shall retain continuing and exclusive jurisdiction over the interpretation, enforcement and implementation of the Amended Settlement Agreement in accordance with its terms and this Order, including the confidentiality orders entered in this case and the included protections for information submitted by Claimants.

16

16.   Settlement Class Members are ordered to dismiss with prejudice any Released Claims pending in any other Court.

17. The court permanently bars and enjoins each Settlement Class Member from filing, asserting, commencing, maintaining or consenting to any action against the Released Entities with respect to the Released Claims.

18.   MLP Lead Counsel are ordered to seek dismissal with prejudice of all State Actions except any such action that is brought by an Opt Out.

19.   The court approves the distribution of an aggregate payment for all members of a Household or all owners of an Eligible Business Location to a single representative of a Household or a Business Location and further approves and authorizes the Settlement Administrator to mail multiple payment checks for members of a Household to a single representative of the Household.

20.   The parties shall complete all remaining obligations under the Amended Settlement Agreement.

21.   All capitalized terms not otherwise defined in this Order shall have the meanings set forth in the Amended Settlement Agreement.

22.   The Clerk will transmit copies of this Order to counsel for the parties.


DATED:   June 8, 2018

John T. Copenhaver, Jr.
United States District Judge

18